**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:22-cv-1331 |
| | ) |
| QUALCOMM INCORPORATED; QUALCOMM TECHNOLOGIES, INC.; ARTERIS, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**QUALCOMM'S RESPONSE IN OPPOSITION TO NST'S MOTION TO COMPEL QUALCOMM'S PRODUCTION OF DOCUMENTS IN RESPONSE TO NST'S PRIORITIZED THIRD SET OF REQUESTS FOR PRODUCTION**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................................... 2

    A. NST's "Prioritized" Third Set of Requests for Production Request Broad Categories of Documents from a Diverse Set of Sources ........................................ 2

    B. Qualcomm has Been Diligent ................................................................................. 4

    C. Qualcomm's Proposed Production Schedule Provides Adequate Time for NST to Finish Fact Discovery ............................................................................................. 6

III. ARGUMENT ........................................................................................................................ 7

    A. No Authority Supports NST's Unilateral May 9, 2025 Deadline ........................... 7

    B. Case law Confirms Qualcomm's Anticipated Production Schedule is Reasonable 8

    C. The Court Should Require NST to Pay the Reasonable Expenses Qualcomm Incurred Opposing this Motion Under Rule 37(a)(5)(B) ......................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Beneplace, Inc. v. Pitney Bowes, Inc.*,
   No. A-15-CV-065, 2016 U.S. Dist. LEXIS 28414 (W.D. Tex. Mar. 7, 2016) ............................. 8

*CBT Flint Partners, LLC v. Return Path, Inc.*,
   No. 1:07-cv-1822, Dkt. No. 206, at 6-7 (N.D. Ga. Aug. 7, 2008) ............................................ 10

*Hawkins v. Nexion Health Mgmt, Inc.*,
   5:13-cv-121, Doc. 146, at 9 (E.D. Tex. April 29, 2015) ............................................................ 8

*Lechuga v. Magallanes*,
   2017 U.S. Dist. LEXIS 221493 at *2 (W.D. Tex. June 1, 2017) ................................................ 8

*Maryland Co., LLC v. ExxonMobil Corp.*,
   6:10-cv-01781, Doc. 198, at 12 (W.D. La. Dec. 13, 2011) ........................................................ 8

*Merritt v. Int'l Bhd. of Boilermakers*,
   649 F.2d 1013 (5th Cir. 1981) ..................................................................................................... 8

*Sandisk3D IP Holdings Ltd. v. Viasat, Inc.*,
   No. 22-cv-04376, Dkt. No. 158 at 2 (N.D. Cal. March 10, 2025) ............................................. 9

*See Superior Indus., Inc. v. Precision, Inc.*,
   No. 4:21-cv-00224, 2022 U.S. Dist. LEXIS 238875 (S.D. Iowa Jan. 27, 2022) ........................ 9

**Rules**

Fed. R. Civ. P. 37(a)(5)(B) ............................................................................................................ 10

I.      INTRODUCTION

NST has burdened Qualcomm and the Court with motion practice over a three-week disagreement regarding the date Qualcomm should be required to produce documents. NST has not identified any Rule or Court Order that requires Qualcomm to complete its production by NST's unilateral May 9, 2025 deadline. Moreover, since NST served its Third Set of Requests for Production, Qualcomm has made eight unique productions, including roughly 47,000 documents and 1.7 million pages. And Qualcomm has informed NST that it expects to make productions every two weeks from now until May 30, 2025—which still leaves more than two months before the close of fact discovery.

Qualcomm's contemplated production schedule is reasonable given the breadth and diversity of information requested by NST. NST's "prioritized" requests do not seek particular sets of documents that Qualcomm can readily pull and produce. Instead, they seek more than 46 different vague categories of information related to nearly 200 different products. The documents NST seeks are not typically sought in patent cases. Therefore, Qualcomm has been diligently investigating whether these documents exist, if they do, where they are located, and how they could be collected. Qualcomm has been required to conduct dozens of interviews in order to identify the relevant individuals who could help identify reasonable collections. This has required an enormous effort, and Qualcomm has been diligently working toward producing the documents in a timely manner.

Qualcomm's diligence is demonstrated by the record in the case. Qualcomm has produced more than 2.5 million pages of documents, including many productions over the last several months. Qualcomm has done this while continuing to participate in many other parts of this litigation (including reviewing 175,000 email documents in response to NST's email

production requests), and while conducting its important business of innovating, developing, and selling new products.

NST should not have filed this motion. Qualcomm's productions to date include the key documents related to the accused NoC technology, as well as many documents related to other issues (such as the acquisition of Arteris assets) that NST contends are relevant to the case. There is nothing preventing NST from preparing for and taking depositions with those documents. Indeed, NST has never confirmed that it has reviewed the entirety of Qualcomm's production. Rather than burdening Qualcomm and the Court with motion practice over a three-week disagreement and a non-existent deadline, NST should have been working on moving this case forward. NST's motion is not substantially justified, and the Court should award Qualcomm the reasonable expenses it incurred opposing the motion under Rule 37(a)(5)(B).

## II.    FACTUAL BACKGROUND

### A.    NST's "Prioritized" Third Set of Requests for Production Request Broad Categories of Documents from a Diverse Set of Sources

On January 23, 2025, the Court Ordered NST to "identify 50 RFPs from its Third Set of Requests for Production to Qualcomm, Dkt. 274-3, and share that list of 50 RFPs with Qualcomm." Dkt. 287. NST did not follow the Court's Order, and instead served a table that attempted to group the requests, while maintaining nearly 200 RFPs. Ex. A. Following a meet and confer, NST served an additional table that still did not comply with the Court's Order and instead served 46 requests that NST contends were "condensed" versions of NST's previous requests. Ex. B. Even though this second table also failed to comply with the Court's order, Qualcomm diligently provided detailed objections and responses within two weeks. Dkt. 300-4. These responses included clear statements regarding which documents Qualcomm agreed to produce. *Id.*

NST's "prioritized" requests are compound and seek more than 46 vague categories of information that are not relevant to the case and are certainly not typical discovery in patent cases. Therefore, Qualcomm has been required to investigate the documents that existed in many different groups within Qualcomm, including: (1) groups that interacted with the fabricators of Qualcomm's wafers, (2) groups that interacted with Outsourced Semiconductor Assembly and Test entities ("OSATs"), (3) groups that were involved in selling products, (4) groups that managed Qualcomm's overall sourcing pathways, (5) groups that maintained Qualcomm's patent license agreements, (6) groups that maintained Qualcomm's Component Supply Agreements, (7) groups that maintained Qualcomm's price quotes, (8) groups that maintained Qualcomm's purchase orders, (9) Qualcomm's customs group, (10) Qualcomm's export compliance group, (11) groups that could have potentially been involved in work Qualcomm did to comply with FCC regulations, (12) groups that could have potentially been involved in work that Qualcomm did to comply with U.S. cellular standards, (13) groups that could have potentially been involved in work that Qualcomm did to comply with Energy Star Certifications, (14) groups that were involved in maintaining Qualcomm's SKU numbers, (15) groups that may have market share data, (16) groups that were involved in maintaining cost data, (17) marketing groups, (18) customer engineering groups, (19) groups that maintain Qualcomm's product roadmaps, (20) groups that maintain Qualcomm's document retention schedule. *See* Dkt. 300-4. This investigation has been particularly burdensome because NST is accusing almost 200 different products of infringement in this case.[1]

---

[1] NST's has only provided infringement contentions for 3 of these products and has not explained why it believes these products are representative of the other nearly 200 products it accuses of infringement.

3

### B. Qualcomm has Been Diligent

Qualcomm has diligently engaged in discovery throughout this case. Qualcomm has produced more than 2.5 million pages of documents and more than nearly 170,000 source code files. *See* Ex. J. Since NST served its Third Set of RFPs, Qualcomm has made eight different productions. Exs. C-J. These have included roughly 47,000 documents totaling about 1.7 million pages. *Id.*

Meanwhile, Qualcomm has diligently engaged with NST regarding its vague third set of "prioritized" RFPs. NST suggests that Qualcomm only agreed to produce documents "under threat of motion to compel." Dkt. 300 at 4, 6 and 9. That is not true. Qualcomm's initial responses confirmed that Qualcomm would produce many of the documents NST appeared to be requesting. *See* Dkt. 300-4. Qualcomm then met and conferred with NST in an effort to understand the types of documents NST has been requesting. *See* Dkt. 300-5 at 29-37. After the parties' meet and confers, Qualcomm explained its positions in emails on March 5, 2024 and March 14, 2024. *Id.* at 29, 34-36. NST then stated it would "follow up in due course" about Qualcomm's proposals on March 21, 2025. *Id.* at 28. Qualcomm diligently continued to correspond with NST regarding specific RFPs, but NST did not provide a holistic response confirming the parties had agreement (or disagreement) regarding the scope of production. NST then suddenly informed Qualcomm it was going to file a motion to compel on April 3, 2025. *Id.* at 23-24. Qualcomm was surprised by this, given that NST's email suggested the ball was in NST's court for NST to "follow up in due course" about the scope of production. *Id.* at 21-22. Nevertheless, Qualcomm promptly provided more information about the types of documents it had determined it could produce in the course of its investigation. *Id.* at 17-20. For the first time on April 7, 2025, NST appeared to confirm it agreed to the scope of production that Qualcomm had identified and demanded Qualcomm provide a date certain by which it would produce the

4

documents. *Id.* at 9-16. Four days later, Qualcomm provided NST with a date on which it expected to complete its production of the agreed upon documents. *Id.* at 3-4. Qualcomm proposed a rolling production of documents every two weeks starting on May 2, 2025, and ending on May 30, 2025—two months before the close of fact discovery. *Id.* at 4-5.

Throughout this time, Qualcomm has also been diligently working to make the relevant collections and productions. Qualcomm began by investigating which individuals and groups might have information responsive to NST's requests. As discussed above, this required Qualcomm to identify many different groups and individuals. *See* p. 3 *supra*. In this process, Qualcomm has conducted dozens of interviews of individuals in the groups identified above in order to understand what types of documents exist.

Even after those interviews are completed, there are a significant number of steps required for Qualcomm to produce the wide variety of documents NST has requested. Qualcomm first needs to work with those individuals to identify reasonable collections that could be conducted to provide NST with the information it requests. Then Qualcomm needs to assess whether the documents it expects to produce are under confidentiality obligations that require notice and opportunity for a third party to object. And finally, Qualcomm needs to take steps to ensure that the documents it produces are responsive and not privileged. Although Qualcomm has been (and will continue) working diligently, it cannot make all of these steps happen instantaneously. It is currently at various stages in the process for NST's many different requests.

Qualcomm has conducted all of these efforts while also engaging in the many other activities required by this litigation in the last few months. For example, Qualcomm has been reviewing almost 175,000 email documents in order to produce documents responsive to NST's email discovery requests. It has been working on preparing a privilege log related to those

documents. It has supplemented its source code production. It has participated in the European patent cases that NST filed. It has participated in final hearings on two IPRs related to the patents-in-suit, and responded to NST's motion to strike in one of the IPRs (which was denied).

### C. Qualcomm's Proposed Production Schedule Provides Adequate Time for NST to Finish Fact Discovery

Fact discovery is scheduled to close on July 30, 2025. As discussed above, Qualcomm has already produced millions of pages of documents and roughly 170,000 source code files. Qualcomm's production includes all of the technical documents and source code related to the accused NoC technology that Qualcomm identified in its reasonable search. Indeed, NST acknowledged that Qualcomm's technical production was adequate six months ago. Dkt. 300-3 at 13:13-18 (p. 14 of 96).[2] Qualcomm has also already produced the non-email documents it identified in its reasonable search related at least to the following exemplary categories: (1) Qualcomm's acquisition of certain Arteris Assets, (2) Philips' previous efforts to market a portfolio that included the patents-in-suit, (3) Qualcomm's marketing of the accused products, (4) Qualcomm's device specifications, User Manuals, and High Level Design reviews for the accused products.

Qualcomm has also committed to substantially completing its email production (which required review of 175,000 documents) by the week of May 5, 2025, producing documents for 10 RFPs by May 2, 2025, and documents for 15 more RFPs by May 16, 2025. Qualcomm further stated it expects to complete the productions for all of NST's RFPs by May 30, 2025—two months before the close of fact discovery.

---

[2] NST recently requested that Qualcomm supplement this production for new products that were released after Qualcomm made its initial production. Qualcomm is working on that supplementation.

NST has already taken three of the ten depositions it is allowed under Rule 30. It could easily take the seven additional depositions it is allowed in the two months between Qualcomm completing its planned production and the close of fact discovery. But there is also no reason for NST to wait. NST has documents related to the vast majority of relevant issues in this case, and it can take depositions on those topics at any time. Nothing in the Federal Rules suggests that a party must produce every document before any depositions can occur.

NST's only rationale for demanding production by May 9, 2025 is that it intends to "propound follow up discovery and move to compel production of discovery insufficiencies identified during these depositions." Dkt. 300 at 4. NST's premeditated decision to file motions to compel *before* it has any basis to believe Qualcomm's productions will be insufficient or the parties will reach any impasse is troubling and reflects NST's overly aggressive approach to this litigation and attempts to weaponize discovery against Qualcomm. It suggests NST really seeks to drive up Qualcomm's costs rather than diligently litigate its case. Additionally, NST's suggestion that it will seek documents after the deposition demonstrates that NST's deadline is not necessary. Parties frequently take depositions before all documents have been produced, and NST itself apparently expects to seek additional documents after the depositions are completed.

### III. ARGUMENT

#### A. No Authority Supports NST's Unilateral May 9, 2025 Deadline

NST's motion does not identify any authority to support its May 9, 2025 deadline. The scheduling order does not include a substantial completion of document production deadline (and NST never suggested including one). NST does not identify a single case that suggests that a production that is completed two months before the close of fact discovery is untimely. And it does not identify a single case that suggests that a rolling production that is completed four months after a broad set of RFPs are served is unreasonable. Instead, NST cites cases where a

7

party refused to produce requested documents,[3] or where parties did not comply with Court Orders.[4] Neither situation has occurred in this case.

### B. Case Law Confirms Qualcomm's Anticipated Production Schedule is Reasonable

As described above, Qualcomm has diligently produced millions of pages of documents and participated in discovery in good faith throughout this case. Qualcomm's anticipated production schedule related to the additional documents requested by NST's "prioritized" set of RFP's served in February is reasonable. This schedule anticipates a rolling production of documents that will be completed less than four months after the requests were served, more than two months before the close of fact discovery, and only three weeks after NST's proposed deadline.

Given the broad and diverse nature of NST's requests and the large number of products NST has accused of infringing, this is reasonable. As stated above, identifying, collecting, and producing the documents that provide the information NST seeks has been extremely burdensome. It has required Qualcomm to identify and interview dozens of individuals from many different parts of Qualcomm's business, and to identify, collect, and produce documents from those many disparate parts. It is reasonable for Qualcomm to take a few months to

---

[3] See *Beneplace, Inc. v. Pitney Bowes, Inc.*, No. A-15-CV-065, 2016 U.S. Dist. LEXIS 28414 (W.D. Tex. Mar. 7, 2016) (overruling objections to, e.g. burden and overbreadth).

[4] See *Hawkins v. Nexion Health Mgmt, Inc.*, 5:13-cv-121, Doc. 146, at 9 (E.D. Tex. April 29, 2015) ("[T]he Court finds Defendants have failed to fully comply with the Court's December 18, 2015 Order . . . ."); *Maryland Co., LLC v. ExxonMobil Corp.*, 6:10-cv-01781, Doc. 198, at 12 (W.D. La. Dec. 13, 2011) ("[T]he undersigned also finds that ExxonMobil acted willfully in failing to act diligently in complying with the undersigned's discovery order …."); *Lechuga v. Magallanes*, 2017 U.S. Dist. LEXIS 221493 at *2 (W.D. Tex. June 1, 2017) (defendants failed to comply with Court orders two times in a row); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1015 (5th Cir. 1981) ("After two more extensions of time, the plaintiffs had still failed to answer to the interrogatories as ordered by the magistrate on April 23, 1979.").

complete these productions, especially considering the many other time pressures on Qualcomm's lawyers, engineers, and business people that exist both within this case and outside of it. *See Superior Indus., Inc. v. Precision, Inc.*, No. 4:21-cv-00224, 2022 U.S. Dist. LEXIS 238875 (S.D. Iowa Jan. 27, 2022) (declining to order substantial completion of document production three and a half months after requests for production were served); *see also Sandisk3D IP Holdings Ltd. v. Viasat, Inc.*, No. 22-cv-04376, Dkt. No. 158 at 2 (N.D. Cal. March 10, 2025) (setting a substantial completion deadline for January 6, 2025 when the close of fact discovery was February 7, 2025).

Perhaps recognizing that Qualcomm's timeline is reasonable given NST's February service of its "prioritized" RFPs, NST attempts to rely on its previously served RFPs. *See e.g.* Dkt. 300 at 11 ("NST has been requesting much of this information for over 18 months."). But the Court has already confirmed that Qualcomm's approach in responding to those previous RFPs was reasonable. NST's first set of requests were overly broad and difficult to parse. *See* Dkt. 300-3 at 4:24-25; 90:16-18. NST's Third Set of RFPs included 289 requests. The Court recognized this was unduly burdensome and ordered NST to serve a limited subset. *See* Dkt. 287. NST's suggestion that Qualcomm should have somehow guessed which documents NST wanted and begun its collections based on those earlier requests is unreasonable. To the extent there have been delays in discovery, it is the result of NST's failure to provide document requests that adequately described a reasonable set of documents that NST believed should be produced.

### C. The Court Should Require NST to Pay the Reasonable Expenses Qualcomm Incurred Opposing this Motion Under Rule 37(a)(5)(B)

Qualcomm does not request expenses under Rule 37 lightly. While NST has repeatedly requested the Court grant NST its attorneys' fees, Qualcomm has treated the parties' disagreements as good-faith discovery disputes. *See* Dkt. 139 at 11, Dkt. 275 at 6. But this is the

9

third time that NST's unnecessarily aggressive discovery tactics have resulted in motion practice. Dkts. 139, 242, 274, 287. In this motion, NST's waste of Qualcomm and the Court's resources is not substantially justified, so the Court should award Qualcomm its expenses incurred in opposing the motion, including its attorneys fees. Fed. R. Civ. P. 37(a)(5)(B); *see CBT Flint Partners, LLC v. Return Path, Inc.*, No. 1:07-cv-1822, Dkt. No. 206, at 6-7 (N.D. Ga. Aug. 7, 2008) (Ex. K) (granting request for expenses incurred opposing discovery motion because, among other things, "Plaintiff's demand that document production be completed by May 1 rather than May 12 was an unreasonable basis for continuing to pursue the Motion to Compel."). Qualcomm has been diligently making productions in this case, and has agreed to produce documents in response to NST's RFPs. Qualcomm further agreed to produce these documents on a rolling basis and complete its production more than two months before the close of fact discovery. Nevertheless, NST decided to burden Qualcomm and the Court with motion practice because it wants Qualcomm to produce documents **three weeks earlier** than Qualcomm anticipated it would be able to complete its productions. NST has not identified any authority supporting its unilateral deadline. Its motion is not justified, and the Court should grant Qualcomm the reasonable expenses it incurred in opposing the motion.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: April 23, 2025 | */s/ Nathan D. Louwagie* <br> Deron R. Dacus (State Bar No. 00790553) <br> **The Dacus Firm, P.C.** <br> 821 ESE Loop 323, Suite 430 <br> Tyler, Texas 75701 <br> Telephone: (903) 705-1117 <br> Facsimile: (903) 581-2543 <br> ddacus@dacusfirm.com <br><br> J. Derek Vandenburgh (*pro hac vice*) <br> Joseph W. Winkels (*pro hac vice*) <br> Caroline Marsili (*pro hac vice*) <br> Nathan D. Louwagie (*pro hac vice*) <br> Ryan D. Rypka (*pro hac vice*) <br> **CARLSON, CASPERS, VANDENBURGH & LINDQUIST, P.A.** <br> 225 South Sixth Street, Suite 4200 <br> Minneapolis, MN 55402 <br> (612) 436-9600 <br> dvandenburgh@carlsoncaspers.com <br> jwinkels@carlsoncaspers.com <br> cmarsili@carlsoncaspers.com <br> nlouwagie@carlsoncaspers.com <br> rrypka@carlsoncaspers.com <br><br> Andrea L. D'Ambra (pro hac vice) <br> Claire M. Huitt (pro hac vice) <br> Norton Rose Fulbright US LLP <br> 1301 Avenue of the Americas <br> New York, NY 10019 <br> Telephone: (212) 318-3015 <br> Facsimile: (212) 318-3400 <br> andrea.dambra@nortonrosefulbright.com <br> claire.huitt@nortonrosefulbright.com <br><br> *Counsel for Defendants Qualcomm Incorporated, Qualcomm Technologies, Inc. Qualcomm CDMA Technologies Asia-Pacific PTE Ltd., and Qualcomm Global Trading PTE Ltd.* |

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2025, a true and correct copy of the foregoing document was served or delivered electronically to all counsel of record.

*/s/ Nathan D. Louwagie*
Nathan D. Louwagie
