IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC,<br><br>                Plaintiff.<br><br>     v.<br><br>QUALCOMM INCORPORATED, QUALCOMM TECHNOLOGIES, INC., QUALCOMM CDMA TECHNOLOGIES ASIA-PACIFIC PTE LTD., QUALCOMM GLOBAL TRADING PTE LTD., and ARTERIS, INC.<br><br>                Defendants. | Civil Action No. 1:22-cv-1331-DAE |

**QUALCOMM'S OPPOSED MOTION TO STAY DEADLINES AFTER THE CLOSE OF FACT DISCOVERY**

# TABLE OF CONTENTS

I. Introduction ........................................................................................................................ 1

II. Background ........................................................................................................................ 1

    A. Status of Asserted Patents ....................................................................................... 1

    B. Status of the Case .................................................................................................... 3

III. Legal Standard .................................................................................................................... 3

IV. Argument ............................................................................................................................ 4

    A. Stage of the Case ..................................................................................................... 4

    B. Simplification .......................................................................................................... 6

    C. Undue Prejudice ...................................................................................................... 8

V. Conclusion ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
    314 F.3d 1313 (Fed. Cir. 2003) ................................................................................... 8

*Bell Semiconductor, LLC v. NXP Semiconductors,*
    *N.V.*, No. 1:20-CV-611-LY, 2022 WL 1447948 (W.D. Tex. Feb. 7, 2022) .......................... 4

*Clinton v. Jones*,
    520 U.S. 681 (1997) ........................................................................................................ 3

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir.1962) ............................................................................................ 4

*Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*,
    No. A-13-CA-1025-SS, 2015 WL 3773014 (W.D. Tex. June 16, 2015) .......................... 10

*CyWee Grp. Ltd. v. Samsung Elecs. Co.*,
    No. 2:17-CV-00140-WCB-RSP, 2019 WL 11023976 (E.D. Tex. Feb. 14, 2019) .............. 6

*e-Watch, Inc. v. ACTi Corp.*,
    No. SA-12-CA-695-FB, 2013 WL 6334372 (W.D. Tex. Aug. 9, 2013) ............................. 9

*Fishman Jackson PLLC v. Israely*,
    180 F. Supp. 3d 476 (N.D. Tex. 2016) ............................................................................. 4

*IMS Tech., Inc. v. Haas Automation, Inc.*,
    206 F.3d 1422 (Fed. Cir. 2000) ....................................................................................... 7

*In re Papst Licensing GmbH & Co. KG Pat. Litig.*,
    320 F. Supp. 3d 132 (D.D.C. 2018) ................................................................................. 5

*Jenam Tech, LLC v. Google LLC*,
    No. 21-CV-07994-JST, 2022 WL 20275184 (N.D. Cal. Mar. 28, 2022) ........................... 5

*Kaneka Corp. v. SKC Kolon PI, Inc.*,
    No. CV 11-3397 JGB (RZX), 2014 WL 12673678 (C.D. Cal. Dec. 5, 2014) .................... 6

*Kirsch Research & Dev., LLC v. Tarco Specialty Prods.*,
    No. 6:20-cv-00318-ADA, 2021 WL 4555804 (W.D. Tex. Oct. 4, 2021) .......................... 6

*Landis v. North American Company*,
    299 U.S. 248 (1936) ........................................................................................................ 3

*SuperMedia Inc. v. Bell*,
      No. 3:12-CV-2034-GFISH, 2012 WL 5389683 (N.D. Tex. Nov. 2, 2012) .......................... 3

*TC Tech. LLC v. T-Mobile USA, Inc.*,
      No. 6-20-CV-00899-ADA, 2021 WL 8083373 (W.D. Tex. Dec. 7, 2021) ......................... 9

*THL Holding Co., LLC v. Apple, Inc.*,
      No. 1:23-CV-0548-DAE-SH, 2024 WL 4846765 (W.D. Tex. Nov. 15, 2024) ................... 9

*Wonderland NurseryGoods Co. v. Kids II, Inc.*,
      No. 1:13-CV-01114-ELR, 2017 WL 10675430 (N.D. Ga. Jan. 4, 2017) ....................... 5, 6

**Statutes**
35 U.S.C. § 112 ............................................................................................................................. 7

35 U.S.C. § 287 ............................................................................................................................. 5

35 U.S.C. § 315(b) ...................................................................................................................... 10

**Rules**
37 C.F.R. § 42.122(b) .................................................................................................................. 10

## I.  INTRODUCTION

There is currently substantial uncertainty over the viability of NST's claims for all four patents that NST contends are still in the case. Two of the patents (the '449 and '052 patents) were recently found unpatentable by the Patent Trial and Appeal Board ("PTAB"), and NST has indicated that it intends to appeal those decisions. The '449 patent was also held indefinite by this Court, and NST insists that it remains in the case because NST has moved for reconsideration of the Court's decision. As for the other two patents, Qualcomm has cross-moved for reconsideration of its indefiniteness argument as to the '818 patent that, if granted, would be dispositive of that patent, and Qualcomm has moved to strike NST's contentions as to the '2893 patent without leave to amend because NST's contentions do not comply with the Scheduling Order—even after four tries.

Under these unique circumstances, the Court should pause further deadlines in the case after the close of fact discovery on July 30, 2025, pending resolution of the IPR appeals and the pending motions described above. It simply does not make sense for the Court and the parties to expend resources on expert discovery, dispositive motions and other pretrial matters until there is further clarity regarding what patents and disputes, if any, remain. ▮▮▮▮▮▮▮▮▮▮ NST will not be unduly prejudiced by a stay of deadlines.

## II.  BACKGROUND

### A.  Status of Asserted Patents

NST filed this case asserting infringement of six patents. Dkt. 1. The table below summarizes the current status of each patent:

1

| Patent | Current Status |
|---|---|
| 8,086,800 ("the '800 patent") | **Held Indefinite by E.D. Tex. and Withdrawn by NST**<br>• Judge Schroeder in the E.D. Tex. found the claims to be indefinite. *Network System Technologies, LLC v. Texas Instruments Inc.*, No. 2-22-cv-00482-RWS, at *52-57, 60 (E.D. Tex. Jan. 3, 2024).<br>• NST subsequently withdrew the '800 patent from this case. Dkt. 121. |
| 7,769,893 ("the '9893 patent") | **Held Indefinite by this Court and Withdrawn by NST**<br>• This Court found the claims to be indefinite in its Claim Construction Order. Dkt. 296 at 29-32.<br>• NST subsequently withdrew the '9893 patent from further consideration by not serving Final Infringement Contentions. |
| 7,373,449 ("the '449 patent") | **Held Indefinite by this Court and Unpatentable by the PTAB; Motion for Reconsideration Pending**<br>• This Court found the claims to be indefinite in its Claim Construction Order. Dkt. 296 at 23-27.<br>    ○ NST has moved for reconsideration. Dkt. 297.<br>• The PTAB issued a Final Written Decision on June 13, 2025 invalidating all asserted claims in this case. Ex. A.<br>    ○ NST filed a Request for Director Review of the Final Written Decision on July 14, 2025. Ex. F. |
| 7,594,052 ("the '052 patent") | **Held Unpatentable by the PTAB**<br>• The PTAB issued a Final Written Decision on June 13, 2025 invalidating all asserted claims in this case. Ex. B.<br>    ○ NST filed a Request for Rehearing before the PTAB on July 14, 2025. Ex. G. |
| 7,366,818 ("the '818 patent") | **Motion Pending That Would be Dispositive**<br>• Qualcomm has moved for reconsideration of the Court's Claim Construction Order, arguing that the asserted claim of the '818 patent should be found indefinite for the same reason the Court found the '449 patent indefinite. Dkt. 301 and 302. |
| 8,072,893 ("the '2893 patent") | **Motion Pending That Could be Dispositive**<br>• Qualcomm has moved to strike NST's infringement contentions for failing to explain why Qualcomm's products allegedly meet all claim limitations. Dkt. 324-1.<br>• Qualcomm has asked that NST not be given leave to further amend its contentions for the '2893 patent. *See* Dkt. 324-1 at 8-10; Dkt. 357-1 at 4-5. |

**B.    Status of the Case**

Qualcomm previously moved to stay this case in July 2024, shortly after the IPR proceedings on the '052 and '449 patents were instituted. Dkt. 130. The Court denied that motion. Dkt. 155 at 2. In its oral ruling on the motion, the Court indicated that it was not convinced that "the scope of what the parties will have to litigate over the next year" would be sufficiently simplified by the PTAB decisions given that only two out of five patents were subject to IPRs. Dkt. 170 at 51:17-52:2; *see also id.* at 52:13-18.

It is now a year later, and the case is in a much different place than when Qualcomm filed the last motion to stay. The parties are scheduled to complete fact discovery on July 30, 2025. Dkt. 80 ¶ 10. And, as discussed above, there are at most four patents remaining, each of which suffers from serious challenges to its viability in this case. Exs. A, B; Dkt. 296, 301, 302, 324-1.

In the meantime, the deadlines for expert discovery and dispositive motions are fast approaching. Opening and rebuttal expert reports are due August 29, 2025 and October 8, 2025 respectively, and expert discovery is set to close November 7, 2025. Dkt. 80 ¶¶ 12-13. Daubert motions are due December 7, 2025. *Id.* ¶ 15. Dispositive motions are also due December 7, 2025 with responses and replies due January 6, 2026 and January 27, 2026 respectively. *Id.* ¶ 16.

No further deadlines have been set in the case and no trial date has been set.

**III.    LEGAL STANDARD**

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). It can stay proceedings for the "purpose of judicial economy and in its own interests and the interests of the litigants before it." *SuperMedia Inc. v. Bell*, No. 3:12-CV-2034-GFISH, 2012 WL 5389683, at *1 (N.D. Tex. Nov. 2, 2012) (*citing Landis v. North American Company*, 299 U.S. 248, 254–55 (1936)). Though the factors "vary depending on the context," courts "must consider 'the competing

3

interests which will be affected by the granting or refusal to grant a stay, including 'the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 482 (N.D. Tex. 2016) (*quoting CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir.1962)).

In the context of a stay involving IPRs, courts generally consider three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question; and (3) the status of the litigation at the time a stay is requested." *Bell Semiconductor, LLC v. NXP Semiconductors, N.V.*, No. 1:20-CV-611-LY, 2022 WL 1447948, at *1 (W.D. Tex. Feb. 7, 2022).

## IV. ARGUMENT

All of the relevant factors favor staying further deadlines, based on the unique facts present in this case.

### A. Stage of the Case

This is a natural breakpoint for a pause in the case. Fact discovery is set to be completed on July 30, 2025. Dkt. 80 ¶ 10. Thereafter, the parties have 100 days to conduct expert discovery. *Id.* ¶ 13. This will include at least opening and rebuttal expert reports on validity, infringement, and damages, and depositions of each of the parties' experts.[1] The parties then have 30 days to file *Daubert* motions and summary judgment motions, and another 51 days to complete summary judgment briefing. *Id.* ¶ 16. If all four patents remain in suit, Qualcomm expects to file summary

---

[1] NST is insisting that the '449 patent remains in the case for the purpose of expert discovery even though the Court has held the asserted claims of that patent invalid as indefinite. Qualcomm disagrees.

4

judgment motions for non-infringement of multiple patents, invalidity of at least one patent, and failure to mark for the '818 patent under 35 U.S.C. § 287. Given NST's conduct in fact discovery, Qualcomm also expects it may be required to file motions to strike expert testimony stemming from NST's failure to provide adequate disclosure of its theories.

No further deadlines are currently set in the case. However, after summary judgment, substantial work would still need to go into litigating each of the four patents, including for example motions in limine, deposition designations and counter designations, exchanges of witnesses and exhibit lists, the pretrial conference, pretrial orders, jury selection, and trial. All of this work remains, yet much or all of it may be unnecessary depending on the outcome of the IPR proceedings and this Court's rulings on the currently pending motions.

Qualcomm's request for a stay in view of the PTAB Final Written Decisions at this stage is compelling because the IPRs have completed and it is known that the challenged claims, which include all claims asserted by NST in this case, were found unpatentable. Indeed, courts routinely stay cases based on PTAB final decisions of invalidity as to less than all patents in suit. *See, e.g.*, *Wonderland NurseryGoods Co. v. Kids II, Inc.*, No. 1:13-CV-01114-ELR, 2017 WL 10675430, at *1 (N.D. Ga. Jan. 4, 2017) (initially denying a stay upon IPR institution but then granting stay after one of two patents was found invalid in a final written decision); *In re Papst Licensing GmbH & Co. KG Pat. Litig.*, 320 F. Supp. 3d 132, 133-34 (D.D.C. 2018) (granting stay after three of the four patents in suit were found invalid in final written decisions by the PTAB); *Jenam Tech, LLC v. Google LLC*, No. 21-CV-07994-JST, 2022 WL 20275184, at *1 (N.D. Cal. Mar. 28, 2022) (granting stay where one of the nine patents in suit was found invalid by the PTAB in a final written decision, and six other patents were subject to pending IPRs).

Courts have also granted such stays at significantly later stages than this case. For

example, in *Wonderland*, the parties had completed both fact and expert discovery and the special master had issued his Report and Recommendation on nine pending summary judgment motions. 2017 WL 10675430, at *2. Similarly, in *Kaneka*, the parties had completed fact and expert discovery and briefed summary judgment motions. *Kaneka Corp. v. SKC Kolon PI, Inc.*, No. CV 11-3397 JGB (RZX), 2014 WL 12673678, at *2 (C.D. Cal. Dec. 5, 2014). The case at hand is not in its infancy, but "the most burdensome parts of the case—filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future." *CyWee Grp. Ltd. v. Samsung Elecs. Co.*, No. 2:17-CV-00140-WCB-RSP, 2019 WL 11023976, at *6 (E.D. Tex. Feb. 14, 2019).

B.  **Simplification**

Simplification is the "most important factor bearing on whether to grant a stay." *Kirsch Research & Dev., LLC v. Tarco Specialty Prods.*, No. 6:20-cv-00318-ADA, 2021 WL 4555804, at *3 (W.D. Tex. Oct. 4, 2021). Here, the case as a whole will undoubtedly be simplified by a stay of the deadlines subsequent to the close of fact discovery.

The PTAB has issued final written decisions in the IPRs for the '449 and '052 patents invalidating all challenged claims, including all asserted claims for those patents. Exs. A, B. Assuming the Federal Circuit affirms the PTAB's decisions (or NST does not appeal), the PTAB will issue certificates cancelling all the asserted claims for the '449 and '052 patents. *Wonderland*, 2017 WL 10675430, at *1-2. As the *Wonderland* Court said, trying a case involving such patents would be inappropriate:

> The Court would be hard pressed to think of any course of action that would more complicate things than to have a patent infringement jury trial centered on claims in a patent that is as of now on its way to cancellation, and as to which the Plaintiff has to get one or another of authorized decisionmakers to change the course of events. Unless and until that happens, trying this case now would[,] in the Court's estimation[, be] inappropriate by any measure.

6

*Id.* at *2.

Even if the PTAB Final Written Decisions are not affirmed, there will still be simplification. The PTAB would need to decide additional issues on remand, including potentially additional grounds for invalidity that the PTAB did not previously need to reach. And the Court will benefit from the PTAB and Federal Circuit's expertise and guidance, which will be relevant to the '449 and '052 patents and may be relevant to the other patents as well.

The pending motions before this Court will also simplify the case and are needed before the parties move forward with expert reports. The Court held the claims of the '449 patent invalid because the term "communication manager" was indefinite and could not be construed. Dkt. 296 at 23-27. The parties should not move forward on a patent that this Court has held invalid. And, even if NST's motion for reconsideration were granted, the parties would still need a construction for the term "communication manager."[2]

The parties' motions for reconsideration are also intertwined and may result in the invalidation of the '818 patent. The basis for NST's argument that the Court erred in holding "communication manager" in the '449 patent indefinite is that it cannot be reconciled with the Court's construction of "dropping means" in the '818 patent. Dkt. 297 at 1, 3-10. If the Court agrees with NST that there is inconsistency but agrees with Qualcomm that the Court was correct in its analysis of the '449 patent, the Court should then grant Qualcomm's cross-motion for reconsideration (Dkt. 301 and 302), removing yet another patent from the case.

---

[2] NST's reconsideration motion does not dispute the Court's determination that "communication manager" is governed by 35 U.S.C. § 112, ¶ 6 (*see* Dkt. 297). Therefore, if the Court were to grant reconsideration, it would need to identify the disclosed structure for performing the claimed function in order for the parties to provide expert reports on infringement and invalidity. *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000) (discussing two-step analysis for determining infringement of a claim with limitations governed by § 112, ¶ 6).

7

Finally, Qualcomm's motion to strike NST's infringement contentions for the '2893 patent (Dkt. 324-1) will also fundamentally affect the scope and schedule of the case. If the Court grants Qualcomm's motion without granting leave to amend, that will result in removal of yet another patent from the case. And even if the Court were to give NST an undeserved fifth try at contentions for the '2893 patent, Qualcomm still needs better contentions from NST on that patent before it can reasonably be expected to provide expert reports on invalidity and non-infringement. Qualcomm is entitled to have its expert interpret the claim as broadly for invalidity as NST is interpreting it for infringement. *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) ("It is axiomatic that claims are construed the same way for both invalidity and infringement.").

The simplification and efficiency benefits of waiting for resolution of the IPR appeals and the pending motions before this Court are particularly great here because the four patents NST is still asserting are directed to distinctly different aspects of network-in-chip ("NoC") technology. Ex. L (excerpts from NST's technology tutorial describing patents in suit). As a result, there will be little, if any, overlap in the expert analysis of infringement, validity and damages for each patent relative to the others. Therefore, if the PTAB rulings are affirmed, **or** if the motion for reconsideration is granted, **or** if the motion to strike is granted, the case gets simpler because neither the parties nor the Court will need to address the infringement, validity and damages issues uniquely associated with the affected patent.

**C.     Undue Prejudice**

NST is a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. J at 241:2-5; *see also* Ex. K at 43:3-12. As one of its two principals recently candidly admitted in deposition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. J at 50:6-24 ▮▮▮▮▮▮▮▮

8

███████████████████████████████████ Ex. K at 62:25-63:1-2 ███████████

███████████████████████████████████████████████████████████ Therefore, any alleged injury caused to NST by infringement of the patents-in-suit is purely monetary, and any delay in reaching a judgment can be compensated by prejudgment interest. *See THL Holding Co., LLC v. Apple, Inc.*, No. 1:23-CV-0548-DAE-SH, 2024 WL 4846765, *3 (W.D. Tex. Nov. 15, 2024). NST's interest in timely enforcement of its patents alone is not enough to defeat a motion to stay. *TC Tech. LLC v. T-Mobile USA, Inc.*, No. 6-20-CV-00899-ADA, 2021 WL 8083373, at *2 (W.D. Tex. Dec. 7, 2021) ("because that interest is present in every case where a patent owner resists a stay, that alone is insufficient to defeat a motion to stay"); *e-Watch, Inc. v. ACTi Corp.*, No. SA-12-CA-695-FB, 2013 WL 6334372, at *9 (W.D. Tex. Aug. 9, 2013) ("the mere fact and length of any delay…does not demonstrate prejudice sufficient to deny [a] request for a stay"). NST also cannot complain about delay when discovery has shown ███████████████

████████████████████████████████████████████████████████████████████

██████ Exs. H, I. ██████████████████████████████████████████████

████████████████████ Moreover, any risk of the loss of evidence with the passage of time is mitigated as the parties will have completed fact discovery before the stay is entered.

The only potential prejudice is to Qualcomm if a stay of deadlines is denied. Qualcomm will be prejudiced if it has to prepare expert reports or go to trial on patents that the PTAB and this Court have invalidated. Qualcomm will also be prejudiced if it is forced to serve invalidity, non-infringement, and damages reports on the '2893 patent despite NST's failure to explain how it contends Qualcomm infringes.

Courts often consider the following subfactors in determining undue prejudice: "(1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review

9

proceedings; and (4) the relationship of the parties." *Crossroads Sys., Inc. v. Dot Hill Sys. Corp.*, No. A-13-CA-1025-SS, 2015 WL 3773014, at *3 (W.D. Tex. June 16, 2015). Each of these subfactors supports the finding of no undue prejudice.

First, Qualcomm did not unreasonably delay filing the IPR against the '052 patents and joining the IPR against the '449 patent filed by Samsung. Qualcomm filed the IPR against the '052 patent within the time allowed by statue (within one year of service of the complaint) and moved to join the instituted IPR against the '449 patent without causing any delay in that IPR's schedule. 35 U.S.C. § 315(b); 37 C.F.R. § 42.122(b). Second, Qualcomm was diligent in seeking a stay. Qualcomm reached out to NST a week after the PTAB issued its final written decisions and filed its motion less than three weeks after the parties met and conferred (while also handling multiple depositions and other motions during a hectic period before the fact discovery deadline). *See* Ex. C-E. Third, the IPRs have been completed. Trial in this case has not yet been scheduled. While NST is trying to slow the IPR appeal process by filing requests for rehearing and director review that are rarely granted (Exs. F, G), the appeals of the PTAB's Final Written Decisions will almost certainly still be well ahead of any appeal from trial. Fourth, NST is ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. K at 43:3-12.

## V.     CONCLUSION

Given the PTAB's final written decisions invalidating the '449 and '052 patents, this Court's decision invalidating the '449 patent, and the pending motions on the '449, '818 and '2893 patents, it would be inefficient and wasteful for the parties to charge ahead into expert discovery and dispositive motions without further clarification. A stay of deadlines should be granted to give this Court and the PTAB an opportunity to provide guidance on what patents remain in case.

Dated: July 17, 2025

*/s/ J. Derek Vandenburgh*
Deron R. Dacus (State Bar No. 00790553)
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: (903) 705-1117
ddacus@dacusfirm.com

J. Derek Vandenburgh (*pro hac vice*)
Joseph W. Winkels (*pro hac vice*)
Nathan D. Louwagie (*pro hac vice*)
Peter M. Kohlhepp (*pro hac vice*)
Ryan D. Rypka (*pro hac vice*)
Seung Sub Kim (*pro hac vice*)
CARLSON, CASPERS, VANDENBURGH &
LINDQUIST, P.A.
225 S. Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9600
dvandenburgh@carlsoncaspers.com
jwinkels@carlsoncaspers.com
nlouwagie@carlsoncaspers.com
pkohlhepp@carlsoncaspers.com
rrypka@carlsoncaspers.com
ekim@carlsoncaspers.com

Andrea L. D'Ambra (*pro hac vice*)
Claire M. Huitt (*pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 318-3015
andrea.dambra@nortonrosefulbright.com
claire.huitt@nortonrosefulbright.com

*Counsel for Defendants Qualcomm Incorporated, Qualcomm Technologies, Inc., Qualcomm CDMA Technologies Asia-Pacific PTE Ltd., and Qualcomm Global Trading PTE Ltd.*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on June 30, 2025 counsel for Defendants and counsel for Plaintiff met and conferred in good faith by telephone. The discussions have conclusively ended in an impasse leaving an open issue for the Court to resolve.

*/s/ J. Derek Vandenburgh*
J. Derek Vandenburgh

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 17, 2025 all counsel of record will be served the foregoing motion, declaration, and sealed exhibits by electronic mail.

*/s/ J. Derek Vandenburgh*
J. Derek Vandenburgh
