# Exhibit 9

# JX0105

# Public Redacted Version

# CDMA COMPLETE TERMINAL PATENT LICENSE AGREEMENT

**THIS CDMA COMPLETE TERMINAL PATENT LICENSE AGREEMENT** (the "**Agreement**") is entered into effective as of October 1, 2015 (the "**Effective Date**") between QUALCOMM Incorporated, a Delaware corporation ("QUALCOMM"), and Sony Corporation, a Japanese corporation ("SONY"), with respect to the following facts:

## RECITALS:

**WHEREAS,** SONY desires to obtain a license under QUALCOMM's patents to manufacture, use and sell certain complete end-user devices, and QUALCOMM desires to grant such license in exchange for the royalties and other provisions hereof in accordance with the terms and conditions set forth in this Agreement;

**WHEREAS,** SONY acknowledges that QUALCOMM is willing to grant separate licenses to SONY under QUALCOMM's Technically Necessary IPR and QUALCOMM's Included Other IPR, but upon due consideration and for its own benefit, SONY wishes to obtain a license under this Agreement to both QUALCOMM's Technically Necessary IPR and QUALCOMM's Included Other IPR;

**WHEREAS,** the Parties are terminating the SONY SULA, effective as of the Effective Date, pursuant to the terms and conditions set forth in this Agreement; and

**WHEREAS,** QUALCOMM desires to obtain covenants from SONY not to assert, and to exhaust remedies for, claims of infringement of SONY's patents with respect to the manufacture, use and sale of certain Qualcomm's Components by QUALCOMM and its customers and suppliers, and SONY desires to grant such covenants in accordance with the terms and conditions set forth in this Agreement;

**WHEREAS,** QUALCOMM desires to have SnapTrack, Inc., and/or one or more other Entities designated by QUALCOMM, obtain certain patents owned by SONY and/or its Affiliates, and SONY desires to assign or have its Affiliates assign such patents under the terms set forth in the patent acquisition agreement attached as <u>Exhibit D</u>; and

**WHEREAS,** the Parties desire to enter into an agreement for such license from QUALCOMM, such covenants from SONY, and such patent transfer from SONY to QUALCOMM on terms that are fair and reasonable and that reflect proper value exchanged between the Parties.

1

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101212
Q2017MDL1_03115389
CX7614-001
JX0105-001

**AGREEMENT**:

NOW, **THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      **HEADINGS AND DEFINITIONS**.  Section headings used in this Agreement are inserted for the purpose of convenience only and are not intended to affect the meaning or interpretation of any provision in this Agreement.  For the purpose of the construction and interpretation of this Agreement, the word "including" (and variations thereof such as "include" and "includes") and the phrase "such as" are not terms of limitation, but rather will be deemed to be followed by the words "without limitation," and the words "herein," "hereof," and "hereunder" refer to this Agreement as a whole.  Unless expressly stated otherwise, references in this Agreement to "Sections" mean sections of this Agreement and include all subsections thereof (e.g., Section 3 includes Section 3.1, 3.2, 3.3, 3.4, 3.5, 3.6, 3.7, 3.8 and 3.9, and Section 3.1 includes Sections 3.1.1, 3.1.2, 3.1.3 and 3.1.4).  All references to days (other than business days), months, and quarters in this Agreement mean, respectively, calendar days, calendar months, and calendar quarters.  Any reference to "third party" or "third parties" in this Agreement does not mean either Party or any of its Affiliates.  Whenever a Party's approval or consent is required under this Agreement, the Party may grant or withhold its consent, or impose conditions on granting its consent, in its absolute discretion without any requirement to act reasonably, unless expressly stated otherwise.  For purposes of this Agreement, the following definitions apply:

"**Access Point**" means a complete device that (i) connects to CDMA network infrastructure equipment over a CDMA wireless network utilizing a wireless air interface to transmit and receive date in compliance with the CDMA Standard, (ii) does not incorporate a speaker or keypad, (iii) does not enable end user initiation or reception of a CDMA voice call or data transmission (other than certain operator and/or device requested status information) without connection (whether by way of a physical connection (such as wire or optical fiber) or by a wireless local area network connection) to a Complete Terminal, (iv) when electronically connected to a Complete Terminal, is not physically attached to such Complete Terminal, such that a visible gap is maintained between such Complete Terminal and the Access Point at all times and the Complete Terminal and the Access Point would not be handled or viewed as or deemed to be a single or complete integrated product by an end-user, and (v) is capable of supporting multiple simultaneous users.

"**Active QUALCOMM Licensee**" means, on any specific date (the "**Reference Date**"), any third party that (a) has (or any of whose Affiliates has) a royalty-bearing patent license from a QUALCOMM Party covering Telephones and/or Tablets, and (b)

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101213
Q2017MDL1_03115390
CX7614-002
JX0105-002

either (i) has made, has an Affiliate that has made, or has reported to QUALCOMM that it or any of its Affiliates made, sales of Telephones and/or Tablets under such patent license, at any time within six (6) months preceding the Reference Date or (ii) has (or any of whose Affiliates has), as of the Reference Date, issued a public statement that it intends, or has documented plans approved by its executive management or board of directors (or similar governing authority), to start making or selling Telephones and/or Tablets within six (6) months of the Reference Date, provided that such public statement is not referring to (or such plans are not based on) the potential acquisition of the SONY Covered Terminal business.

"**Affiliate**" of a first Entity means a second Entity that, as of the Effective Date or subsequent thereto, controls, is controlled by, or is under common control with, the first Entity, but any such second Entity will be deemed to be an Affiliate of such first Entity only as long as such control exists, and for the purposes of this definition, "control" means direct or indirect ownership of more than fifty percent (50%) of the Voting Power of the Entity in question or, if the Entity in question does not have outstanding voting shares or securities, more than fifty percent (50%) of the equity interests in such Entity. An Affiliate of a Party will not be considered a third party for purposes of this Agreement.

"**Arbitration Award**" means an amount awarded after a Final Judgment in an arbitration pursuant to Section 18.

"**Assert**" and its derivatives, including "**Assertion**," "**Asserts**," and "**Asserted**," means to commence or prosecute any patent infringement Litigation.

"**ATSC Standards**" means digital television standards that are adopted as industry standards by the Advanced Television Systems Committee, Inc. ("ATSC") and are defined in the technical specifications issued by ATSC including A/53 Parts 1-6, A54A, A65C, A69, A74, A103, A105, and A112.

"**CDMA**" means any spread spectrum telecommunications standard, specification or system that specifies or utilizes code division multiple access.

"**CDMA Standard**" means any wireless air interface standard that implements CDMA and which is adopted as an industry standard by the Telecommunications Industry Association ("TIA"), the European Telecommunication Standards Institute ("ETSI"), Japan's Association of Radio Industries and Businesses ("ARIB") or any other recognized international standards bodies, including the CDMA2000 family of standards (e.g., CDMA2000 1xRTT, 1xEV-DO, 1xEV-DO Rev. A, 1xEV-DO Rev B.), the WCDMA family of standards (e.g., UMTS, HSDPA, HSUPA, HSPA+), TD-CDMA and TD-SCDMA.

3

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101214
Q2017MDL1_03115391
CX7614-003
JX0105-003

"**Change in Control**" means, with respect to any Entity, the occurrence of any of the following, in any single transaction or series of related transactions:

(a)    any Person or group (within the meaning of Sections 13(d)(3) or 14(d)(2) of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**")) (other than any trustee or other fiduciary holding securities under any employee benefit plan of such Entity) that does not, immediately prior to the consummation of the respective transaction or series of related transactions: (i) beneficially own, directly or indirectly, more than fifty percent (50%) of the voting power of such Entity (or direct or indirect Parent of such Entity); or (ii) have the right to appoint more than fifty percent (50%) of the members of the board of directors or similar governing body of such Entity (or direct or indirect Parent of such Entity), becomes the beneficial owner (except that an acquiring Person or group shall be deemed to be the beneficial owner of all shares that such Person or group has the right to acquire pursuant to any agreement or arrangement or upon exercise of conversion rights, warrants or options or otherwise, without regard to the sixty (60) day period referred to in Rule 13d-3 under the Exchange Act), directly or indirectly, of securities of such Entity or any direct or indirect Parent of such Entity representing more than fifty percent (50%) of the combined voting power of such Entity (or direct or indirect Parent of such Entity), or obtains the right to appoint more than fifty percent (50%) of the members of the board of directors or similar governing authority of such Entity (or direct or indirect Parent of such Entity);

(b)    the consummation of a merger, consolidation, statutory share exchange, tender offer, exchange offer, recapitalization, restructuring, joint venture, or other similar transaction directly or indirectly involving such Entity (or any direct or indirect Parent of such Entity), other than any such transaction following which the voting securities of such Entity (or such direct or indirect Parent of such Entity) outstanding immediately prior to that consummation continue to represent (either by remaining outstanding or by being converted into voting securities of the surviving or resulting Entity) more than fifty percent (50%) of the combined voting power of the surviving or resulting Entity outstanding immediately after such consummation; or

(c)    the consummation of a plan or agreement for the sale or disposition by such Entity of all or substantially all of the consolidated assets of such Entity to any other Person or group that is not an Affiliate of such Entity.

"**China**" means the mainland of the People's Republic of China (excluding Taiwan, Hong Kong, and Macao (also known as Macau)).

4

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101215
Q2017MDL1_03115392
CX7614-004
JX0105-004

"**Chinese Patents**" means Patents filed in China. For clarity, this definition does not include foreign counterparts of Patents filed in China.

"**Complete Terminal**" means a complete end-user device that uses inventions or technology covered by QUALCOMM's Licensed Patent Claims and is capable of implementing, without any additional equipment or components being attached or connected thereto, wireless communications transmissions in accordance with any wireless air interface standard included in the definition of CDMA Standard (regardless of whether it is also capable of implementing wireless communications transmissions in accordance with any wireless air interface standard not included in the definition of CDMA Standard). For the avoidance of doubt, if a Complete Terminal is battery-powered, then the battery is part of the Complete Terminal. For the avoidance of doubt, neither an Access Point nor a Smallcell is a Complete Terminal.

"**Component**" means (i) an ASIC, (ii) a multi-chip module, (iii) any other type of integrated circuit such as system in package (SiP) and system on chip (SoC), and (iv) any other electronic device (such as a fixed gate array, field programmable gate array (FPGA), erasable programmable read only memory (ePROM), microprocessor, diode, transistor, thyristor, or display), including, in each case, any firmware thereon, as well as any accompanying or associated software (other than third-party end-user application software that is generally available on a standalone basis independently of such ASIC, module, integrated circuit, or electronic device). For the avoidance of doubt, and by way of example and not by limitation, a MEMS Display is a Component but a Complete Terminal is not a Component.

"**Costs**" as such term is used in the definition of "Net Selling Price" includes all actual labor, material and other direct costs, expenses and associated burdens, including overhead and general and administrative expenses, marketing and sales expenses, a reasonable amortization of associated research and development expenses, and warranty costs, all as consistently applied in accordance with U.S. generally accepted accounting principles (GAAP); provided, however, that for purposes of the Net Selling Price definition, in no event will the Cost of a particular Complete Terminal be less than the bill of materials ("**BOM**") cost of such Complete Terminal, in the form in which it is Sold, plus ▓▓▓▓▓▓▓▓▓▓▓ of such BOM cost.

"**Covenant Term**" means the period of time beginning on the Effective Date and (except as expressly provided in the last sentence of Section 11.2, and in Section 11.3) ending on the tenth anniversary of the Effective Date.

5

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101216
Q2017MDL1_03115393
CX7614-005
JX0105-005

"**Covered Terminal**" means a Complete Terminal that is a Telephone, Tablet, or Laptop Computer.  In addition, any other type of Complete Terminal will become a Covered Terminal only upon written agreement between QUALCOMM and SONY, in which case such type of Complete Terminal will become part of this "Covered Terminal" definition at that time.

"**Display Port Standards**" means digital display interface that is adopted as industry standards by the Video Electronics Standards Association (VESA), including DisplayPort Standard, Version 1.3.

"**Downstream Purchaser**" means, with respect to any QUALCOMM Component that is Sold by a QUALCOMM Party, any third party that either (i) manufactures, or (ii) markets and sells under its own brand, a product containing or incorporating such QUALCOMM Component.   For example and without limitation, consumers, distributors, and retailers are not Downstream Purchasers for purposes of this Agreement.

"**DVB Standards**" means digital television standards that are adopted as industry standards by the Digital Video Broadcasting Project, including DVB-T2: ETSI EN 302 755, DVB-C2: ETSI EN 302 769, DVB-S2x: ETSI EN 302 307, DVB-CI+: ETSI TS 103 205 and DVB-GSE: ETSI TS 102 606.

"**Effective Date**" means the date first set forth above.

"**End User**" means a human being (not an Entity) who purchases a product for his or her own use and not for resale.

"**Enhanced Damages**" means damages in addition to those adequate to compensate for Patent Infringement, such as punitive damages or "increased" damages pursuant to 35 U.S.C. § 284.

"**Entity**" means any corporation (including any non-profit corporation), general partnership, limited partnership, limited liability partnership, joint venture, estate, trust, cooperative, foundation, society, political party, union, company (including any limited liability company or joint stock company), firm, or other enterprise, association, organization, or entity.

"**Essential**" means, with respect to a particular Patent claim and a particular industry standard (including any CDMA Standard), that such Patent claim must be infringed upon in order to comply with any mandatory or optional portion of such industry standard.

6

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101217
Q2017MDL1_03115394
CX7614-006
JX0105-006

"**Exclusive Reseller**" means any Entity that (i) is not an Affiliate of Sony, and (ii) resells Sony Covered Terminals (in the form provided by a SONY Party) and does not sell, resell, or otherwise distribute any other Complete Terminals.

"**Exhaust Remedies**" means, with respect to any alleged infringement of any of a SONY Party's Patents by a Qualcomm Component sold by any QUALCOMM Party or QUALCOMM Supplier, the following:

      (i)     a SONY Party has pursued to completion all Litigation and remedies that are available against a Downstream Purchaser for infringement;

      (ii)    all such Litigation has been prosecuted to a Final Judgment that resulted in a finding of infringement, and monetary damages have been awarded to such SONY Party based on such finding;

      (iii)   such SONY Party has diligently sought to collect such monetary damages, but has been unable to do so; and

      (iv)   such SONY Party has notified QUALCOMM in writing of the foregoing and has in good faith negotiated a settlement of such Final Judgment with QUALCOMM, or, at QUALCOMM's discretion, such QUALCOMM Party (if such QUALCOMM Party is not QUALCOMM), for a period of at least one hundred eighty (180) days after obtaining such Final Judgment, without reaching agreement on a settlement.

"**Final Judgment**" means a judgment that terminates the Litigation and that either is not subject to appeal (including both appeals as of right and procedures such as a writ of certiorari) or is not appealed by the party who lost in the Litigation during the time in which such party had a lawful right to appeal such judgment.

"**Financial Institution**" means any Person (including any so-called hedge fund, mutual fund, private equity fund, venture capital fund, or sovereign wealth fund) that, as its sole or principal business, manages or leverages its investments, and/or the investments of other Persons, in the ordinary course of its business, whether directly or indirectly through a special purpose or other vehicle and that is not an Affiliate of either Party.

"**Governmental Authority**" means any: (a) nation, principality, state, commonwealth, province, territory, county, municipality, district, or other governmental jurisdiction of any nature; (b) federal, state, local, municipal, foreign, or other government; (c) governmental or quasi-governmental authority of any nature (including

7

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101218
Q2017MDL1_03115395
CX7614-007
JX0105-007

any governmental division, subdivision, department, agency, bureau, branch, office, commission, council, board, instrumentality, officer, official, representative, organization, unit, body, or Entity and any court or other tribunal); (d) multi-national governmental organization or body; or (e) Entity or body exercising, or entitled to exercise, any executive, legislative, judicial, administrative, regulatory, police, military, or taxing authority.

"**HDMI Standards**" means the High-Definition Multimedia Interface that is adopted as an industry standard originally by HDMI Founder companies, and subsequently by the HDMI Forum, including HDMI ver. 1.4 and HDMI ver. 2.0.

"**HEVC Standards**" means standards jointly developed by the ISO/IEC Moving Picture Experts Group ("MPEG") and ITU-T Video Coding Experts Group (VCEG) as ISO/IEC 23008-2 MPEG-H Part 2 and ITU-T H.265, including all successor releases and updates thereof.

"**Image Sensor**" means (a) a device that has an array of pixels used to detect electromagnetic radiation and that is manufactured by a MOS (metal oxide semiconductor) process, and (b) dedicated image processing circuits that are incorporated into, or designed to be discretely packaged with, a device described in clause (a). For purposes of clarification, the term "Image Sensor" excludes general purpose processors or multi-function application processors such as Qualcomm's Snapdragon line of processors and devices based on capacitive sensing technologies.

"**Included Other IPR**" means all Patent claims that (i) do not constitute Technically Necessary IPR and (ii) either (a) have a priority date on or before the Effective Date and are not WWAN Essential Patent Claims, or (b) are included in Patents issued on or prior to the tenth anniversary of the Effective Date and are WWAN Essential Patent Claims.

"**Injunctive Relief**" means an equitable form of remedy (such as an injunction or an exclusion order, as opposed to an award of money or other financial consideration) that is sought based on an Assertion and would require an Entity to discontinue the sale of products that would infringe a Patent that is the subject of such Assertion.

"**ISDB Standards**" means digital television standards that are adopted as industry standards by the Association of Radio Industries and Businesses ("ARIB"), including ISDB-S: STD-B20 and ISDB-T: STD-B31.

"**Laptop Computer**" means a complete end-user device that (i) is designed primarily for use as a personal computer, (ii) includes a physical keyboard with a

8

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101219
Q2017MDL1_03115396
CX7614-008
JX0105-008

minimum of twenty-six (26) keys; (iii) has a non-foldable screen with screen size of at least seven (7) inches diagonal (or across its largest dimension), (iv) weighs at least twelve (12) ounces, and (v) includes a tracking/pointing stick, touch screen, rollerball or touchpad to move the cursor.

"**Licensed Customer**" means, as determined separately for each Complete Terminal Sold by a SONY Party, (i) an Entity that is licensed (or uses a third party contract manufacturer that is licensed) by QUALCOMM under any or all of QUALCOMM's Licensed Patent Claims to make (and have made) and sell Complete Terminals that comply with the same wireless air interface standard included in the definition of CDMA Standard as the Complete Terminal that the SONY Party is selling to such Entity or its contract manufacturer (each such license agreement between QUALCOMM and a Licensed Customer is hereinafter referred to as an "**LC License Agreement**"), (ii) any Affiliate of any such Entity referred to in clause (i) above, and (iii) any Person that resells such Complete Terminals to any Entity referred to in clause (i) or (ii) above, but only with respect to those Complete Terminals. For avoidance of doubt, Exclusive Resellers, Mobile Network Operators, and End Users are not Licensed Customers.

"**Litigation**" means any procedure for the resolution of a controversy in any jurisdiction in the world whether created by a claim, a counterclaim or otherwise, in the broadest sense and in whatever form, whether administrative, judicial, arbitral or otherwise, including any proceeding in the United States International Trade Commission.

"**MEMS Display**" means a display that uses an array of MEMS Display Elements to modulate light.

"**MEMS Display Element**" means a display element where the light modulation is controlled by a micro-electrical mechanical system element.

"**Mobile Network Operator**" means an Entity that owns spectrum or licenses spectrum from a government or other relevant authority or Entity, and offers wireless telecommunications services to the public over a CDMA wireless network utilizing such spectrum. For avoidance of doubt, this includes mobile virtual network operators.

"**Multi-Camera**" means a plurality of cameras forming an array comprising a plurality of rows of camera and/or a plurality of columns of cameras, wherein each camera includes separate optics and a separate imager (image sensor) as a camera module and/or a camera product and is configured to independently and/or dependently capture an image.

9

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101220
Q2017MDL1_03115397
CX7614-009
JX0105-009

"**Multi Camera Functionality**" means a function utilizing at least a Multi-Camera and/or Multi-Lens.

"**Multi-Lens**" means a plurality of lens forming an array comprising a plurality of rows of lens elements and/or a plurality of lens elements on an imager (image sensor) as optics of a camera module and/or a camera product, wherein each lens element is configured to independently and/or dependently operate together with the imager capturing an image.

"**Net Selling Price**" means with respect to each Covered Terminal Sold by a SONY Party, one of the following, whichever is applicable:

(a)    When Sold by a SONY Party to an Unaffiliated Purchaser, the Net Selling Price will be the Selling Price charged by such SONY Party for such Covered Terminal Sold to such Unaffiliated Purchaser, except that with respect to Covered Terminals Sold to an Unaffiliated Purchaser for use on a CDMA network operated by SONY, an Affiliate of SONY, or a Related Carrier (each such Unaffiliated Purchaser, an "**Applicable Unaffiliated Purchaser**"), the Net Selling Price will be no less than the greater of (1) the Selling Price charged by the SONY Party for such Covered Terminal Sold to such Applicable Unaffiliated Purchaser, or (2) the average Selling Price charged during the same or most recent quarter by SONY Parties for substantial quantities of equivalent Covered Terminals (or if substantial quantities of equivalent Covered Terminals have not been Sold during such quarters, substantial quantities of substantially equivalent Covered Terminals) Sold by SONY Parties to any Unaffiliated Purchaser (other than those Sold to Applicable Unaffiliated Purchasers), or (3) if substantial quantities of equivalent or substantially equivalent Covered Terminals have not been Sold in accordance with clause (2) above during such quarters, the Costs to the SONY Party to produce (or otherwise acquire) such Covered Terminal ▓▓▓▓▓▓▓ of such Costs.

(b)    When Sold by a SONY Party to an Exclusive Reseller, Related Carrier or to a Person that is not an Unaffiliated Purchaser (in any case, a "**Related Buyer**"), the Net Selling Price will be either (i) the Selling Price (as such term would be applied if the Related Buyer was SONY) charged by the final vendee Related Buyer for such Covered Terminal upon the resale of such Covered Terminal to an Unaffiliated Purchaser as a standalone product in the same form in which it was purchased by the Related Buyer, or (ii) if the Selling Price charged by such vendee Related Buyer is not available, the average Selling Price charged during the same or most recent quarter by the SONY Parties for substantial quantities of equivalent Covered Terminals (or if substantial quantities of equivalent Covered Terminals have not been Sold during such quarters, substantial

10

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101221
Q2017MDL1_03115398
CX7614-010
JX0105-010

quantities of substantially equivalent Covered Terminals) Sold by the SONY Parties to any Unaffiliated Purchaser (other than those Sold to Applicable Unaffiliated Purchasers), or (3) if substantial quantities of equivalent or substantially equivalent Covered Terminals have not been Sold to an Unaffiliated Purchaser by the SONY Parties in accordance with clause (2) above during such quarters, the Costs to the SONY Party to produce (or otherwise acquire) such Covered Terminal ▮▮▮▮▮▮▮▮▮▮▮ of such Costs. Notwithstanding the forgoing in this subsection (b) in no event will the Net Selling Price be less than the Selling Price charged by the SONY Party for such Covered Terminal Sold to such Related Buyer.

(c)    When retained by a SONY Party for its own use or lease, or when Sold by a SONY Party to a Related Buyer for its own use or lease, the Net Selling Price will be the greater of (1) the average Selling Price charged during the same or most recent quarter by the SONY Parties for substantial quantities of equivalent Covered Terminals (or if substantial quantities of equivalent Covered Terminals have not been Sold during such quarters, substantial quantities of substantially equivalent Covered Terminals) Sold by SONY Parties to any Unaffiliated Purchaser (other than those Sold to Applicable Unaffiliated Purchasers), or (2) if substantial quantities of equivalent or substantially equivalent Covered Terminals have not been Sold to an Unaffiliated Purchaser by the SONY Parties in accordance with clause (1) above during such quarters, the Costs to the SONY Party to produce (or otherwise acquire) such Covered Terminal ▮▮▮▮▮▮▮▮▮▮ ▮▮▮ of such Costs.

"**NFC Standards**" means short range wireless communication technology using inductive coupled devices operating at the frequency of 13.56 MHz that is adopted as industry standards by the International Organization for Standardization ("ISO") including ISO/IEC18092 and ISO/IEC 14443, the European Telecommunications Standards Institute ("ETSI") including TS 102 622 and TS 102 613, or any other recognized international standards bodies, including ECMA and NFC Forum.

"**Non-Chinese Patent**" means any Patent filed outside of China.  For clarity, this definition includes foreign counterparts of Patents filed in China.

"**OFDM**" means orthogonal frequency division multiplexing technology.

"**OFDMA**" means orthogonal frequency division multiple access technology.

"**OFDM Standard**" means any wireless air interface standard or specification that implements OFDM or OFDMA technology, including FLASH-OFDM, LTE (including any FDD mode and any TDD mode of LTE), LTE-Advanced, WiMAX, WiBro, IEEE

11

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101222
Q2017MDL1_03115399
CX7614-011
JX0105-011

802.16e, IEEE 802.16m, UMB (formerly known as 1xEV-DO Rev C), and IEEE 802.20, and any updates and/or revisions to any of the foregoing.

"**Other QUALCOMM Component**" means (a) any QUALCOMM Baseband Component that is not a Protected QUALCOMM Component (i.e., a QUALCOMM Baseband Component that is not incorporated into a Telephone or a Tablet), and (b) any QUALCOMM Component that is sold by any QUALCOMM Party for use in a Laptop Computer that incorporates a QUALCOMM Baseband Component (provided that such other QUALCOMM Component is sold along with such QUALCOMM Baseband Component as part of an integrated chipset solution).

"**Palm Patents**" means any and all of the Patents that QUALCOMM or any of its Affiliates acquired or otherwise obtained from Hewlett-Packard Company, Hewlett-Packard Development Co LP, and/or Palm Inc. (including the Palm, IPAQ, and Bitfone Patents) at any time before January 31, 2014.

"**Parent**" means, with respect to a Person, any other Person that owns or controls, directly or indirectly, with one or more Affiliates, more than fifty percent (50%) of the total voting power of such Person.

"**Party**" individually means QUALCOMM or SONY, and the term "**Parties**" means QUALCOMM and SONY.

"**Patent**" means any patent or patent application issued or applied for anywhere in the world, including utility models, but excluding any design patent.

"**Payment Default**" means a default in a payment of royalties due hereunder in an amount equal to or greater than ten percent (10%) of the amount of royalties payable for Sales made in the quarter for which such payment was due.

"**Person**" means any individual, Entity, or Governmental Authority.

"**Properly Documented**" means proven by contracts and agreements, third party invoices, business records taken and kept in the ordinary course of business or other documentation or business records: (a) establishing the terms of a program that a SONY Party maintains in the regular course of business; and (b) identifying (i) the amount, (ii) the specific Trade Discount Deduction for which such amount is provided by a SONY Party, and (iii) the Covered Terminal model(s) to which such Trade Discount Deduction was applied. In the absence of the above, written verification of the Trade Discount provided by the recipient of such Trade Discount shall be supplied by the SONY Party.

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101223
Q2017MDL1_03115400
CX7614-012
JX0105-012

"**Protected QUALCOMM Component**" means any QUALCOMM Component that is sold by any QUALCOMM Party for use in a Telephone or Tablet that will incorporate or has incorporated a QUALCOMM Baseband Component.  For clarity, the QUALCOMM Baseband Component incorporated into such Telephone or Tablet is itself a Protected QUALCOMM Component.

"**PS Architecture**" means SONY Party's proprietary game technology interface and instruction architecture implemented in consoles, portable devices, and services related to such architecture marketed under the trademark or family logo "PlayStation", including PS one, PlayStation2, PLAYSTATION3, PLAYSTATION4, PSP, PSP go, Xperia PLAY, PlayStation Vita, PlayStation Network, and further including reasonable successor versions to the said architecture. For purposes of clarification, PS Architecture shall include only those portions of the architecture which are Sony proprietary and shall not, for example, include any standard or generic architectures which might be contained in, used with or be part of the PS Architecture. General purpose or specific purpose processor architectures that are used in, incorporated or implemented in products, software and/or services and which, for example, enable such products, software and services to:   (a) function as game consoles or game products; (b) provide game services; and/or (c) offer game functionality shall not be considered a PS Architecture merely because these architectures enable or allow for such game capabilities.

"**PS Emulator**" means any hardware or software designed to implement or emulate in whole or in part, the PS Architecture.

"**QUALCOMM**" means QUALCOMM Incorporated, a Delaware corporation.

"**QUALCOMM Baseband Component**" means a QUALCOMM Component that contains the circuitry for implementing any portion of any wireless air interface standard included in the definition of CDMA Standard (regardless of whether such circuitry can also be used to implement any other wireless air interface standards not included in the definition of CDMA Standard).

"**QUALCOMM's Chinese Essential IPR**" means each unexpired claim of any of QUALCOMM's Chinese Patents that is Essential to the manufacture, use, or sale of Complete Terminals that comply with the specifications of any mandatory or optional portion of at least one of the wireless air interface standards included in the definition of any CDMA Standard or OFDM Standard.

"**QUALCOMM's Chinese Patents**" means Chinese Patents that are owned by a QUALCOMM Party.

13

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101224
Q2017MDL1_03115401
CX7614-013
JX0105-013

"**QUALCOMM Components**" means those Components that were or are designed or developed by or for any QUALCOMM Party based on overall designs owned by any QUALCOMM Party (provided that QUALCOMM Parties may incorporate in such Components (a) portions that are Semiconductor IP designed and/or owned by its foundries and Semiconductor IP licensed or acquired from third parties, such as an ARM processor, and/or (b) third party software licensed to any QUALCOMM Party for incorporation into or use on such Components (other than third-party end-user application software that is generally available on a standalone basis independently of such Components).  Notwithstanding the foregoing, "QUALCOMM Components" does not include any Image Sensors or PS Emulator.

"**QUALCOMM's Covered Chinese Patents**" means any and all of QUALCOMM's Chinese Patents that would be licensed to SONY under this Agreement if they were not Chinese Patents.

"**QUALCOMM Customer**" means any direct or indirect customer of any of the QUALCOMM Parties.  Without limiting the generality of the foregoing, the definition of "QUALCOMM Customer" includes any Entity that (i) sells, acquires or obtains any products or services of any of the QUALCOMM Parties or any products or services that incorporate such products or services, (ii) is within the chain of distribution of any products or services of any of the QUALCOMM Parties or any products or services that incorporate such products or services, or (iii) uses any products or services of any of the QUALCOMM Parties or any products or services that incorporate such products or services.

"**QUALCOMM Customer First Assertion**" means an Assertion by a QUALCOMM Customer or any of its Affiliates against a SONY Party for making, having made, using, importing, offering to sell, selling, or otherwise disposing of any SONY Covered Terminal, if (and only if) such Assertion is made at a time when no SONY Party has made an Assertion (which is still pending) against such QUALCOMM Customer or any of its Affiliates for making, using, importing, offering to sell, selling, or otherwise disposing of any product that incorporates a Protected QUALCOMM Component where the basis or source of the alleged infringement is, entirely or substantially, such Protected QUALCOMM Component.    However, when the QUALCOMM Customer is a "QUALCOMM Predominant Customer" such Assertion by a QUALCOMM Predominant Customer or any of its Affiliates against a SONY Party will still be considered a QUALCOMM Customer First Assertion if the prior Assertion by a SONY Party mentioned above is made at a time when such QUALCOMM Predominant Customer or any of its Affiliates has made an Assertion (which is still pending) against a SONY Party for making, having made, using, importing, offering to sell, selling, or

14

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101225
Q2017MDL1_03115402
CX7614-014
JX0105-014

otherwise disposing of any product or service and such Assertion was made at a time when no SONY Party had made an Assertion (which was still pending) against such QUALCOMM Predominant Customer or any of its Affiliates for making, having made, using, importing, offering to sell, selling, or otherwise disposing of any product or service. Solely as used in this paragraph, "QUALCOMM Predominant Customer" means a QUALCOMM Customer the majority of whose gross revenue (when combined with the gross revenue of its Affiliates) is generated by the sale of products that incorporate Protected QUALCOMM Components.

"**QUALCOMM's Excluded Patents**" means (i) all Patents that are owned by SnapTrack, Inc., (ii) all Patents that are owned by QUALCOMM MEMS Technologies, Inc. ("QMT") or any direct or indirect Subsidiary of QMT, (iii) all of the Palm Patents, (iv) QUALCOMM's Later Acquired Patents, and (v) QUALCOMM's Later Other IPR.

"**QUALCOMM First Assertion**" means an Assertion by a QUALCOMM Party against a SONY Party for making, having made, using, importing, offering to sell, selling, or otherwise disposing of, or against any supplier of any SONY Party to the extent making any SONY Covered Terminal (or solely for purposes of Section 9.5.4, any SONY Uncovered Terminal) under a have made right of any SONY Party, any SONY Covered Terminal (or, solely for purposes of Section 9.5.4, such an Assertion of any of QUALCOMM's Technically Necessary IPR and/or any of QUALCOMM's Chinese Essential IPR against any SONY Uncovered Terminal) that is made at a time when no SONY Party has made an Assertion (which is still pending) against a QUALCOMM Party for making, using, importing, offering to sell, selling, or otherwise disposing of any Protected QUALCOMM Component and/or Other QUALCOMM Component.

"**QUALCOMM's Included Other IPR**" means each unexpired claim of any Non-Chinese Patent where (i) any QUALCOMM Party owns or has the right to license such Non-Chinese Patent to SONY without the payment of any royalties or other monetary consideration to any third party unless SONY agrees to pay, and pays, such royalties or other monetary consideration, and (ii) such Non-Chinese Patent claim constitutes Included Other IPR; provided that, notwithstanding the foregoing, "QUALCOMM's Included Other IPR" does not include QUALCOMM's Excluded Patents.

"**QUALCOMM's Later Acquired Patents**" means (i) all Patents acquired by any QUALCOMM Party from a third party after the Effective Date, and (ii) all Patents that any QUALCOMM Party owns as a result of an acquisition of a third party after the Effective Date.

15

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101226
Q2017MDL1_03115403
CX7614-015
JX0105-015

"**QUALCOMM's Later Other IPR**" means each unexpired claim of any Non-Chinese Patent that would fall within the definition of "QUALCOMM's Included Other IPR" but for the priority date of such Non-Chinese Patent claim.

"**QUALCOMM's Licensed Patent Claims**" means QUALCOMM's Technically Necessary IPR and QUALCOMM's Included Other IPR.

"**QUALCOMM's Other Chinese Patents**" means each unexpired claim of QUALCOMM's Chinese Patents that are not QUALCOMM's Chinese Essential IPR.

"**QUALCOMM Party**" means QUALCOMM or any of its Subsidiaries and "**QUALCOMM Parties**" means QUALCOMM and its Subsidiaries, collectively.  If an Entity is a Subsidiary of QUALCOMM only for a period of time during the term of this Agreement (but not the entire term of this Agreement), then such Entity will be a QUALCOMM Party only for the same period of time.

"**QUALCOMM Supplier**" means foundries or other third parties that manufacture, design, or develop any Components.  A third party that only licenses software to a QUALCOMM Party and does not make Components for, or offer to sell or sell Components to, any QUALCOMM Party, is not a QUALCOMM Supplier, even if such software is incorporated into QUALCOMM Components.

"**QUALCOMM Supplier First Assertion**" means an Assertion by a QUALCOMM Supplier or any of its Affiliates against a SONY Party for making, having made, using, importing, offering to sell, selling, or otherwise disposing of any SONY Covered Terminal (or, solely for purposes of Section 5.4, such an Assertion of such Supplier's or any of its Affiliates' Technically Necessary IPR against any SONY Uncovered Terminal), if (and only if) such Assertion is made at a time when no SONY Party has made an Assertion (which is still pending) against such QUALCOMM Supplier or any of its Affiliates for making any Protected QUALCOMM Component and/or Other QUALCOMM Component for, or selling (or offering to sell) any Protected QUALCOMM Component and/or Other QUALCOMM Component to, any QUALCOMM Party.

"**QUALCOMM's Technically Necessary IPR**" includes only each unexpired claim of any Non-Chinese Patent (regardless of whether such Non-Chinese Patent was or is filed or issued before, on, or after the Effective Date) where (i) any QUALCOMM Party owns or has the right to license such Non-Chinese Patent to SONY without the payment of any royalties or other monetary consideration to any third party unless SONY agrees to pay, and pays, such royalties or other monetary consideration, and (ii) such Non-Chinese Patent constitutes Technically Necessary IPR.  For clarity, (a)

16

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101227
Q2017MDL1_03115404
CX7614-016
JX0105-016

"QUALCOMM's Technically Necessary IPR" includes unexpired claims of Non-Chinese Patents implemented by a Covered Terminal as a whole and/or a Covered Terminal when operating on a CDMA wireless network, and (b) there is no exclusion from the definition of "QUALCOMM's Technically Necessary IPR" based on when a Patent was acquired by a QUALCOMM Party.

"**Related Carrier**" means a Mobile Network Operator (i) that owns or controls, either directly or indirectly, a Significant Interest in SONY or any of its Affiliates, (ii) a Significant Interest in which is owned or controlled, either directly or indirectly, by SONY or any of its Affiliates, or (iii) a Significant Interest in which is owned or controlled, either directly or indirectly, by a third party that also owns or controls, either directly or indirectly, a Significant Interest in SONY or any of its Affiliates.

"Selling Price":

(A)     "Selling Price" means, with respect to each Covered Terminal Sold by a SONY Party, (a) the gross selling price charged by the SONY Party for such Covered Terminal and (b) the value of other consideration paid or otherwise provided to the SONY Party by its customer directly or indirectly in connection with the Sale of such Covered Terminal (including (i) any charges, fees or reimbursement of expenses for recurring or non-recurring design, engineering, or tooling services or acquisition expenses to the extent such consideration is not otherwise supported by comparable and additional return consideration from such SONY Party unrelated to the Sale of Covered Terminals to such customer or the price charged to such customer (including any discounts, rebates, refunds, and the like) for such Covered Terminals, and (ii) the value of consignment parts (other than SIM cards) provided by the SONY Party's customer or any other third party for incorporation in the Covered Terminal), in each case, in the form in which such Covered Terminal is Sold (whether or not assembled and without excluding therefrom the price or cost of any Components, subassemblies, firmware, or software included with such Covered Terminal), deducting therefrom only the following items actually included and paid by the SONY Party's customer in the Sale price of each such Covered Terminal and properly documented (to QUALCOMM's reasonable satisfaction) by the SONY Party:

(i)     <u>Usual Trade Discounts</u>.  Trade Discount Deductions that are actually paid (including by the issuance of a credit) within one (1) year from the date of the Sale of the Covered Terminals to which such Trade Discount Deductions apply; provided, however, that (a) cooperative advertising or market development funds will be deductible as Trade Discount Deductions only if the SONY Party does not control its customer's use of such funds and provides written documentation to QUALCOMM's

17

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101228
Q2017MDL1_03115405
CX7614-017
JX0105-017

auditors upon their request that establishes such lack of control by showing that such customer is not contractually obligated to provide any accounting to a SONY Party regarding the use of such funds (for the avoidance of doubt, a requirement for a SONY Party's customer to provide copies of marketing materials or to provide summaries, proof of performance or verification of expenditures does not constitute an accounting requirement under this section); and (b) in no case will the Trade Discount Deductions for cooperative advertising or market development funds with respect to any single internal model of Covered Terminal Sold during a particular quarter result in more than a ten percent (10%) reduction from the aggregate gross selling price of all units of such model of Covered Terminal Sold during such quarter. For purposes of determining Trade Discount Deductions, enforcement of SONY's branding guidelines providing requirements for placement or reference to Sony's products or brands, requiring reporting of expenditures (but not for purposes of approval), or generally limiting fund use to certain marketing or promotional activities will not be deemed "control" of any funding.

(ii)     <u>Packing Costs</u>.   Such SONY Party's Costs of packing/ packaging such Covered Terminal for shipment to its customers.  For purposes of this (A)(ii), "Costs" means such SONY Party's actual direct materials and labor costs of packing/packaging such Covered Terminal for shipment to its customer (excluding any overhead, amortization, or depreciation).

(iii)     <u>Costs of Insurance and Transportation</u>.  Such SONY Party's Costs of insurance and transportation to ship such complete Covered Terminal to its customer.  For purposes of this (A)(iii), "Costs" means such SONY Party's actual costs of insurance and transportation to ship such complete Covered Terminal to its customer (excluding any overhead, amortization, or depreciation).

(iv)     <u>Taxes/Duties</u>.  Import, export, excise, sales and value added taxes and custom duties levied or imposed directly upon the Sale of such Covered Terminal that such SONY Party remits to the government body levying or imposing such taxes or duties.

For the avoidance of doubt, if the Covered Terminal is battery powered, then the cost of the battery cannot be deducted from the gross selling price of the Covered Terminal when calculating the Selling Price.  With respect to the preceding parts (A)(ii) and (A)(iii) of this definition, SONY may use the average of such costs over the reporting period in lieu of the actual cost per Covered Terminal.

(B)     <u>Combined Sales of Covered Terminals and Accessories</u>.  If a Covered Terminal is Sold bundled with Other Products (as defined below), then the Selling Price

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101229
Q2017MDL1_03115406
CX7614-018
JX0105-018

for such bundled Covered Terminal will be the average Selling Price charged by the SONY Parties to Unaffiliated Purchasers for other Covered Terminals of the same or substantially the same quality and quantity that were Sold without being bundled with Other Products (other than those Sold to Applicable Unaffiliated Purchasers) in the same quarter in which such Sales were made (or if no such Sales were made in the same quarter, in the most recent quarter in which such Sales were made).  If no such unbundled Covered Terminals have been Sold to an Unaffiliated Purchaser in the same or any previous quarter, then (1) the SONY Party shall include the price and other consideration charged for the bundled Sale of the Other Products together with the bundled Covered Terminal in calculating the gross selling price of such bundled Covered Terminal as determined in accordance with the preceding portions of this definition, and (2) in addition to the deductions permitted by parts (A)(i) through (A)(iv) above of this definition, the SONY Party may deduct from the gross selling price of such bundled Covered Terminal an amount equal to the amount obtained by multiplying (x) the Accessory Costs of the Other Products Sold in combination with such Covered Terminal by (y) the Combined Markup.  For the purpose of this definition, with respect to Covered Terminals Sold by a SONY Party:

   (1) "**Other Products**" means products or services that are separate and distinct from such Covered Terminals and "**Sold bundled with**" means either that such Covered Terminals and one or more Other Products are sold together (whether or not for a single price) or that substantially the same quantity of Covered Terminals and Other Products are sold to the same customer (whether or not such products and/or services are sold together or with separate pricing).  For avoidance of doubt and without limitation, the term "Other Products" does include user-removable memory cards (except memory cards required for the Covered Terminal to operate), chargers, extra power supplies, headsets, lanyards, carrying cases, printed user guides and materials, data transfer cables, and optional software on external storage, and does not include (a) any hardware, software, or other item that is incorporated into, installed on, or otherwise physically integrated with the Covered Terminal at the time of Sale or (b) replacement parts, replacement units, or services provided pursuant to any express or implied warranty applicable to the Covered Terminal.

   (2) "**Combined Markup**" means the ratio of (a) the combined gross selling price of the Covered Terminal (less any Trade Discount Deductions allowed under part (A)(i) above of this definition) and its Other Products to (b) the sum of the Terminal Cost and the Accessory Costs for such Other Products;

   (3) "**Terminal Cost**" for each Covered Terminal means the actual cost of goods sold for such Covered Terminal; and

19

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101230
Q2017MDL1_03115407
CX7614-019
JX0105-019

(4)   "**Accessory Cost**" for each Other Product means the actual or weighted average cost of goods sold for the same model Other Product.

As an example of the above methodology, if the Terminal Cost is $100, the sum of Accessory Costs for the Other Products is $10, and the combined gross selling price of the Covered Terminal (less any Trade Discount Deductions allowed) and the Other Products is $200, then the allowable deduction for such Other Products would be $18.18 ($10 * 200/110).

"**Semiconductor IP**" means any reusable (whether or not it is actually reused) unit of logic, cell, or chip design, including IP blocks, IP cores (such as both hard cores and soft cores), standard cell libraries, embedded memories and logic cores (as such terms are commonly understood in the semiconductor industry), and any portion of the packaging of a Component.

"**SEPs**" means, with respect to either Party or any third party, (a) all Technically Necessary IPR of such Party or such third party (with the term "Technically Necessary IPR" being interpreted for these purposes as if references to a "Party" were instead references to such third party), and (b) all other Patent claims owned by such Party (or any of its Affiliates) or by such third party that are Essential to any industry standard adopted pursuant to the standards-setting procedures of an independent standards-setting or standards-development organization.

"**Significant Interest**" means the direct or indirect ownership or control of more than a twenty-five percent (25%) equity interest or twenty-five percent (25%) of the Voting Power.

"**Smallcell**" means a complete device that (i) transmits wireless communications to and from a Complete Terminal using a wireless air interface standard included in the definition of CDMA Standard, (ii) connects to CDMA network infrastructure equipment (typically via a broadband connection such as cable or digital subscriber line) for the purpose of providing backhaul transport to and from a CDMA wireless network of such wireless communications transmissions referred to in clause (ii) above, (iii) is designed primarily for and sold for in-building use, including in residential, commercial, campus, and multi-use enclosed spaces (e.g., malls), and (iv) obtains power from a hard wired power source (e.g., an alternating current outlet, a USB interface), provided that it may include a backup battery for use in power outages.

"**Sold**," "**Sale**," and "**Sell**" means put into use by a SONY Party, sold, leased or otherwise transferred, and a sale will be deemed to have occurred upon first use, shipment or invoicing, whichever occurs first.  The definition of Sold, Sale and Sell

20

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101231
Q2017MDL1_03115408

CX7614-020
JX0105-020

excludes (a) all delivery of Covered Terminals that are made at no charge to the customer as a warranty return for Covered Terminals that were previously Sold by a SONY Party and for which the full royalty was previously reported and paid in accordance with this Agreement; (b) Covered Terminals used for internal development, testing and verification purposes; and (c) initial marketing prototype sample units provided at no charge to potential customers for their evaluation and purchase consideration, but only to the extent that such units are not in excess of five thousand (5,000) units per single internal model (e.g. Sony Xperia Z) per customer.

"**SONY Assigned Patents**" means those Patents listed on <u>Exhibit C</u>.

"**SONY's Chinese Camera Patents**" means Sony's Chinese Patents (i) having an effective filing date on or before the Effective Date, and (ii) related to image signal processing technologies for performing digital image processing in conjunction with its camera functions on the images signals supplied from camera module(s) or image sensor(s) incorporated in Telephones or Tablets, and (iii) excluding Sony's Chinese Patent claims directed to any image signal processing technology relating to Multi-Camera Functionality.

"**SONY's Chinese Essential IPR**" means each unexpired claim of any of SONY's Chinese Patents that is Essential to the manufacture, use, or sale of Complete Terminals or Components that comply with the specifications of any mandatory or optional portion of at least one of the wireless air interface standards included in the definition of any CDMA Standard or OFDM Standard.

"**SONY's Chinese Patents**" means Chinese Patents that are owned by a SONY Party.

"**SONY Covered Terminal**" means a Covered Terminal Sold by a SONY Party that meets both of the following criteria:  (i) either (a) the overall design of such Covered Terminal was created by or for a SONY Party or (b) the Covered Terminal has a distinctive Sony "look and feel" by virtue of a proprietary Sony hardware design or proprietary Sony software or a combination of such hardware design and software; and (ii) such Covered Terminal is branded with at least one trademark, logo, or brand name owned by a SONY Party that is permanently affixed to the Covered Terminal such that an End-User would recognize such Covered Terminal as a SONY Party's product.

"**SONY's CTER Patents**" means each unexpired claim of any Non-Chinese Patents that are owned by a SONY Party that must be infringed upon in order to comply with any mandatory or optional portion of NFC Standards, HEVC Standards, ISDB

21

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101232
Q2017MDL1_03115409
CX7614-021
JX0105-021

Standards, DVB Standards, ATSC Standards, HDMI Standards, or Display Port Standards, but excluding (a) SONY's Differentiating Technology Patents and (b) SONY's Later Acquired Patents.

"**SONY's Differentiating Technology Patents**" means Patents that are owned by a SONY Party and that read on the PS Architecture.

"**SONY's Excluded Patents**" means (i) SONY's Differentiating Technology Patents, (ii) SONY's Later Acquired Patents, and (iii) SONY's Later Other IPR.

"**SONY First Assertion**" means an Assertion, except for an Assertion of any of SONY's Differentiating Technology Patents, by a SONY Party (i) against a QUALCOMM Party for making, having made, using, importing, offering to sell, selling, or otherwise disposing of any Protected QUALCOMM Component or Other QUALCOMM Component, or (ii) against any of a QUALCOMM Party's foundries or suppliers for manufacturing Protected QUALCOMM Components or Other QUALCOMM Components for, or selling Protected QUALCOMM Components or Other QUALCOMM Components to, a QUALCOMM Party, that, in either case, is made at a time when no QUALCOMM Party has made an Assertion (which is still pending) against a SONY Party for making, using, importing, offering to sell, selling, or otherwise disposing of any Complete Terminal that is a SONY Covered Terminal or a SONY Uncovered Terminal.

"**SONY's Included Other IPR**" means each unexpired claim of any Non-Chinese Patent where (i) any SONY Party owns or has the right to license such Non-Chinese Patent to QUALCOMM without the payment of any royalties or other monetary consideration to any third party unless QUALCOMM agrees to pay, and pays, such royalties or other monetary consideration, (ii) such Non-Chinese Patent claim constitutes Included Other IPR and (iii) such Non-Chinese Patent claim is substantially embodied in any QUALCOMM Component, provided that, notwithstanding the foregoing, "SONY's Included Other IPR" does not include SONY's CTER Patents or SONY's Excluded Patents.

"**SONY's Intellectual Property**" means SONY's Technically Necessary IPR and SONY's Included Other IPR.

"**SONY Intermediate Customer**" means a purchaser that resells SONY Covered Terminals purchased from a SONY Party; provided that such purchaser will not be a SONY Intermediate Customer if such purchaser is a Mobile Network Operator, distributor, or retailer that is reselling Complete Terminals branded with at least one trademark or other brand owned by a SONY Party, but solely with respect to such Complete Terminals.

22

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101233
Q2017MDL1_03115410
CX7614-022
JX0105-022

"**SONY's Later Acquired Patents**" means (i) all Patents acquired by any SONY Party from a third party after the Effective Date and (ii) all Patents that any SONY Party owns as a result of an acquisition of a third party after the Effective Date.

"**SONY's Later Other IPR**" means each unexpired claim of any Non-Chinese Patent that would fall within the definition of "SONY's Included Other IPR" but for the priority date of such Non-Chinese Patent claim.

"**SONY ODM Supplier**" means any third party that manufactures, designs or develops SONY Covered Terminals for a SONY Party.

"**SONY's Other Chinese Patents**" means each unexpired claim of SONY's Chinese Patents that are not SONY's Chinese Essential IPR and are not SONY's Chinese Camera Patents.

"**SONY Party**" means SONY or any of its Subsidiaries, and "**SONY Parties**" means SONY and its Subsidiaries, collectively.  If an Entity is a Subsidiary of SONY only for a period of time during the term of this Agreement (but not the entire term of this Agreement), then such Entity will be a SONY Party only for the same period of time.

"**SONY SULA**" means that certain Subscriber Unit License Agreement dated September 27, 1996, between QUALCOMM and Sony Corporation, as amended.

"**SONY's Technically Necessary IPR**" includes only each unexpired claim of any Non-Chinese Patent (regardless of whether such Patent was or is filed or issued before, on, or after the Effective Date) where (i) any SONY Party owns or has the right to license such Non-Chinese Patent to QUALCOMM without the payment of any royalties or other monetary consideration to any third party unless QUALCOMM agrees to pay, and pays, such royalties or other monetary consideration, and (ii) such Non-Chinese Patent claim constitutes Technically Necessary IPR.  For clarity, there is no exclusion from the definition of "SONY's Technically Necessary IPR" based on when a Patent was acquired by a SONY Party.

"**SONY Uncovered Terminal**" means an Uncovered Terminal Sold by a SONY Party that meets both of the following criteria:  (i) either (a) the overall design of such Uncovered Terminal was created by or for a SONY Party or (b) the Uncovered Terminal has a distinctive Sony "look and feel" by virtue of a proprietary Sony hardware design or proprietary Sony software or a combination of such hardware design and software; and (ii) such Uncovered Terminal is branded with at least one trademark, logo, or brand

23

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101234
Q2017MDL1_03115411
CX7614-023
JX0105-023

name owned by a SONY Party that is permanently affixed to the Uncovered Terminal such that an End-User would recognize such Uncovered Terminal as a SONY Party's product.

"**Subsidiary**" of an Entity (the "**Parent Entity**") means any other Entity (the "**Other Entity**") that is directly or indirectly controlled by such Parent Entity, but any such Other Entity will be deemed to be a Subsidiary of the Parent Entity only as long as such control exists, and for the purposes of this definition, "control" means direct or indirect ownership of more than fifty percent (50%) of the Voting Power of the Other Entity in question or, if the Other Entity in question does not have outstanding voting shares or securities, more than fifty percent (50%) of the equity interests in such Other Entity.

"**Tablet**" means a complete compact personal tablet computer device that is designed for portability and optimized for mobile data transmission and receipt and that meets all of the following criteria: (i) has one or more touchscreen displays each with a display size of at least seven (7) inches diagonal (or across the display's largest dimension); (ii) includes a virtual keyboard with a minimum of twenty-six (26) keys; (iii) does not incorporate a physical keyboard; (iv) weighs more than nine (9) ounces; and (v) its voice capabilities (if any) are marketed as ancillary to its computing capabilities.  By way of example and without limitation, the current models of Apple's iPad Air 2, Samsung's Galaxy Tab S2, and Sony Corporation's Xperia Z4 tablet meet the definition of Tablet in this Agreement.  Notwithstanding anything to the contrary above, any product marketed as a "smartphone" or as a laptop, netbook, ultrabook, or notebook computer is not a Tablet.

"**Technically Necessary IPR**" includes only each claim of any Patent (regardless of whether such Patent was or is filed or issued before, on, or after the Effective Date) that is Essential to the manufacture, use, or sale of Complete Terminals or Components that comply with the specifications of any mandatory or optional portion of at least one of the wireless air interface standards included in the CDMA Standard.

"**Telephone**" means a complete end-user wireless telephone that (a) has no display or a display with a display size of no more than seven (7) inches diagonal; or (b) is marketed as a "smartphone", as a "cell phone", or as any other kind of mobile wireless telephone (regardless of its size).  The term "Telephone" does not include personal digital assistants, e-books, laptop or notebook computers, standalone GPS devices, standalone music players, or standalone personal gaming devices Sold by any SONY Party provided that, in each case, any two-way voice capability of such products is marketed and advertised only as a feature for use to support the primary functionality of such device

24

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101235
Q2017MDL1_03115412

CX7614-024
JX0105-024

(e.g., in the case of standalone personal gaming devices, for in-game conversations between players) and such products are not marketed or advertised as a telephone. For example, the PlayStation Vita and PSP models available as of the Effective Date are not Telephones and the Xperia models (other than Xperia Tablets) available as of the Effective Date are Telephones.

"**Trade Discount Deductions**" means discounts provided by a Sony Party to an Unaffiliated Purchaser against the price charged for Sale of Covered Terminal(s) including but not limited to prompt-pay discounts, volume discounts, price protection discounts, tactical price discounts (sell-through discounts), stock balancing discounts, delivery accuracy discounts, Covered Terminal quality discounts, reimbursement of promotional rebates provided by an Unaffiliated Purchaser to its End User customers, and cooperative advertising or market development funds (collectively, the "**Discounts**") actually provided by a SONY Party to an Unaffiliated Purchaser for Covered Terminals Sold by such SONY Party to such Unaffiliated Purchaser. Trade Discount Deductions must be Properly Documented to the extent such Discounts deducted are for individual Sales transactions to a Sony customer of more than 10,000 Covered Terminals and with Trade Discount Deductions of more than 5% of the gross Selling Price of such Sales.

"**Unaffiliated Purchaser**" means a Person (i) that does not own or control, either directly or indirectly, a Significant Interest in SONY or any of its Affiliates, (ii) a Significant Interest in which is not owned or controlled, either directly or indirectly, by SONY or any of its Affiliates, or (iii) a Significant Interest in which is not owned or controlled, either directly or indirectly, by a third party that also owns or controls, either directly or indirectly, a Significant Interest in SONY or any of its Affiliates.

"**Uncovered Terminal**" means a Complete Terminal that is not a Covered Terminal.

"**Unlicensed Customer**" means an Entity that is not a Licensed Customer.

"**Voting Power**" means the right to exercise voting power with respect to the election of directors or similar managing authority of an Entity (whether through direct or indirect beneficial ownership of shares or securities of such Entity or otherwise).

"**WWAN Essential Patent Claim**" means a Patent claim that is Essential to the manufacture, use, or sale of Complete Terminals that comply with the specifications of any mandatory or optional portion of the wireless air interface standards included in the definition of any OFDM Standard and any successor wireless air interface standards as specified by 3GPP, whether based on OFDMA technology, CDMA technology or any other technology.

25

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101236
Q2017MDL1_03115413
CX7614-025
JX0105-025

**2.     TERM OF AGREEMENT**.  This Agreement is effective as of the Effective Date and will terminate on the tenth anniversary of the Effective Date, unless earlier terminated pursuant to the express terms of this Agreement or by express written agreement of the Parties.

**3.     QUALCOMM LICENSE GRANT**

**3.1     Grant of SONY Covered Terminal License from QUALCOMM**

**3.1.1   License**.   QUALCOMM, on behalf of itself and its Subsidiaries, hereby grants to SONY a personal, nontransferable, terminable in accordance with Section 3.1.2 and Section 9 hereof, nonexclusive, royalty-bearing license, without the right to sublicense except as expressly set forth in Section 3.2, under QUALCOMM's Licensed Patent Claims to:

(a)     make (and have made), import, and use SONY Covered Terminals, provided that such have made rights do not include any right to have made Components; and

(b)     sell (and offer to sell) solely to Unlicensed Customers (i) SONY Covered Terminals and (ii) replacement parts solely to repair SONY Covered Terminals previously Sold by a SONY Party.

Notwithstanding anything to the contrary, the rights provided under this Section 3.1.1 do not include any rights or licenses (1) to Sell SONY Covered Terminals or replacement parts, directly or indirectly, (e.g., through Exclusive Resellers or other distributors) to Licensed Customers; (2) to Sell Covered Terminals that are not SONY Covered Terminals.  For avoidance of doubt, the rights granted in clauses (a) and (b) above are independent rights (i.e., the rights granted in clause (b) are not a limitation on the rights granted in clause (a), and vice versa).  No other, further or different license is hereby granted or implied.  For further avoidance of doubt, except as expressly provided in Section 3.1.4, nothing in this Agreement (including this Section 3.1.1) grants to SONY any licenses or other rights under QUALCOMM's Chinese Patents, including to make (or have made), import, use, Sell, or offer to Sell any Complete Terminals in China.

**3.1.2   Termination of License to Sell to Certain SONY Intermediate Customers**.  The license granted by QUALCOMM under Section 3.1.1(b) above to Sell SONY Covered Terminals will continue with respect to any SONY Intermediate Customer only so long as such SONY Intermediate Customer and its Affiliates do not Assert any of their patents (i) against QUALCOMM or any of its Affiliates for making,

26

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101237
Q2017MDL1_03115414
CX7614-026
JX0105-026

having made, using, importing, selling, offering to sell, or otherwise disposing of Protected QUALCOMM Components or Other QUALCOMM Components or (ii) against QUALCOMM's or any of its Affiliates' foundries or suppliers for manufacturing Protected QUALCOMM Components or Other QUALCOMM Components for, or selling Protected QUALCOMM Components or Other QUALCOMM Components to, QUALCOMM or any of its Affiliates; provided, however, (a) in the event of any such Assertion by a SONY Intermediate Customer or any of its Affiliates, QUALCOMM shall provide written notice to such SONY Intermediate Customer and to SONY (the "**Section 3.1.2 Notice**") of QUALCOMM's intent to terminate the license under Section 3.1.1 with respect to such SONY Intermediate Customer, and (b) the license to sell (and offer to sell) SONY Covered Terminals to such SONY Intermediate Customer will not terminate if such SONY Intermediate Customer or its Affiliate withdraws its Assertion in writing to, and terminates all Litigation involving such Assertion against, QUALCOMM within sixty (60) days after QUALCOMM gives such Section 3.1.2 Notice.  If such SONY Intermediate Customer or its Affiliate does not withdraw such Assertion and terminate such Litigation within such sixty (60) days, then the license to Sell SONY Covered Terminals to such SONY Intermediate Customer will automatically terminate (without any additional notice, action, or opportunity to cure) as of the date of the Section 3.1.2 Notice.

     **3.1.3**   **Sales to Licensed Customers**.  Nothing in this Agreement shall be construed to prohibit SONY from making Covered Terminals for, or selling Covered Terminals to, a Licensed Customer in accordance with the "have made" rights of such Licensed Customer as set forth in such Licensed Customer's LC License Agreement (provided that such Licensed Customer has sufficient "have made" rights to cover such activity) and no royalty will be payable by SONY hereunder for such sales, should SONY choose to make or sell Covered Terminals to such Licensed Customer under such Licensed Customer's "have made" rights.  Notwithstanding anything in the foregoing, nothing herein is intended to modify or amend the terms and conditions of any LC License Agreement, including the scope of such Licensed Customer's "have made" rights or the royalties payable thereunder.

     **3.1.4**   **Limited Covenant Not to Assert**.  QUALCOMM covenants not to Assert, and to ensure that no Subsidiary of QUALCOMM Asserts, any of QUALCOMM's Covered Chinese Patents against any SONY Party for making, or having made, any SONY Covered Terminal in China (or against any supplier or vendor of any SONY Party for making any SONY Covered Terminal in China for such SONY Party) that is then Sold for use outside of China, if such Sale is reported to QUALCOMM pursuant to this Agreement and the royalty due under this Agreement for such Sale is paid in full to QUALCOMM in accordance with this Agreement.  In addition, if SONY has a SONY

27

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101238
Q2017MDL1_03115415
CX7614-027
JX0105-027

Covered Terminal made in China by a supplier or vendor that is a QUALCOMM patent licensee, and the royalty due under this Agreement for such SONY Covered Terminal is paid in full from SONY to QUALCOMM in accordance with this Agreement, QUALCOMM will not seek to recover additional royalty payments for such SONY Covered Terminal from such supplier or vendor under such supplier's or vendor's patent license agreement with QUALCOMM.

3.2.   **Right to Sublicense Subsidiaries**.  SONY will have the right to grant sublicenses only to Subsidiaries of SONY with respect to any rights conferred upon SONY under this Agreement; provided, however, that any such sublicense must be subject in all respects to the restrictions, exceptions, royalty and other payment obligations, reports, termination provisions, and other provisions contained in this Agreement.  Whenever QUALCOMM reasonably requests, SONY shall promptly provide QUALCOMM with a complete list of all of SONY's sublicensed Subsidiaries who are actively making (or having made) or Selling SONY Covered Terminals, and whenever QUALCOMM inquires whether a specific Entity is a sublicensed Subsidiary of SONY, SONY shall promptly inform QUALCOMM whether such Entity is a sublicensed Subsidiary of SONY.  SONY shall also pay or cause its Subsidiaries to pay the same royalties on all SONY Covered Terminals Sold by its Subsidiaries (whether or not they have been sublicensed by SONY) as if SONY had Sold such SONY Covered Terminals.  In accordance with terms of this Agreement, SONY shall report to QUALCOMM the Net Selling Price for all SONY Covered Terminals Sold by its Subsidiaries (whether or not they have been sublicensed by SONY).  SONY, in addition to each applicable relevant sublicensed Subsidiary, will be responsible and jointly and severally liable to QUALCOMM if any of SONY's sublicensed Subsidiaries fails under any such sublicense to honor and comply with all obligations of SONY as though such obligations were made expressly applicable to the Subsidiary.  Any sublicense by SONY to a Subsidiary of SONY will terminate immediately and automatically if and when such Entity ceases to be a Subsidiary of SONY.  Except as expressly set forth above, SONY will have no right to sublicense any of QUALCOMM's Licensed Patent Claims or any of the rights conferred upon SONY under this Agreement.

3.3   **Assignment of QUALCOMM's Patents Containing QUALCOMM'S Licensed Patent Claims.**  In the event of the assignment, sale, or transfer after the Effective Date of any of the patents or patent applications containing any of QUALCOMM's Licensed Patent Claims to a third party, or QUALCOMM otherwise provides any right to Assert by virtue of the grant of exclusive rights or other transfer after the Effective Date of any of the patents or patent applications containing any of QUALCOMM's Licensed Patent Claims to a third party, QUALCOMM shall: (1) notify the proposed third party assignee (a "**QUALCOMM Assignee**") of the existence of this

28

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101239
Q2017MDL1_03115416
CX7614-028
JX0105-028

Agreement and the licenses, as applicable, granted under such patents or patent applications to SONY hereunder; and (2) obtain a written agreement from the QUALCOMM Assignee containing an acknowledgement by the QUALCOMM Assignee that such assignment or transfer of such patents or patent applications is subject to the licenses, as applicable, granted to SONY under this Agreement and the obligations regarding Injunctive Relief or Enhanced Damages set forth in this Agreement, and that subject to Section 9 of this Agreement, SONY will continue to have the rights under such patents or patent applications set forth herein for the term of this Agreement, and that it may not further assign, sell or transfer, or otherwise provide any right to Assert by virtue of the grant of an exclusive rights or otherwise transfer the relevant patents or patent applications to a third party, directly or indirectly (jointly "**Successors in Interest**") unless it has written agreement from such Successor in Interest that it enters into the same obligations hereunder as the Qualcomm Assignee).   SONY will be a third party beneficiary of any such written agreement between QUALCOMM and a QUALCOMM Assignee.

If QUALCOMM assigns, or otherwise provides any right to Assert, one or more of the Palm Patents to a third party during the term of this Agreement, those Palm Patents (and only those Palm Patents) will automatically be deemed, immediately prior to such assignment or provision of such right to Assert, to be included in the definition of QUALCOMM's Licensed Patent Claims as of the Effective Date.

**3.4**   **Reorganized QUALCOMM Entities**.   If, at any time on or after the Effective Date, any Subsidiary of QUALCOMM that owns or has the right to license QUALCOMM's Licensed Patent Claims or the Palm Patents is divested, spun-off, split-up, or reorganized so that it is no longer at that time a Subsidiary of QUALCOMM for purposes of this Agreement (each, a "**Reorganized QUALCOMM Entity**"), and after such divestiture, spin-off, split-up, or other reorganization such Reorganized QUALCOMM Entity has or retains any right to Assert any such Patent, then QUALCOMM shall ensure that such Reorganized QUALCOMM Entity (together with any successor-in-interest, assignee or transferee to such Reorganized QUALCOMM Entity or any other Person that receives or retains any right to Assert any such Patent, the "**QUALCOMM Successors**") is bound by the obligations (including obligations regarding Injunctive Relief or Enhanced Damages) in this Agreement for each such Patent, determined for this purpose as if such Reorganized QUALCOMM Entity and the QUALCOMM Successors are named in QUALCOMM's place and stead with respect to the application of the foregoing provisions to any such Patents, including obligations with respect to further transfers set forth in Section 3.3.

29

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101240
Q2017MDL1_03115417
CX7614-029
JX0105-029

**3.5    QUALCOMM Obligations Regarding Injunctive Relief and Enhanced Damages**.  Notwithstanding anything to the contrary in this Agreement, QUALCOMM shall ensure that, on and after the execution of this Agreement by the Parties, no QUALCOMM Party seeks any Injunctive Relief or Enhanced Damages (i) against any SONY Party with respect to the making, using, selling, offering to sell, importing, or disposing of any SONY Covered Terminal at any time prior to or during the term of this Agreement or (ii) against any SONY ODM Supplier for any making of any SONY Covered Terminal for, or any offering to sell or selling of any SONY Covered Terminal to, a SONY Party at any time prior to or during the term of this Agreement provided that such obligation will extend to such SONY ODM Supplier only to the extent it makes for, or offers to sell or sells to, a SONY Party complete or substantially complete SONY Covered Terminals.  For the avoidance of doubt, nothing in this Section 3.5 prohibits a QUALCOMM Party from seeking Injunctive Relief or Enhanced Damages against any SONY Party or SONY ODM Supplier with respect to any products that are not SONY Covered Terminals. SONY ODM Suppliers are intended third party beneficiaries of this Section 3.5.

**3.6    QUALCOMM's Subsidiaries**.  During the period that an Entity is a Subsidiary of QUALCOMM, QUALCOMM shall ensure that such Entity complies in all respects with, and abides in all respects by, the terms and conditions in this Agreement that are applicable to such Entity's performance during such period.

**3.7    Licensing of Uncovered Complete Terminals.**  Upon the written request of either Party, the Parties shall commence good faith licensing discussions concerning Uncovered Complete Terminals. Notwithstanding anything to the contrary in this Agreement, any type of Uncovered Complete Terminal will become a Covered Terminal only upon written agreement between QUALCOMM and SONY.

**3.8    Reservation of Other IPRs.** Nothing in this Agreement grants (expressly, by implication, or otherwise) to any SONY Party or any third party any rights or immunities under any non-Patent intellectual property rights (such as copyrights, design patents, mask work rights, trademarks, trade dress, and trade secrets) of any QUALCOMM Party.

**3.9    Acknowledgment as to Exhaustion.**  The licenses set forth in Section 3.1.1, together with any sublicenses granted by SONY pursuant to Section 3.2, are intended to be fully exhaustive with respect to the Sale of SONY Covered Terminals to Unlicensed Customers of SONY or SONY's sublicensed Subsidiaries, but solely to the extent of patent exhaustion under U.S. law (disregarding any rules related to the national, foreign, or international application or non-application of U.S. patent exhaustion law); provided,

30

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101241
Q2017MDL1_03115418
CX7614-030
JX0105-030

however, that (i) patent exhaustion with respect to QUALCOMM's Licensed Patent Claims will be deemed to occur regardless of the country or jurisdiction in which such SONY Covered Terminals are Sold by LICENSEE or its sublicensed Subsidiaries to their respective Unlicensed Customers (whether or not the law of such country or jurisdiction provides no, the same, or narrower patent exhaustion than under such U.S. law), and (ii) if the law of the country or jurisdiction in which such SONY Covered Terminals are Sold by LICENSEE or its sublicensed Subsidiaries to their respective Unlicensed Customers provides broader exhaustion under that portion of QUALCOMM's Licensed Patent Claims than would otherwise be obtained through the doctrine of patent exhaustion under U.S. law, then such broader exhaustion under that portion of QUALCOMM's Licensed Patent Claims will apply to such Sale.

## 4.    ROYALTIES

**4.1    Royalties for SONY Covered Terminals**.  In consideration for the license granted from QUALCOMM in this Agreement, SONY shall pay and/or cause Sony Mobile Communications Inc. to pay to QUALCOMM, within sixty (60) days after the end of each quarter, an amount equal to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of the Net Selling Price of each SONY Covered Terminal that is Sold during such quarter by any SONY Party.  If a SONY Covered Terminal is Sold outside of China For Use in China, or made in China and Sold For Use in a Territory or Sold For Use in China, as such terms "For Use in China", "For Use in a Territory" and "Territory" are defined in that certain Chinese Patent License Agreement entered into between the Parties concurrently herewith (the "**CPLA**"), then, notwithstanding the foregoing, the royalties payable for such SONY Covered Terminal will be calculated in accordance with Section 3.2 of the CPLA.

Except for claims arising under the express terms of Sections 4.3 and 4.6 and except as expressly provided in Section 21, SONY, on behalf of itself and each other SONY Party, hereby irrevocably releases, acquits, and forever discharges all of the QUALCOMM Parties from and against all claims, suits, demands, causes of action, judgments, losses, and liabilities of any nature, known or unknown, based on (1) any claim or theory that SONY or any of its Subsidiaries is entitled to a reduction in royalties paid under this Agreement with respect to any SONY Covered Terminal Sold by the SONY Parties during the term of this Agreement, or (2) any claim or theory that SONY is not required to pay the amounts set forth in and in accordance with this Agreement for Sales of SONY Covered Terminals during the term of this Agreement, in each case including any such claims based, in whole or in part, on any alleged violations of any obligation of, or commitment made by, a QUALCOMM Party to offer licenses on fair, reasonable and non-discriminatory ("**FRAND**") or reasonable and non-discriminatory ("**RAND**") terms and conditions.  The foregoing release will not be construed as preventing SONY or its

31

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Affiliates from arguing, in any dispute regarding the amount of royalties that SONY is obligated to pay to QUALCOMM for Sales after the term of this Agreement (other than Sales made after such term pursuant to Section 9.5), that the royalty amounts paid to QUALCOMM for Sales made by the SONY Parties and its Affiliates during the term of this Agreement (the "**Past Royalties**") were not RAND or FRAND, notwithstanding and provided that SONY has not sought and does not seek any reduction in (or refund or credit for) the amount of Past Royalties paid to QUALCOMM. Likewise, nothing herein shall be construed as preventing QUALCOMM from arguing, in any such dispute, that the terms of this Agreement are RAND and FRAND and are evidence of RAND and FRAND terms.

In addition, SONY acknowledges and agrees that QUALCOMM has given SONY access to a list of QUALCOMM's Licensed Patent Claims (available at the time of the Effective Date on QUALCOMM's website), and SONY has had a full and fair opportunity to consider the expiration of some of QUALCOMM's Licensed Patent Claims during the term of this Agreement and that any amount payable pursuant to Section 4 is in partial consideration for the applicable rights granted to SONY in Section 3.1.1 under QUALCOMM's Licensed Patent Claims that are not expired as of the due date of such royalty payment. SONY further acknowledges and agrees that it is not paying royalties for any expired claim in QUALCOMM's Non-Chinese Patents.

      **4.1.1**   **Tablet Royalty Cap**. Notwithstanding the applicable royalty calculated pursuant to Section 4.1 for the Sale of any SONY Covered Terminals that are Tablets, the maximum royalty payable to QUALCOMM for each such Tablet Sold under this Agreement, or under the CPLA, by a SONY Party will not exceed ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ (the "**Tablet Royalty Cap**"), regardless of the royalty that would otherwise be payable for such Tablet under the terms of this Agreement or the CPLA. Beginning on the sixth anniversary of the Effective Date, QUALCOMM will have the right to modify or eliminate the Tablet Royalty Cap if and only to the same extent that QUALCOMM has generally modified or eliminated the Tablet Royalty Cap for other QUALCOMM licensees.

      **4.1.2**   **Laptop Computer Royalty Cap**. Notwithstanding the applicable royalty calculated pursuant to Section 4.1 for the Sale of any SONY Covered Terminals that are Laptop Computers, the maximum royalty payable to QUALCOMM for each such Laptop Computer Sold under this Agreement, or under the CPLA, by a SONY Party will not exceed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "**Laptop Computer Royalty Cap**"), regardless of the royalty that would otherwise be payable for such Laptop Computer under the terms of this Agreement or the CPLA. Beginning on the sixth anniversary of the Effective Date, QUALCOMM will have the right to modify or eliminate the Laptop

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101243
Q2017MDL1_03115420
CX7614-032
JX0105-032

Computer Royalty Cap if and only to the same extent that QUALCOMM has generally modified or eliminated the Laptop Computer Royalty Cap for other QUALCOMM licensees.

**4.2    Royalties Payable Regardless of Components Purchased**.    For the convenience of the Parties in light of the global and changing nature of the industry and supply chains, royalties will be calculated and paid on the basis of the SONY Parties' worldwide Sales of SONY Covered Terminals during each quarter (other than SONY Covered Terminals that are subject to SONY's royalty obligations under the CPLA), regardless of where any such SONY Covered Terminal was actually manufactured or Sold and regardless of whether any such SONY Covered Terminal would infringe, absent the licenses granted in this Agreement, any of QUALCOMM's Licensed Patent Claims in the jurisdiction in which such SONY Covered Terminal is manufactured or Sold. SONY further acknowledges and agrees that royalties will be calculated and paid on the basis of all SONY Covered Terminals Sold by the SONY Parties regardless of whether such SONY Covered Terminals contain or incorporate one or more Components purchased by a SONY Party directly or indirectly from a QUALCOMM Party or from any third party (regardless of whether such third party is authorized by any QUALCOMM Party in any manner to sell such Components to such SONY Party).  If a SONY Party challenges or contests in Litigation its royalty obligations based on any argument, claim, or position that is contrary to or inconsistent with this paragraph, and such SONY Party does not prevail in such dispute, then SONY shall pay to QUALCOMM three times the amount of all out-of-pocket legal fees and other expenses incurred by QUALCOMM in such Litigation (in recognition of the time that QUALCOMM employees, including QUALCOMM executives and in-house counsel, devote to such Litigation, and not as a penalty).

**4.3    Overpayment Claims.**  QUALCOMM shall credit to SONY the amount of any overpayment of royalties made under this Section 4 in error provided that (i) such overpayment has been discovered as part of any audit authorized by this Agreement, or (ii) such overpayment is identified and fully explained in a written notice from SONY to QUALCOMM delivered no later than six (6) months after the due date of the payment that included such alleged overpayment, and QUALCOMM is able to verify the existence and extent of such overpayment (such verification not to be unreasonably withheld or delayed).  The foregoing procedure will constitute the sole and exclusive basis for SONY to claim overpayments under this Section 4, and shall not be modified except in accordance with Section 22.

**4.4    Taxes**.  Any taxes, duties or imposts (other than income or profits taxes assessed or imposed upon the sums due hereunder in the United States, including for

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101244
Q2017MDL1_03115421
CX7614-033
JX0105-033

avoidance of doubt any income tax of QUALCOMM in any country) will be borne and discharged by SONY and/or Sony Mobile Communications Inc. and no part thereof will be deducted from the amounts payable to QUALCOMM under any clause of this Agreement, said amounts to be net to QUALCOMM, free of any and all deductions. Notwithstanding the foregoing, if sums payable under this Agreement become subject to income or profits taxes under the tax laws of any country and applicable treaties between the United States and such country SONY and/or Sony Mobile Communications Inc. may, if and to the extent required by law, withhold from each payment the amount of said income or profits taxes due and required to be withheld from each payment; provided that SONY and/or Sony Mobile Communications Inc. will furnish and make available to QUALCOMM relevant receipts regarding the payment of any country taxes paid over to any country's government on behalf of QUALCOMM.  Such tax receipts will clearly indicate the amounts that have been withheld from the gross amounts due to QUALCOMM.  Any and all other taxes, levies, charges or fees will be paid by SONY and/or Sony Mobile Communications Inc. for its own account.

    **4.5**    **Conversion to U.S. Dollars**.  Royalties will be paid in U.S. dollars.  To the extent that the Net Selling Price for Covered Terminals Sold by a SONY Party outside of the United States is paid to a SONY Party other than in U.S. dollars, SONY shall convert the portion of the royalty payable to QUALCOMM from such Net Selling Price into U.S. dollars at the official rate of exchange of the currency of the country from which the Net Selling Price was paid, as quoted by the U.S. Wall Street Journal (or the Chase Manhattan Bank or another agreed-upon source if not quoted in the Wall Street Journal) for the last business day of the quarter in which such  Covered Terminals were Sold.  If the transfer of or the conversion into U.S. dollars is not lawful or possible, the payment of such part of the royalties as is necessary will be made by the deposit thereof, in the currency of the country where the Sale was made on which the royalty was based to the credit and account of QUALCOMM or its nominee in any commercial bank or trust company of QUALCOMM's choice located in that country, prompt notice of which SONY shall give to QUALCOMM.

    **4.6**    **Most Favored Royalty Rate.**  Subject to the exceptions set forth below, if during the term of this Agreement QUALCOMM grants a license under all or substantially all of QUALCOMM's Licensed Patent Claims to a third party to manufacture and sell Telephones, Tablets, and/or Laptop Computers at a royalty rate that is less than the royalty rate payable by SONY to QUALCOMM, and, which license will permit such third party to manufacture and sell Telephones, Tablets, and/or Laptop Computers for use within the scope of the license granted in this Agreement, QUALCOMM shall (i) promptly notify SONY of such license agreement, and (ii) offer to SONY the lower royalty rates applicable for the territory granted in the noticed license

34

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101245
Q2017MDL1_03115422
CX7614-034
JX0105-034

agreement and, at QUALCOMM's election, any or all other terms and conditions agreed to by QUALCOMM and such other licensee (whether more or less favorable than the other terms and conditions of this Agreement) (the "**Other Terms**") as part of or in connection with the third party license agreement effective as of the date on which the lower royalty rate and Other Terms became effective in the third party license agreement or related agreement (the "**Third Party License Effective Date**").  SONY will have up to sixty (60) days after the date of such notice to notify QUALCOMM that it accepts a license from QUALCOMM at such lesser royalty rate as was made available to such other licensee, provided that SONY must also, at QUALCOMM's request, accept and be bound by all the Other Terms (if any).  If SONY does not so notify QUALCOMM within this sixty (60)-day period, QUALCOMM's offer will expire and SONY will have no further rights under this Section 4.6 or otherwise with respect to, or as a result of, such third party license agreement.

The above paragraph will not apply with respect to (i) any license, agreement, or other legal commitments made by QUALCOMM prior to the Effective Date (or any amendment of any such license, agreement, or commitment that does not reduce the royalty rate for Complete Terminals or extend the time period during which a royalty rate that is less than the royalty rate payable by SONY to QUALCOMM applies, regardless of whether the amendment is entered into before, on, or after the Effective Date), (ii) any license granted by QUALCOMM to any of its Affiliates, (iii) any agreement or transaction in which QUALCOMM or any of its Affiliates acquires an ownership interest or exclusive rights in one or more patents and/or patent applications from a third party and grants a license under those patents and/or patent applications (and any other patents or patent applications that are counterparts to, or are derived or claim priority from, any acquired patent or patent application) back to such third party and/or its Affiliates, or (iv) any license granted by QUALCOMM, the consideration for which consists in whole or in part of patent rights or other rights (including cash payments or asset transfers) of such substantial value as, in the reasonable judgment of QUALCOMM, to warrant (a) a reduction in royalty rates below the rates provided in this Agreement, or (b) the acceptance of such rights in lieu of royalties.  This Section 4.6 will not apply retroactively, nor will it be construed as entitling SONY to the return of, or credit for, any money paid by it prior to the Third Party License Effective Date.

**5.**    **COVENANTS BY SONY**.  SONY acknowledges and agrees that SONY is entering into this Agreement voluntarily, and SONY further acknowledges and agrees the covenants granted in this Section 5 are being granted by SONY to QUALCOMM in return for appropriate and acceptable consideration from QUALCOMM to SONY.

35

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101246
Q2017MDL1_03115423
CX7614-035
JX0105-035

**5.1** **Covenant by SONY Not to Assert Against QUALCOMM Parties.** SONY covenants not to Assert, and to ensure that no Subsidiary of SONY Asserts, any of SONY's Intellectual Property, SONY's Chinese Essential IPR, or SONY's Chinese Camera Patents against any QUALCOMM Party for making, having made, using, importing, selling, offering to sell, or otherwise disposing of any Protected QUALCOMM Components at any time prior to or during the Covenant Term.

In the case of a Patent claim that is included in both SONY's Technically Necessary IPR and SONY's CTER Patents, the covenants not to Assert in Sections 5.1, 5.2, and 5.3 will apply to any Assertion that is based on the implementation of any mandatory or optional portion of any CDMA Standard by Protected QUALCOMM Components, and the covenant to Exhaust Remedies in Section 5.4.2 will apply to any Assertion that is based on the implementation of any mandatory or optional portion of the NFC Standards, HEVC Standards, ISDB Standards, DVB Standards, ATSC Standards, HDMI Standards, or Display Port Standards by Protected QUALCOMM Components.

**5.2** **Covenant by SONY Not to Assert Against QUALCOMM Suppliers.** SONY covenants not to Assert, and to ensure that no Subsidiary of SONY Asserts, any of SONY's Intellectual Property, Sony's Chinese Essential IPR, or SONY's Chinese Camera Patents against any QUALCOMM Supplier for making Protected QUALCOMM Components for, or offering to sell or selling Protected QUALCOMM Components to, any QUALCOMM Party at any time prior to or during the Covenant Term.

In the event of a QUALCOMM Supplier First Assertion by a particular QUALCOMM Supplier, SONY will be entitled to immediately terminate the covenant not to Assert against such QUALCOMM Supplier (and only as to such QUALCOMM Supplier) under this Section 5.2 (a) solely with respect to SONY's SEPs, if the QUALCOMM Supplier First Assertion is based on the QUALCOMM Supplier's SEPs, and/or (b) solely with respect to SONY's Included Other IPR (other than SONY's SEPs), if the QUALCOMM Supplier First Assertion is based on any Patent claim (whether or not such Patent claim is a SEP) that is substantially embodied in a Protected QUALCOMM Component or a substantially equivalent third party Component (even if the SONY Covered Terminals that are the subject of such QUALCOMM Supplier First Assertion incorporate Components that are not Protected QUALCOMM Components but Components supplied by a third party and such Components are the basis of such QUALCOMM Supplier First Assertion), in each case by providing written notice to such QUALCOMM Supplier and to QUALCOMM (the "**Section 5.2 Notice**"); provided however, that if such QUALCOMM Supplier or its Affiliate withdraws the QUALCOMM Supplier First Assertion in writing to SONY no later than sixty (60) days after receipt of the Section 5.2 Notice, then such QUALCOMM Supplier's rights under this Section 5.2

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101247
Q2017MDL1_03115424
CX7614-036
JX0105-036

will be reinstated, with retroactive and prospective effect, as if such rights had never been terminated by SONY. If such QUALCOMM Supplier or its Affiliate does not withdraw the Supplier Assertion before the end of this sixty (60)-day period, then such QUALCOMM Supplier's rights under this Section 5.2 will remain terminated solely with respect to Protected QUALCOMM Components Sold by such QUALCOMM Supplier to any QUALCOMM Party after the date of the Section 5.2 Notice and the obligations in Section 5.6 regarding Injunctive Relief and/or Enhanced Damages will no longer apply with respect to such QUALCOMM Supplier if such QUALCOMM Supplier is seeking Injunctive Relief and/or Enhanced Damages, respectively, against any SONY Party in the QUALCOMM Supplier First Assertion.

QUALCOMM Suppliers are intended third party beneficiaries of this Section 5.2.

**5.3    Covenant by SONY Not to Assert Against QUALCOMM Customers**. SONY covenants not to Assert, and to ensure that no Subsidiary of SONY Asserts, any of SONY's Intellectual Property, SONY's Chinese Essential IPR, or SONY's Chinese Camera Patents against any QUALCOMM Customer for using, importing, offering to sell, selling, or otherwise disposing of any Protected QUALCOMM Components (on a standalone basis or as incorporated into a Covered Terminal or any intermediate product) at any time prior to or during the Covenant Term.

In the event of a QUALCOMM Customer First Assertion by a particular QUALCOMM Customer, SONY will be entitled to immediately terminate (i) the covenant not to Assert against such QUALCOMM Customer (and only as to such QUALCOMM Customer) under this Section 5.3 and (ii) the covenant not to Assert against QUALCOMM Parties in Section 5.1 and QUALCOMM Suppliers in Section 5.2 but solely with respect to sales of Protected QUALCOMM Components to such QUALCOMM Customer, in each case (a) solely with respect to SONY's SEPs, if the QUALCOMM Customer First Assertion is based on the QUALCOMM Customer's SEPs, and/or (b) solely with respect to SONY's Included Other IPR (other than SONY's SEPs), if the QUALCOMM Customer First Assertion is based on any Patent claim (whether or not such Patent claim is an SEP) that is substantially embodied in a Protected QUALCOMM Component or a substantially equivalent third party Component) (even if the SONY Covered Terminals that are the subject of such QUALCOMM Customer First Assertion incorporate Components that are not Protected QUALCOMM Components but Components supplied by a third party and such Components are the basis of such QUALCOMM Customer First Assertion), in each case by providing written notice to such QUALCOMM Customer and to QUALCOMM (the "**Section 5.3 Notice**"); provided however, that if such QUALCOMM Customer or its Affiliate withdraws the QUALCOMM Customer First Assertion in writing to SONY no later than sixty (60) days

37

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101248
Q2017MDL1_03115425
CX7614-037
JX0105-037

after receipt of the Section 5.3 Notice, then such QUALCOMM Customer's rights under this Section 5.3 will be reinstated, with retroactive and prospective effect, as if such rights had never been terminated by SONY.  If such QUALCOMM Customer or its Subsidiary does not withdraw the QUALCOMM Customer First Assertion before the end of this sixty (60)-day period, then such QUALCOMM Customer's rights under this Section 5.3 will remain terminated solely with respect to Protected QUALCOMM Components sold by such QUALCOMM Customer (on a standalone basis or as incorporated into a Covered Terminal or any intermediate product) after the date of the Section 5.3 Notice.

QUALCOMM Customers are intended third party beneficiaries of this Section 5.3.

### 5.4  Covenants by SONY to Exhaust Remedies Against QUALCOMM Parties

**5.4.1  Covenant by SONY to Exhaust Remedies with Respect to Other QUALCOMM Components.**  SONY shall Exhaust Remedies before any SONY Party Asserts any of SONY's Intellectual Property, any of SONY's CTER Patents, or any of SONY's Chinese Patents against (a) any QUALCOMM Party for making, having made, using, importing, selling, offering to sell, or otherwise disposing of any Other QUALCOMM Components at any time prior to or during the Covenant Term, or (b) any QUALCOMM Supplier for making any Other QUALCOMM Components for, or selling or offering to sell any Other QUALCOMM Components to, any QUALCOMM Party at any time prior to or during the Covenant Term.

In the event of a QUALCOMM Supplier First Assertion against a SONY Uncovered Terminal by a particular QUALCOMM Supplier, SONY will be entitled to immediately terminate the covenant to Exhaust Remedies under this Section 5.4.1 solely with respect to such QUALCOMM Supplier and solely with respect to Other QUALCOMM Components that are incorporated into the same kind of Uncovered Terminals (as the SONY Uncovered Terminals that are the subject of the QUALCOMM Supplier First Assertion), by providing written notice to such QUALCOMM Supplier and to QUALCOMM (the "**Section 5.4.1 Notice**"); provided however, that if such QUALCOMM Supplier or its Affiliate withdraws the QUALCOMM Supplier First Assertion in writing to SONY no later than sixty (60) days after receipt of the Section 5.4.1 Notice, then such QUALCOMM Supplier's rights under this Section 5.4.1 will be reinstated, with retroactive and prospective effect, as if such rights had never been terminated by SONY.  If such QUALCOMM Supplier or its Affiliate does not withdraw the QUALCOMM Supplier First Assertion before the end of this sixty (60)-day period, then such QUALCOMM Supplier's rights under this Section 5.4.1 will remain terminated solely with respect to Other QUALCOMM Components Sold by such QUALCOMM Supplier to any QUALCOMM Party after the date of the Section 5.4.1 Notice and the

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101249
Q2017MDL1_03115426
CX7614-038
JX0105-038

obligations in Section 5.6 regarding Injunctive Relief and/or Enhanced Damages will no longer apply with respect to such QUALCOMM Supplier if such QUALCOMM Supplier is seeking Injunctive Relief and/or Enhanced Damages, respectively, against any SONY Party in the QUALCOMM Supplier First Assertion.

5.4.2    **Covenant by SONY to Exhaust Remedies with Respect to Certain SONY Patents.**  SONY shall Exhaust Remedies before any SONY Party Asserts any of SONY's CTER Patents or any of SONY's Other Chinese Patents against (a) any QUALCOMM Party for making, having made, using, importing, selling, offering to sell, or otherwise disposing of any Protected QUALCOMM Components at any time prior to or during the Covenant Term, or (b) any QUALCOMM Supplier for making any Protected QUALCOMM Components for, or selling or offering to sell any Protected QUALCOMM Components to, any QUALCOMM Party at any time prior to or during the Covenant Term.

5.4.3    **Covenant by SONY to Exhaust Remedies After Termination of Covenants not to Assert with Respect to a QUALCOMM Customer.**  SONY shall Exhaust Remedies before any SONY Party Asserts any of SONY's Intellectual Property, SONY's Chinese Essential IPR, or any of Sony's Chinese Camera Patents against any QUALCOMM Party or any QUALCOMM Supplier with respect to any Protected QUALCOMM Components sold to a QUALCOMM Customer during the Covenant Term after the covenants not to Assert in Sections 5.1, 5.2, and 5.3 have been terminated with respect to such QUALCOMM Customer pursuant to Section 5.3.

5.4.4    **Third Party Beneficiaries.**    QUALCOMM Suppliers are intended third party beneficiaries of this Section 5.4.

5.5    **Covenants Run with Patents**

5.5.1    **Patent Transfers**.  If, at any time on or after the Effective Date, any SONY Party (the "**Transferring Party**") sells, assigns or transfers, or otherwise provides any right to Assert (by virtue of the grant of any exclusive rights or other transfer) with respect to, any of the patents or patent applications included in SONY's Intellectual Property, SONY's CTER Patents, and/or SONY's Chinese Patents (each a "**Transferred Patent**") to any Affiliate of SONY or any third party (each such transaction, a "**Patent Transfer**" and each such Affiliate or third party, a "**Patent Transferee**"), then SONY shall ensure that such Patent Transfer is subject to, and that the Patent Transferee is contractually bound by, the obligations (including any covenants not to Assert, covenants to Exhaust Remedies, and obligations regarding Injunctive Relief or Enhanced Damages) in this Agreement  for such Transferred Patents, determined for this purpose as if such

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101250
Q2017MDL1_03115427
CX7614-039
JX0105-039

Patent Transferee is named in the Transferring Party's place and stead with respect to the application of such provisions to any such Transferred Patents, including obligations with respect to further transfers set forth in this Section 5.5. QUALCOMM acknowledges that SONY may include the wording set out in Exhibit E in any Patent Transfer agreement and by contractually binding the Patent Transferee to such language, SONY will satisfy its obligations under this Section. QUALCOMM will be a third party beneficiary of any such written agreement between SONY and the Patent Transferee.

**5.5.2  Reorganized SONY Entities**.  If, at any time on or after the Effective Date, any Subsidiary of SONY that has any right to Assert any Patent included in SONY's Intellectual Property, SONY's CTER Patents, and/or SONY's Chinese Patents is divested, spun-off, split-up, or reorganized so that it is no longer at that time a Subsidiary of SONY for purposes of this Agreement (each, a "**Reorganized SONY Entity**"), and after such divestiture, spin-off, split-up, or other reorganization such Reorganized SONY Entity has or retains any right to Assert any such Patent, then SONY shall ensure that such Reorganized SONY Entity (together with any successor-in-interest, assignee or transferee to such Reorganized SONY Entity or any other Person that receives or retains any right to Assert any such Patent, the "**SONY Successors**") is bound by the obligations (including any covenants not to Assert, covenants to Exhaust Remedies, and obligations regarding Injunctive Relief or Enhanced Damages) in this Agreement for each such Patent, determined for this purpose as if such Reorganized SONY Entity and the SONY Successors are named in SONY's place and stead with respect to the application of the foregoing provisions to any such Patents, including obligations with respect to further transfers set forth in this Section 5.5. QUALCOMM acknowledges that SONY may include the wording set out in Exhibit E in any agreement relating to the divestiture, spin-off, split-up or other re-organization (and any subsequent transactions) and by contractually binding the Reorganized SONY Entity to such language, SONY will satisfy its obligations under this Section.

**5.6    SONY Obligations Regarding Injunctive Relief and Enhanced Damages**. Notwithstanding anything to the contrary in this Agreement, SONY shall ensure that, on and after the execution of this Agreement by the Parties, no SONY Party seeks any Injunctive Relief or Enhanced Damages (i) against any QUALCOMM Party with respect to the making, using, selling, offering to sell, importing, or disposing of any Protected QUALCOMM Components or Other QUALCOMM Components at any time prior to or during the Covenant Term or (ii) against any QUALCOMM Supplier for any making of any Protected QUALCOMM Components or Other Qualcomm Components for, or any offering to sell or selling of any Protected QUALCOMM Components or Other Qualcomm Components to, a QUALCOMM Party at any time prior to or during the Covenant Term. For the avoidance of doubt, nothing in this Section 5.6 prohibits a SONY

40

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101251
Q2017MDL1_03115428
CX7614-040
JX0105-040

Party from seeking Injunctive Relief or Enhanced Damages against any QUALCOMM Party or QUALCOMM Supplier with respect to any products that are neither Protected QUALCOMM Components nor Other QUALCOMM Components. QUALCOMM Suppliers are intended third party beneficiaries of this Section 5.6.

**5.7**   **SONY's Subsidiaries**.  During the period that an Entity is a Subsidiary of SONY, SONY shall ensure that such Entity complies in all respects with, and abides in all respects by, the terms and conditions in this Agreement that are applicable to such Entity's performance during such period.

**5.8**   **Reservation of Other IPRs.**  Nothing in this Agreement grants (expressly, by implication, or otherwise) to any QUALCOMM Party or any third party any rights or immunities under any non-Patent intellectual property rights (such as copyrights, design patents, mask work rights, trademarks, trade dress, and trade secrets) of any SONY Party.

## 6.   PATENT TRANSFER

In partial, but material, consideration for the license rights granted by QUALCOMM in Section 3.1.1, SONY hereby agrees to assign to QUALCOMM (or QUALCOMM's nominee) the SONY Assigned Patents (Exhibit C) pursuant to the terms and conditions of the patent acquisition agreement that is attached as Exhibit D, which patent acquisition agreement is being executed by both Parties concurrently with the execution of this Agreement.  For avoidance of doubt, both Parties understand and agree that this Agreement will not be in force unless and until the patent acquisition agreement has been executed, along with the execution of this Agreement, by both Parties. Notwithstanding anything to the contrary in the patent acquisition agreement that is attached as Exhibit D, if such patent acquisition agreement is terminated for any reason before the Assigned Patents (as "**Assigned Patents**" is defined in Exhibit B of such patent acquisition agreement) are assigned to SnapTrack (as "**SnapTrack**" is defined in such patent acquisition agreement), then SONY shall negotiate in good faith with QUALCOMM to agree upon alternative consideration to be provided by SONY to QUALCOMM that is of equivalent value to QUALCOMM as the Assigned Patents, it being understood that to the extent possible, such alternative consideration will consist of other patents that SONY (or another SONY Party) can and does assign to SnapTrack (or another QUALCOMM Party as designated in writing by QUALCOMM).  The term of this Agreement will not be affected by any termination of such patent acquisition agreement.

41

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101252
Q2017MDL1_03115429
CX7614-041
JX0105-041

## 7.    INFORMATION

**7.1    Restrictions on Disclosure and Use**.  All documentation and technical and business information and intellectual property in whatever form recorded, that are furnished by one Party to the other Party in accordance with this Agreement, and that such furnishing Party does not wish the receiving Party to disclose without restriction ("**Information**") will remain the property of the furnishing Party and the receiving Party shall use such Information only as follows:  such Information (a) must not be reproduced or copied, in whole or part, by the receiving Party except for use as expressly authorized in this Agreement; and (b) must be disclosed only to employees or agents of the receiving Party with a need to know.  Moreover, such Information must be used by the receiving Party only for the purpose of performing under this Agreement or in the exercise of its rights it may receive under the provisions of this Agreement.

Unless the furnishing Party consents in this Agreement or otherwise in writing, the receiving Party shall hold such Information in strict confidence.  The receiving Party may disclose such Information to other Persons, upon the furnishing Party's prior written authorization, but solely to perform acts that this clause expressly authorizes the receiving Party to perform itself and further provided such other Person agrees in writing (a copy of which writing will be provided to the furnishing Party at its request) to conditions at least as protective respecting use of Information as the conditions contained in this Section 7.

These restrictions on the use or disclosure of Information will not apply to any Information: (i) that can be proven to be or have been independently developed by the receiving Party or lawfully received free of restriction from another source having the right to so furnish such Information; or (ii) after it has become generally known to the public without breach of this Agreement by the receiving Party; or (iii) that, at the time of disclosure to the receiving Party, was known to such Party free of restriction and clearly evidenced by documentation in such Party's possession; or (iv) that the disclosing Party agrees in writing is free of such restrictions; or (v) that is the subject of a subpoena or other legal or administrative demand for disclosure or is disclosed in response to a valid order or request of a court or other governmental body, but only to the extent of and for the purposes of such subpoena, demand, order or request; provided, however, that such receiving Party shall first notify the furnishing Party in writing of the subpoena, demand, order or request and permit and cooperate with the furnishing Party in seeking an appropriate protective order (or an equivalent mechanism for protecting such Information in the relevant jurisdictions).

**7.2    Scope of Information**.  Information is subject to this Section 7 only if (a) it is in writing or other tangible form and is clearly marked as proprietary or confidential

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101253
Q2017MDL1_03115430

CX7614-042

JX0105-042

when disclosed or, (b) if it is not disclosed in tangible form, (i) such Information is clearly identified as confidential or proprietary at the time of disclosure, and (ii) the disclosing Party subsequently provides the receiving Party with a written summary of the content of such oral or other non-tangible disclosure and the summary is clearly marked as proprietary or confidential; or (c) by the nature of the information and circumstances of disclosure a reasonable person under those circumstances would have perceived such Information as being confidential or proprietary.  For the avoidance of doubt, any royalty certificate submitted by any SONY Party to QUALCOMM pursuant to Section 10, and any nonpublic information provided by any SONY Party to QUALCOMM in support thereof, will be presumed to be Information subject to the restrictions in Section 7.1.

    **7.3**    <u>**Furnishing Information to Third Parties**</u>.  Nothing herein will be deemed to bar disclosure of Information by a receiving Party to third parties, with written consent of the furnishing Party (which consent may not be unreasonably withheld or delayed), if such disclosure is reasonably necessary for enjoyment of the disclosing Party's rights to use intellectual property rights licensed under this Agreement, and provided that each such third party agrees in writing to protect the Information under terms and conditions comparable, in all material respects, to the terms contained in this Section 7 and Section 13 with respect to survivability.

**8.**    **DISCLAIMERS OF REPRESENTATIONS AND WARRANTIES**

    **8.1**    EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS AGREEMENT, OR WITHIN OR BY VIRTUE OF ANY CERTIFIED STATEMENT, ROYALTY CERTIFICATE, OR OTHER ROYALTY-RELATED INFORMATION PROVIDED UNDER THIS AGREEMENT WITH RESPECT TO ANY SALES OF COVERED TERMINALS, NEITHER PARTY MAKES ANY REPRESENTATIONS OR WARRANTIES IN OR UNDER THIS AGREEMENT, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, AS TO ANY PRODUCTS, TECHNOLOGY, MATERIALS, SERVICES, INFORMATION, OR OTHER ITEMS THAT IT FURNISHES TO THE OTHER PARTY OR ANY OF ITS AFFILIATES, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR THAT ANY OF SUCH ITEMS ARE FREE FROM THE RIGHTFUL CLAIM OF ANY THIRD PARTY, BY WAY OF INFRINGEMENT OR THE LIKE.

    **8.2**    Nothing in this Agreement will be construed as (a) requiring the filing of any Patent application, the securing of any Patent, or the maintaining of any Patent in force; (b) a warranty or representation by either Party as to the validity or scope of any Patent, copyright, or other intellectual property right; (c) a warranty or representation that any manufacture, sale, lease, use, or importation will be free from infringement of Patents, copyrights, or other intellectual property rights of others; (d) an agreement to

43

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101254
Q2017MDL1_03115431
CX7614-043
JX0105-043

bring or prosecute actions or suits against third parties for infringement; (e) an obligation to furnish any manufacturing assistance; or (f) conferring any right to use (in advertising, publicity, or otherwise) any name, trade name, or trademark, or any contraction, abbreviation, or simulation thereof.  It will be the sole responsibility of each Party to determine whether it needs licenses or other rights under Patents or other intellectual property of third parties.  The terms of this Section 8 will survive any termination of this Agreement.

## 9.    TERMINATION

   **9.1    Termination for Cause by QUALCOMM**.  In addition to any other remedies available under this Agreement or by law, QUALCOMM may terminate this Agreement, by written notice to SONY, if any SONY Party (i) commits a Payment Default; (ii) defaults in the making of any report hereunder, (iii) fails to comply with the terms and conditions of Section 10 or Section 11.1 or Section 11.2, (iv) makes any materially false report to QUALCOMM, (v) defaults in the payment of an Arbitration Award, or (vi) commits any other material breach of any covenant, representation, warranty, or agreement in this Agreement; provided, however, that in the case of any such default or breach that is capable of being cured, QUALCOMM will not have a right to terminate this Agreement for cause unless and until SONY (or the other SONY Party in question) has failed to remedy any such default or breach within sixty (60) days after written notice thereof by QUALCOMM.  SONY will be able to effectuate such cure with respect to a default in the making of any payment of any amount due hereunder no more than three (3) times in any twenty-four (24)-month time period, provided, however, that a series of underpayments resulting from (a) a good faith disagreement discovered as the result of an Audit or (b) any other repeated unintentional error that is properly cured, will not constitute a default for purposes of this sentence.  If QUALCOMM gives notice of termination pursuant to clause (vi) above and SONY disputes such termination notice pursuant to Section 18, such termination will not become effective until sixty (60) days after the arbitrators have ruled that QUALCOMM did validly terminate this Agreement pursuant to clause (vi) above, and upon such ruling by the arbitrators, there will be no additional cure period.

   **9.2    SONY Termination Rights**

      **9.2.1  Termination for Cause by SONY**.  In addition to any other remedies available under this Agreement or by law, SONY may terminate this Agreement, by written notice to QUALCOMM, if QUALCOMM (i) fails to comply with the terms and conditions of Section 11.5, or (ii) commits any material breach of any material covenant, representation, warranty, or agreement in this Agreement; provided, however, that in the

44

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101255
Q2017MDL1_03115432
CX7614-044
JX0105-044

case of any such breach that is capable of being cured, SONY will not have a right to terminate this Agreement for cause unless and until QUALCOMM has failed to remedy such material breach within sixty (60) days after receipt by QUALCOMM of written notice thereof by SONY.

        **9.2.2**    **Other Sony Termination Rights**.  SONY may terminate this Agreement as expressly provided in Section 11.

        **9.3**    **Termination in the Event of Bankruptcy, Dissolution, or Liquidation**.  A Party shall provide written notice to the other Party immediately upon the occurrence of any of the following events (each, an "**Event**") concerning the first Party or any of its Affiliates: (a) insolvency, bankruptcy, or liquidation or filing of any application therefor, or other commitment of an affirmative act of insolvency; (b) attachment, execution, or seizure of substantially all of the assets or filing of any application therefor; (c) assignment or transfer of that portion of the business to which this Agreement pertains to a trustee for the benefit of creditors; or (d) termination of its business or dissolution.  If either Party becomes the subject of an Event, the other Party will have the right to terminate this Agreement with immediate effect by giving written notice of termination to the first Party no earlier than sixty (60) days after the Event occurs (unless such Event ceases within such sixty (60)-day period).  If an Affiliate of either Party becomes the subject of an Event, all rights granted to such Affiliate under or pursuant to this Agreement (directly or by sublicense or otherwise) will automatically terminate upon the expiration of sixty (60) days after such Event occurs (unless such Event ceases within such sixty (60)-day period).

        **9.4**    **Rights upon Expiration or Termination**.  Upon the expiration or any termination of this Agreement, all licenses granted by QUALCOMM hereunder, on behalf of itself or its Subsidiaries, as well as any sublicenses granted by SONY will terminate and SONY shall duly account to QUALCOMM for all royalties and other payments within thirty (30) days after the effective date of such expiration or termination.  Any expiration or termination of this Agreement will not relieve SONY from its obligations under Section 10 to maintain books and records and provide royalty certificates to QUALCOMM or from its liability for the payment of royalties on SONY Covered Terminals Sold on or prior to the date of such expiration or termination, will not prejudice QUALCOMM's right to recover any royalties or other sums due or accrued at the time of such expiration or termination, and will not prejudice any cause of action or claim accrued or to accrue on account of any breach or default.  Furthermore, any expiration or termination of this Agreement will not prejudice the right of QUALCOMM to conduct a final audit in accordance with the provisions of Section 10.  No expiration or termination of this Agreement will limit the rights of SONY or its Subsidiaries to sell those SONY Covered Terminals in inventory or in process at the time of expiration or

45

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101256
Q2017MDL1_03115433
CX7614-045
JX0105-045

termination, including production of SONY Covered Terminals sufficient to consume all chipset inventory on-hand or subject to a non-cancellable order, subject to payment of the royalty applicable to the sale of such SONY Covered Terminals and continued compliance with the other provisions of this Agreement. If, after this Agreement expires or terminates, any QUALCOMM Party lawfully Asserts any of QUALCOMM's Excluded Patents against any SONY Party for making, having made, using, importing, selling, offering to sell, or disposing of any SONY Covered Terminals during any period of time within the term of this Agreement (the "**Designated Period**") for which royalties in accordance with this Agreement were paid in full to QUALCOMM, then SONY will be entitled to terminate QUALCOMM's rights under the covenant not to Assert granted in Section 5.1 and QUALCOMM Suppliers' rights under the covenant not to Assert granted in Section 5.2, solely with respect to SONY's Included Other IPR and solely with respect to Protected QUALCOMM Components that were Sold by any QUALCOMM Party during the Designated Period. Further, no QUALCOMM Party shall seek downstream equitable relief for any SONY Covered Terminals that were Sold by any SONY Party during the term of this Agreement and for which royalties in accordance with this Agreement are paid to QUALCOMM.

### 9.5   Defensive Termination

**9.5.1   SONY First Assertion**.  In the event of a SONY First Assertion, QUALCOMM (or a Spun-Out Entity under the provisions of Section 11.5, if applicable) will be entitled to immediately terminate the license rights granted under Section 3.1.1, solely with respect to QUALCOMM's Included Other IPR, by providing written notice to SONY (the "**Section 9.5.1 Notice**"); provided, however that if the SONY Party that made such SONY First Assertion withdraws that SONY First Assertion in writing to QUALCOMM no later than sixty (60) days after QUALCOMM's receipt of the Section 9.5.1 Notice, then such terminated license rights will be reinstated, with retroactive and prospective effect, as if such license rights had not been terminated by QUALCOMM based on such SONY First Assertion.  If such SONY Party does not withdraw such SONY First Assertion before the end of this sixty (60)-day period, then such terminated license rights will remain terminated, solely with respect to QUALCOMM's Included Other IPR, after the date of the Section 9.5.1 Notice.  For avoidance of doubt, any termination of license rights pursuant to this Section 9.5.1 will not terminate, modify, or otherwise affect either (a) the license rights granted under Section 3.1.1 with respect to QUALCOMM's Technically Necessary IPR or (b) the rights and obligations of the Parties set forth in Sections 4 and 5.

**9.5.2   QUALCOMM First Assertion of QUALCOMM's Excluded Patents**.  In the event of a QUALCOMM First Assertion of any of QUALCOMM's

46

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101257
Q2017MDL1_03115434
CX7614-046
JX0105-046

Excluded Patents, SONY will be entitled to immediately terminate QUALCOMM's rights under the covenant not to Assert granted in Section 5.1 and QUALCOMM's Suppliers' rights under the covenant not to Assert granted in Section 5.2, solely with respect to SONY's Included Other IPR, by providing written notice to QUALCOMM (the "**Section 9.5.2 Notice**"); provided, however, that if the QUALCOMM Party that made such QUALCOMM First Assertion withdraws that QUALCOMM First Assertion in writing to SONY no later than sixty (60) days after SONY's receipt of the Section 9.5.2 Notice, then such terminated rights will be reinstated, with retroactive and prospective effect, as if such rights had not been terminated by SONY based on such QUALCOMM First Assertion. If such QUALCOMM Party does not withdraw such QUALCOMM First Assertion before the end of this sixty (60)-day period, then such rights will remain terminated, solely with respect to SONY's Included Other IPR and solely with respect to Protected QUALCOMM Components Sold by any QUALCOMM Party after the date of the Section 9.5.2 Notice. For avoidance of doubt, any termination of QUALCOMM's rights pursuant to this Section 9.5.2 will not terminate, modify, or otherwise affect either (a) QUALCOMM's rights under the covenant not to Assert granted in Section 5.1 with respect to SONY's Technically Necessary IPR or (b) the rights and obligations of the Parties set forth in Sections 3, 4, and the other subsections in Section 5.

      **9.5.3   QUALCOMM First Assertion of QUALCOMM's Other Chinese Patents**. In the event of a QUALCOMM First Assertion of any of QUALCOMM's Other Chinese Patents, SONY will be entitled to immediately terminate QUALCOMM's and QUALCOMM Suppliers' rights under (a) the covenant not to Assert under Sections 5.1 and 5.2, respectively, solely with respect to SONY's Chinese Essential IPR and SONY's Chinese Camera Patents, and (b) the covenants to Exhaust Remedies under Sections 5.4.1 and 5.4.2, solely with respect to SONY's Other Chinese Patents, by providing written notice to QUALCOMM (the "**Section 9.5.3 Notice**"); provided however, that if the QUALCOMM Party that made such QUALCOMM First Assertion withdraws that QUALCOMM First Assertion in writing to SONY no later than sixty (60) days after SONY's receipt of the Section 9.5.3 Notice, then such terminated rights will be reinstated, with retroactive and prospective effect, as if such rights had not been terminated by SONY based on such QUALCOMM First Assertion. If such QUALCOMM Party does not withdraw such QUALCOMM First Assertion before the end of this sixty (60)-day period, then such rights will remain terminated, solely with respect to SONY's Chinese Patents, and solely with respect to Protected QUALCOMM Components and Other QUALCOMM Components Sold by any QUALCOMM Party after the date of the Section 9.5.3 Notice. For avoidance of doubt, any termination of QUALCOMM's rights pursuant to this Section 9.5.3 will not terminate, modify, or otherwise affect either (a) QUALCOMM's rights under the covenants granted in Sections 5.4.1 and 5.4.2 with

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101258
Q2017MDL1_03115435
CX7614-047
JX0105-047

respect to SONY's Intellectual Property or SONY's CTER Patents, or (b) the rights and obligations of the Parties set forth in Sections 3, 4, and the other subsections in Section 5.

**9.5.4** **QUALCOMM First Assertion Against Uncovered Terminals**. In the event of a QUALCOMM First Assertion against an Uncovered Terminal Sold by any SONY Party, SONY will be entitled to terminate QUALCOMM's rights under the covenant to Exhaust Remedies granted in Section 5.4.1 solely with respect to Other QUALCOMM Components that are incorporated into the same type of Uncovered Terminals by providing written notice to such QUALCOMM Party (the "**Section 9.5.4 Notice**"). Such termination will be effective as of the date of SONY's first commercial offering of such Uncovered Terminal; provided, however, that if such QUALCOMM Party withdraws the QUALCOMM First Assertion in writing to SONY no later than sixty (60) days after receipt of the Section 9.5.4 Notice, then such terminated rights will be reinstated, with retroactive and prospective effect, as if such rights had never been terminated by SONY. If such QUALCOMM Party does not withdraw the QUALCOMM Assertion before the end of this sixty (60)-day period, then such rights will remain terminated solely with respect to Other QUALCOMM Components sold by such QUALCOMM Party (and incorporated into the same type of Uncovered Terminals) after the date of the Section 9.5.4 Notice.

## 10. RECORDS, CERTIFICATES, AND AUDITS

**10.1** **Certified Statement.** Within sixty (60) days following the end of each whole or partial quarter during the term of this Agreement, SONY shall certify and/or cause any other SONY Party to certify to Qualcomm the royalties payable for Sales during such quarter by (i) using the form attached to this Agreement as <u>Exhibit A</u> and (ii) providing at least all of the types of information identified on <u>Exhibit A</u>. If no SONY Covered Terminals have been Sold for that quarter, that fact shall be shown on such form except that in the case of SONY Covered Terminals that are Laptop Computers, if no Laptop Computers have been Sold for that quarter, SONY shall provide an email notice addressed to **qtl.royalty@qualcomm.com** stating that there were no Laptop Computers SOLD for that quarter, and that no report for Laptop Computers will be submitted for that quarter.

**10.2** **Audits**. SONY shall ensure that each of the SONY Parties keeps clear and accurate records with respect to the manufacture, sale, and use of SONY Covered Terminals (including with respect to items required to be Properly Documented). QUALCOMM shall have the right, through independent certified public accountants of its choosing (but reasonably acceptable to SONY, which acceptable accountants shall include PricewaterhouseCoopers), no more than once each year (and no more than once

48

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

for any reporting period) to conduct an audit of the applicable books and records as described below and to receive a list of all sublicensed Subsidiaries during the audit period and to examine and audit, during normal business hours, all such records and such other records and accounts as may under recognized accounting practices contain non-duplicative information bearing upon SONY's compliance with its royalty reporting and payment obligations under this Agreement.  QUALCOMM's written notice to SONY of QUALCOMM's intention to audit SONY's and its Subsidiaries' books and records will include a proposed commencement date for such audit, such proposed commencement date to be no earlier than sixty (60) days after the date of such notice.  SONY shall allow the audit to commence no later than thirty (30) days after QUALCOMM's proposed audit commencement date.  Prior to the commencement date of the audit, SONY shall provide access at a single location to SONY's and its Subsidiaries' necessary books and records for such audit to be carried on and shall make available such personnel as are reasonably necessary to interpret and explain such books and records.   Prompt adjustment shall be made by SONY for any error or omission disclosed by such examination or audit to compensate for any errors or omissions disclosed by such examination or audit.  Neither such right to examine and audit, nor the right to receive such adjustments, shall be affected by statements to the contrary appearing on checks or otherwise, unless any such right is expressly waived by QUALCOMM.  SONY shall furnish QUALCOMM such additional information as QUALCOMM may reasonably prescribe from time to time to enable QUALCOMM to ascertain whether SONY Covered Terminals Sold by any SONY Party are subject to payment of royalties hereunder and the amount payable thereon.  The cost of such audit, other than SONY's and its Subsidiaries' cost of providing their books, records, and personnel, will be borne by QUALCOMM, unless the audit reveals an underpayment to QUALCOMM equal to 10% or greater of the amount actually remitted to QUALCOMM for the period being audited (regardless of and without netting out the amount of any overpayment by SONY and its Subsidiaries for such period), in which case SONY shall bear the cost of the audit.  The Parties hereby acknowledge and agree that "accurate and complete books and records concerning any SONY Covered Terminals it may sell under this Agreement" includes at least all of the documents and information identified in <u>Exhibit B</u>, or commercially reasonable equivalents of such documents and information.

11.    **ASSIGNMENT AND CHANGE IN CONTROL**

11.1    <u>**No Assignment or Delegation**</u>.  SONY shall not assign this Agreement (or any of SONY's rights or interests under this Agreement) or delegate any of SONY's obligations under this Agreement without QUALCOMM's prior written consent, except as otherwise expressly permitted in this Section 11 below.  For purposes of this Section 11, any Change in Control of SONY will be deemed to be an assignment of this

49

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Agreement by SONY which is subject to this Section 11.  Any attempted assignment of this Agreement or any of SONY's rights or interests under this Agreement by SONY (other than a deemed assignment resulting from a Change in Control of SONY), or any attempted delegation of any of SONY's obligations under this Agreement by SONY, without QUALCOMM's prior written consent, when such consent is required, will be, at QUALCOMM's option (in QUALCOMM's discretion), null, void, and ineffective from inception.  In addition, any attempted assignment of this Agreement or any of SONY's rights or interests under this Agreement by SONY (including a deemed assignment resulting from a Change in Control of SONY), or any attempted delegation of any of SONY's obligations under this Agreement by SONY, without QUALCOMM's prior written consent, when such consent is required, will constitute a material breach of this Agreement by SONY that is not capable of being cured.

**11.2**    **Divestiture of SONY Covered Terminal Business**.    Notwithstanding Section 11.1, if SONY divests (including by formation of a joint venture with a third party) all or substantially all of the SONY Covered Terminal business to a third party (the "**Acquirer**"), and neither the Acquirer nor any of its Affiliates is an Active QUALCOMM Licensee, SONY may, in its discretion, assign this Agreement in its entirety to the Acquirer upon written notice to QUALCOMM; provided, however, that:

(i)    the Acquirer must agree, on behalf of itself and its Affiliates, to be bound to each of the covenants not to Assert, covenants to Exhaust Remedies, and covenants not to seek Injunctive Relief and Enhanced Damages that are granted in Section 5, determined for this purpose as if each of the Acquirer and its Affiliates were named in the place of SONY within such covenants not to Assert, covenants to Exhaust Remedies, and covenants not to seek Injunctive Relief and Enhanced Damages;

(ii)    SONY will remain bound by each of the covenants not to Assert, covenants to Exhaust Remedies, and covenants not to seek Injunctive Relief and Enhanced Damages that are granted in Section 5 for the remainder of the Covenant Term subject to SONY's rights to terminate such covenants, only as to SONY and not as to the Acquirer, as set out in Sections 5.2, 5.3, and 9.5, as applicable;

(iii)    if the Acquirer or any of its Affiliates (A) has a royalty-bearing patent license from a QUALCOMM Party covering Laptop Computers, and (B) has made, has an Affiliate that has made, or has reported to QUALCOMM that it or any of its Affiliates made, sales of Laptop Computers pursuant to such patent license, at any time within six (6) months preceding the closing of the divestiture of the SONY Covered Terminal business to the Acquirer, then from and after the effective date of any such assignment of this Agreement, Laptop Computers will be excluded from the licenses granted by QUALCOMM under this Agreement; and

50

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101261
Q2017MDL1_03115438
CX7614-050
JX0105-050

(iv)    from and after the effective date of any such assignment of this Agreement, the licenses granted by QUALCOMM under this Agreement will be limited to apply only to:

(a)    the then-existing SONY Covered Terminals that were being sold or were under development at SONY at the time of the divestiture, and

(b)    new models and versions derived in all material respects from such then-existing SONY Covered Terminals (as subsequently Sold by the Acquirer and its Affiliates, and collectively with the SONY Covered Terminal models referred to in clause (a) above that are Sold by the Acquirer and its Affiliates after the divestiture, the "**Successor Complete Terminals**"); provided further that such Sales of Successor Complete Terminals covered by the licenses in this Agreement will be limited to an annual growth cap of fifteen percent (15%) per year  (measured by the number of units sold), with the twelve (12)-month period of unit Sales by the SONY Parties (as reported to QUALCOMM in SONY's royalty certificates) of SONY Covered Terminals occurring prior to the divestiture being the initial baseline for the measurement of such annual growth cap.  Accordingly, the maximum number of Successor Complete Terminals that can be covered by the licenses in this Agreement in the first twelve (12)-month period after the divestiture (which is referred to as the "growth cap" for such twelve (12)-month period) will be one hundred fifteen percent (115%) of the cumulative number of SONY Covered Terminals Sold by the SONY Parties during the twelve (12)-month period ending on the date of the consummation of the divestiture (as reported to QUALCOMM in SONY's royalty certificates), and after the first twelve (12)-month period, each subsequent twelve (12)-month period's growth cap will be the lesser of (X) one hundred fifteen percent (115%) of the growth cap for the immediately preceding twelve (12)-month period, or (Y) one hundred fifteen percent (115%) of the cumulative number of units of Successor Complete Terminals actually Sold by the Acquirer and its Affiliates during the immediately preceding twelve (12)-month period (as reported to QUALCOMM in the Acquirer's or its Affiliates' royalty certificates).  For example, if the SONY Parties collectively sell 40,000,000 units of SONY Covered Terminals in the twelve (12)-month period preceding the divestiture (based on SONY's royalty certificates), then the growth cap for the first twelve (12)-month period following the divestiture would be 46,000,000, and if the Acquirer sells 50,000,000 Successor Complete Terminals in the twelve (12)-month period following the divestiture (based on the Acquirer's royalty certificates), only 46,000,000 units of such Successor Complete Terminals would be covered by the licenses in this Agreement, and the growth cap for the next twelve (12)-month period would be 52,900,000.  However, if Acquirer sells 30,000,000 Successor Complete Terminals in the twelve (12)-month period following divestiture (based on the Acquirer's royalty certificates), all 30,000,000 units of such Successor Complete Terminals

51

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

would be covered by the licenses in this Agreement, and the growth cap for the next twelve (12)-month period would be 34,500,000.

QUALCOMM may require SONY to provide commercially reasonable documentation to evidence the nature of any assignment permitted by this Section 11, including a signed written acknowledgement from the relevant assignee.

For avoidance of doubt, any Complete Terminals being sold or developed prior to the divestiture date by the Acquirer or any of its Affiliates that was not a SONY Party prior to such divestiture, including any new models and versions of such Complete Terminals that are derived therefrom, will not be covered by the licenses granted by QUALCOMM in this Agreement.

For the further avoidance of doubt, if the Acquirer or any of its Affiliates is an Active QUALCOMM Licensee, SONY must obtain written consent from QUALCOMM prior to any such assignment. Any attempted such assignment without QUALCOMM's prior written consent will be, at QUALCOMM's option (in QUALCOMM's discretion), null, void, and ineffective from inception, and will constitute a material breach of this Agreement by SONY that is not capable of being cured.

If QUALCOMM expressly withholds its consent (or fails to respond to such request for consent within ninety (90) days of SONY's written request to QUALCOMM for consent) to an assignment of this Agreement by SONY to an Acquirer that is an Active QUALCOMM Licensee and SONY has divested, or later divests all of the SONY Covered Terminal business to such Acquirer within one year after SONY's written request to QUALCOMM for consent to assign to such Acquirer, then SONY may terminate this Agreement by written notice to QUALCOMM, and such termination will be effective as of the later of (A) the date of consummation of the divestiture or (B) the date on which SONY requested QUALCOMM's consent. Upon such termination, the Covenant Term will immediately end.

**11.3    Termination of Agreement Based on SONY Divestiture or Closure of SONY Covered Terminal Business**.  If SONY divests (including by formation of a joint venture with a third party) all of the SONY Covered Terminal business to a third party or SONY ceases to conduct the SONY Covered Terminal business (which includes permanently discontinuing all manufacturing and Sales of SONY Covered Terminals), SONY may, in its discretion, terminate this Agreement effective as of the date of such divestiture or business closure (the "**Termination Date**").  If SONY decides to terminate this Agreement pursuant to this Section 11.3, then:

52

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101263
Q2017MDL1_03115440
CX7614-052
JX0105-052

(i)      SONY's covenants not to Assert in Section 5 will remain in force and effect for activities that have been or will be performed at any time prior to the one (1)-year anniversary of the Termination Date;

(ii)     SONY's covenants not to Assert in Sections 5.1 and 5.2 will convert, with respect to activities that occur after the one (1)-year anniversary of the Termination Date, to covenants to Exhaust Remedies before Asserting against any QUALCOMM Party or QUALCOMM Supplier (it being understood that the scope of such covenants, with respect to SONY's and its Subsidiaries' Patents and with respect to QUALCOMM Components, will remain the same);

(iii)    the Covenant Term will end four (4) years after the Effective Date or two (2) years after the Termination Date, whichever is longer,  but in no event later than the tenth anniversary of the Effective Date; and

(iv)     SONY's covenants to Exhaust Remedies (including the covenants to Exhaust Remedies resulting from clause (ii) above) and covenants not to seek Injunctive Relief or Enhanced Damages in Section 5 will remain in force and effect for activities that have been or will be performed at any time  on or  before the end of the Covenant Term.

**11.4    QUALCOMM Assignment of Rights to Receive Royalties.** Notwithstanding anything to the contrary in this Agreement, QUALCOMM may, at its discretion, assign its rights to receive royalties under this Agreement to any Affiliate or third party.  QUALCOMM shall promptly provide SONY with written notice of such assignment and shall hold SONY harmless with respect to any claims arising out of such assignment.

**11.5    Spin-out of QUALCOMM Components Business**.  Notwithstanding anything to the contrary in this Agreement, if the Entity (or Entities) conducting all or substantially all of the QUALCOMM Components  business cease to be a Subsidiary (or Subsidiaries) of QUALCOMM as a result of a spin-out of such QUALCOMM Components business by means of (i) a distribution of shares to QUALCOMM's existing shareholders or (ii) any other transaction or series of related transactions that does not result in any third party (other than a Financial Institution) acquiring direct or indirect ownership or control of more than twenty percent (20%) of the combined voting power of such Entity (or Entities), QUALCOMM may, in its discretion, assign its rights under Section 5 and Section 9.5.1, subject to the limitations below, to such Entity (or one of such Entities) without prior consent from SONY.

From and after the date of any such assignment:

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101264
Q2017MDL1_03115441
CX7614-053
JX0105-053

(1)     the covenants not to Assert in Section 5 will be limited to apply only to:

(a) the then-existing Protected QUALCOMM Components that were being sold or were under development by QUALCOMM or any of its Subsidiaries at the time of the spin-out transaction described above (the "**Spin Out**"), and

(b)     new models and versions derived in all material respects from such then-existing QUALCOMM Components (the "**Successor Components**"); provided further that sales of Protected QUALCOMM Components (including the Successor Components) covered under such covenants not to Assert will be limited to an annual growth cap of no more than fifteen percent (15%) per year (measured by the number of units sold), with the unit sales of such Protected QUALCOMM Components by QUALCOMM Parties occurring in the twelve (12) months prior to the date on which the Spin Out is consummated being the initial baseline for the measurement of such annual growth cap.   Accordingly, the maximum number of Protected QUALCOMM Components that can be covered by the covenants not to Assert in Section 5 in the first twelve (12)-month period after the Spin Out (which is referred to as the "growth cap" for such twelve (12)-month period) will be one hundred fifteen percent (115%) of the cumulative number of Protected QUALCOMM Components Sold by the QUALCOMM Parties during the twelve (12)-month period ending on the date of the consummation of the Spin Out, and after the first twelve (12)-month period, each subsequent twelve (12)-month period's growth cap will be the lesser of (i) one hundred fifteen percent (115%) of the growth cap for the immediately preceding twelve (12)-month period, or (ii) one hundred fifteen percent (115%) of the cumulative number of units of Protected QUALCOMM Components actually Sold by the Entities conducting the QUALCOMM Components business during the immediately preceding twelve (12)-month period.   For clarity, any unit sales of Protected QUALCOMM Components that exceed the annual growth cap for a given twelve (12)-month period that renews annually after the Spin Out consummation date will not be covered under the covenants not to Assert in Section 5;

(2)     QUALCOMM will retain no rights or benefits under the covenants not to Assert in Section 5;

(3)     the Spun-Out Entity (as defined below) must agree, on behalf of itself and its Affiliates, to be bound by Section 3, Section 7, Section 9.5, and Section 14 through Section 27 (including the defined terms used therein, the "**Applicable Provisions**") determined for this purpose as if the Spun-Out Entity were named in the place of QUALCOMM in the Applicable Provisions (for example and without limitation, reference to QUALCOMM's Affiliates will be understood to mean Affiliates of the Spun-Out Entity), and the Spun-Out Entity will be the beneficiary of Section 9.5.1; and

54

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101265
Q2017MDL1_03115442
CX7614-054
JX0105-054

(4)  if the Spun-Out Entity commits any material breach of any material obligation of the Spun-Out Entity in the Applicable Provisions and fails to remedy such material breach within sixty (60) days after its receipt of written notice thereof by SONY, SONY may immediately terminate, by written notice to the Spun-Out Entity, all of the Spun-Out Entity's rights (including covenants to Exhaust Remedies) and QUALCOMM Suppliers' rights under Section 5 and Section 9.5.1.

SONY may require QUALCOMM to provide commercially reasonable documentation to evidence the nature of any assignment permitted by this Section 11, including a signed written acknowledgement from the relevant assignee.  For purposes of clarification, in the event of a Change in Control of an Entity resulting from a Spin Out (the "Spun-Out Entity"), the Spun-Out Entity shall not further assign any of its rights or interests under this Agreement, or delegate any of its obligations under this Agreement, without SONY's prior written consent.

Except as expressly allowed in Section 11.4 and this Section 11.5, QUALCOMM shall not assign this Agreement (or any of QUALCOMM's rights or interests under this Agreement) or delegate any of QUALCOMM's obligations under this Agreement without SONY's prior written consent; provided however, that if Qualcomm assigns this Agreement (or any of QUALCOMM's rights or interests under this Agreement) or delegates any of QUALCOMM's obligations under this Agreement to a Subsidiary of QUALCOMM, SONY's consent will not be required.

**12.**    **EXPORT COMPLIANCE.**  Each Party acknowledges and agrees that it will comply with (and will ensure that each of its Affiliates complies with) all applicable United States ("U.S.") and foreign export control and economic sanctions laws and regulations in exercising any rights or performing any obligations under this Agreement. SONY further agrees that unless exempt from U.S. regulations as published (i.e., publicly available) information, any technology transferred to SONY pursuant to this Agreement will not be exported or re-exported by SONY or any of its Affiliates to (i) any country that is, at that time, subject to U.S. government embargoes or sanctions as listed in the U.S. Export Administration Regulations ("EAR"),  15 C.F.R. §§ 740, Supplement 1, Country Group E 1/2 (the countries subject to such embargoes or sanctions currently include Cuba, Iran, North Korea, Sudan, and Syria), or (ii) any nationals of any such country described in clause (i) above.

**13**.    **SURVIVAL**.  In conjunction with and subject to Section 9.4 (Rights upon Expiration or Termination), the provisions in this Agreement that are expressly stated to survive or that, by their nature, would reasonably be expected to continue beyond the expiration or termination of this Agreement (including Section 1 (HEADINGS AND DEFINITIONS), Section 3.4 (QUALCOMM OBLIGATIONS REGARDING INJUNCTIVE

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101266
Q2017MDL1_03115443

CX7614-055

JX0105-055

RELIEF AND ENHANCED DAMAGES) but only with respect to activities conducted or performed during the period of time the Agreement was in effect, Section 4.3 (Overpayment Claims), Section 5 (COVENANTS BY SONY) (with the exception that Sections 5.1-5.4 and 5.6 will survive only with respect to activities conducted or performed during the Covenant Term), Section 6 (PATENT TRANSFER), Section 7 (INFORMATION), Section 8 (DISCLAIMER OF REPRESENTATIONS AND WARRANTIES), Section 9.5 (RIGHTS UPON EXPIRATION OR TERMINATION), Section 11(ASSIGNMENT AND CHANGE IN CONTROL), and Section 14 (SEVERABILITY) through Section 27 (TIME IS OF THE ESSENCE)) will survive such expiration or termination.  However, except to the limited extent expressly provided in Section 9.5, in no event will any license or sublicense to QUALCOMM's Licensed Patent Claims survive the expiration or termination of this Agreement.

**14.    SEVERABILITY**.  If any provision in this Agreement is held to be invalid or unenforceable in whole or in part (the "**Invalid Provision**"), the remaining portions of such provision (if any) and the other provisions in this Agreement will remain in effect and the Invalid Provision will remain in effect to the maximum extent allowed by law.  If requested by either Party within ninety (90) days after a final decision (i.e., a decision that is not or cannot be appealed) holding the Invalid Provision invalid or unenforceable, the Parties shall promptly negotiate a replacement for the Invalid Provision that provides, to the maximum extent possible, substantially the same rights, benefits and obligations to each Party as did the Invalid Provision.  If the Parties are unable to agree on a replacement provision within one hundred eighty (180) days after such final decision and if the Invalid Provision is any material portion of Section 3, Section 4, and/or Section 5, then either Party may, at any time after such one hundred and eighty (180)-day period and before the one-year anniversary of such final decision, terminate this Agreement effective immediately upon written notice to the other Party.  Any dispute over whether the Invalid Provision is a material portion of Section 3, Section 4, and/or Section 5 will be resolved according to the dispute resolution provisions in Section 18.  Notwithstanding anything to the contrary in this Agreement, if this Agreement is terminated under the terms of this Section 14 before the fourth anniversary of the Effective Date, then SONY and QUALCOMM shall negotiate in good faith to enter into a new patent license agreement of substantially the same scope and duration that takes into account the value of the Assigned Patents that were assigned by the SONY Parties to SnapTrack.

**15.    NON-WAIVER**.  No waiver of the terms and conditions of this Agreement, or the failure of either Party strictly to enforce any such term or condition on one or more occasions, will be construed as a waiver of the same or of any other term or condition of this Agreement on any other occasion.  A waiver of any right or remedy under this Agreement will be binding on a Party only if it is expressly stated in a written document

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101267
Q2017MDL1_03115444
CX7614-056
JX0105-056

that (i) specifically refers to this Agreement and expressly states such Party's intent to waive one or more rights or remedies under this Agreement, and (ii) is signed by an authorized representative of such Party (which in the case of QUALCOMM, will be only the CEO or President of QUALCOMM or an authorized representative of the QUALCOMM Technology Licensing Division of QUALCOMM).

**16.     NOTICES AND OTHER COMMUNICATIONS**.  All notices, requests, demands, consents, agreements, reports, certificates, and other communications required or permitted to be given, or otherwise intended to have legal effect, under this Agreement (each, a "**Notice**") must be provided in writing and in English and must be sent to the Party to whom it is to be given as provided in this Section 16.  Each Party may change its address for receipt of Notices by providing notice of the new address to the other Party in accordance with this Section.

(a)     <u>Notices to QUALCOMM</u>:  All Notices to be provided by SONY pursuant to Section 10.1 must be sent to QUALCOMM by electronic mail to the following email address:  **qtl.royalty@qualcomm.com**.  All other Notices to QUALCOMM must be sent by facsimile or by courier service (e.g., DHL, FedEx), and if sent by facsimile, a copy must be sent by first class mail, postage prepaid, or by courier service.  Each such Notice must be properly addressed as follows (in which case such Notice will be deemed to have been duly given on the date of receipt of such Notice by QUALCOMM):

> QUALCOMM Incorporated
> 5775 Morehouse Drive
> San Diego, CA  92121-1714
> Facsimile No.:   (858) 658-2500
> Telephone No.: (858) 587-1121
> Attn:  President
>
> <u>with copies to</u>:
>
> Division Counsel, QTL
> President or General Manager, QTL

(b)     <u>Notices to SONY</u>:  All Notices to SONY must be sent by facsimile or by courier service (e.g., DHL, FedEx), and if sent by facsimile, a copy must be sent by first class mail, postage prepaid, or by courier service.  Each such Notice must be properly addressed as follows (in which case such Notice will be deemed to have been duly given on the date of receipt of such Notice by SONY):

57

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101268
Q2017MDL1_03115445
CX7614-057
JX0105-057

Sony Corporation
1-7-1 Konan Minato-Ku
Tokyo, Japan
Facsimile No. : +81-3-6748-3544
Attn: General Manager
IP Alliance & Licensing Department
Intellectual Property Division

with a copy to:

Sony Mobile Communications Inc.
1-7-1 Konan Minato-Ku
Tokyo, Japan
Facsimile No. : +81-3-6748-3544
Attn: Vice President
Global IPR & Licensing

**17.    PUBLICATION OF AGREEMENT**.  Each Party shall keep this Agreement and its provisions confidential, and shall not disclose this Agreement or any of its provisions to any third party without first obtaining the written consent of the other Party. Notwithstanding the foregoing, (a) each Party may disclose this Agreement or any of its provisions as may be required by law, subpoena, or other legal or administrative demand for disclosure, a valid order or request of a court or other Governmental Authority (but only to the extent of and for the purposes of such order or request); provided, however, that where permitted by law, the disclosing Party shall first notify the other Party in writing of the order or request and, if so requested by the other Party, permit and cooperate with the other Party in seeking an appropriate protective order or an equivalent mechanism for protecting the Agreement); and (b) each Party may disclose this Agreement or any of its provisions as reasonably necessary for performance hereunder.   The confidentiality obligations in this Section 17 do not apply to the disclosure of the existence of this Agreement or the fact that QUALCOMM and SONY have executed this Agreement, or of the scope of the licenses granted hereunder, but do apply to a disclosure of the other terms and conditions of this Agreement.  In addition, without using the respective logos of the other Party, SONY may identify itself as a QUALCOMM licensee or authorized supplier in its marketing materials, website, and other public communications, and QUALCOMM may identify SONY as a QUALCOMM licensee or authorized supplier in its marketing materials, website, and other public communications.  Any press release or other announcement by either Party concerning the entering into of this Agreement will be subject to the prior written approval of the other Party, which approval will not be unreasonably withheld.

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101269
Q2017MDL1_03115446
CX7614-058
JX0105-058

**18.    APPLICABLE LAW; DISPUTE RESOLUTION**.   This Agreement will be governed by and construed and enforced in accordance with the laws of the State of New York without regard to conflict of laws principles.  Any dispute, claim or controversy arising out of or relating to this Agreement, or its breach or validity, will be subject to non-binding mediation conducted in the City of New York in accordance with the Commercial Arbitration Rules and Mediation Procedures rules of the American Arbitration Association then in effect on the date of such controversy or claim.  If such mediation does not resolve the dispute, then the dispute will be adjudicated by arbitration conducted in the City of New York in accordance with the Commercial Arbitration Rules and Mediation Procedures of the American Arbitration Association then in effect on the date of such controversy or claim.  The number of arbitrators will be three (3); provided however, if the dispute is solely over a past due amount of less than ten million U.S. dollars (US$10,000,000.00), then either Party will have the option to request that one (1) arbitrator preside over such dispute, in which case the number of arbitrators will be one (1).  If the number of arbitrators is one (1), such arbitrator will be a retired United States Federal Judge as mutually agreed by the Parties (or as determined through a process mutually agreed upon by the Parties).  If the Parties are unable to reach mutual agreement on the selection of such arbitrator (or a process for selecting such arbitrator), then the rules of the American Arbitration Association for selecting an arbitrator will be followed.  If the number of arbitrators is three (3), at least one arbitrator will be a retired United States Federal Judge and each of the other two arbitrators will be either a retired United States Federal Judge or an attorney with substantial experience in patent licensing, and the arbitrators will be selected by mutual agreement of the Parties or through a process mutually agreed upon by the Parties).  If the Parties are unable to reach agreement on the selection of any of the arbitrators (or a process for selecting the arbitrators), then the rules of the American Arbitration Association for selecting multiple arbitrators will be followed.  The decision of the arbitrator will be binding and conclusive upon the Parties and their successors and assigns, who shall comply with such decision in good faith as if it were a final decision of a court of competent jurisdiction.  Judgment upon the arbitrator's award may be entered in any court of competent jurisdiction.  Except as may be required by law, neither Party may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both Parties.

**19.    LIMITATION OF LIABILITY**.   OTHER THAN FOR A BREACH BY QUALCOMM OF SECTION 7 (INFORMATION), SECTION 12 (EXPORT COMPLIANCE), OR SECTION 17 (PUBLICATION OF AGREEMENT), QUALCOMM WILL NOT BE LIABLE TO SONY FOR ANY INCIDENTAL, CONSEQUENTIAL, OR OTHER INDIRECT LOSSES OR DAMAGES ARISING FROM OR RELATING TO THIS AGREEMENT OR ANY ACTIVITIES PERFORMED UNDER THIS AGREEMENT,

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101270
Q2017MDL1_03115447
CX7614-059
JX0105-059

WHETHER IN AN ACTION FOR BREACH OF CONTRACT, TORT, OR ANY OTHER
CAUSE OF ACTION.

**20.     LATE CHARGE**.  QUALCOMM may charge SONY a late charge, with respect to
any amounts that SONY owes hereunder and fails to pay on or before the due date, in an
amount equal to (a) from the date due until sixty (60) days after QUALCOMM gives
SONY written notice of such delinquency, an amount computed monthly at a rate three
percent (3%) over the annualized rate quoted by Citibank as the Prime Lending Rate in
New York City on the last day of each month during such delinquency, pro-rated for
partial months; and (b) thereafter, one percent (1%) per month, pro-rated for partial
months.  Notwithstanding the foregoing, if the late charge calculated in accordance with
the foregoing sentence exceeds the maximum amount of late fees permitted by law, then
the late charge QUALCOMM may charge SONY will be the maximum amount permitted
by law.  Such late charge will be due and payable by SONY at the end of each month
following the due date of such past due amount until such past due amount has been
paid in full.  The Parties agree that such late charges are administrative in nature and are
intended to defray each Party's costs in processing and handling late payments.

**21.     GOVERNMENTAL RULINGS.**  Nothing in this Agreement will be construed as
a waiver by SONY of any remedies to which it may become entitled (after the Effective
Date of the Agreement) as a result of any antitrust or competition law investigation of
QUALCOMM and any dispute as to the manner in which Sony may become entitled to
such remedies will be resolved according to the dispute resolution provisions in Section
18.

**22.     ENTIRE AGREEMENT**.  The terms and conditions in this Agreement supersede
and replace all prior and contemporaneous communications or understandings (whether
oral or written, direct or indirect (such as by being a beneficiary of an understanding in
accordance with a prior agreement between any third party and one of the Parties to this
Agreement)) between the Parties with respect to the subject matter hereof and constitute
the entire agreement of the Parties with respect to such subject matter.  This Agreement
can be modified or amended only by a written document that (a) specifically refers to this
Agreement and expressly states the Parties' intention to amend or modify it and (b) is
signed by (i) an authorized representative of SONY and (ii) the CEO or President of
QUALCOMM or an authorized representative of the QUALCOMM Technology
Licensing Division of QUALCOMM.  For the avoidance of doubt, the Parties
acknowledge and agree that a communication, whether made electronically or otherwise,
containing only the typed name and/or signature block of a Party, and made without the
handwritten signature of an authorized representative of a Party within a signature block

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101271
Q2017MDL1_03115448
CX7614-060
JX0105-060

in such a communication, will not be deemed to be a written document "signed" by a Party for purposes of the immediately preceding sentence.

**23.      TERMINATION OF PRIOR AGREEMENT**.  As of the Effective Date, the SONY SULA is terminated in its entirety by mutual agreement.  Notwithstanding anything to the contrary in section 15.5 (Rights Upon Termination) of the SONY SULA, all licenses and covenants granted by either Party under the SONY SULA will terminate as of the Effective Date.  Except as otherwise expressly provided in this Section 23, section 15.5 (Rights Upon Termination) and section 20 (Survival of Obligations) of the SONY SULA apply to the termination of the SONY SULA.  For avoidance of doubt, as of the Effective Date the Subscriber Units (as defined in the SONY SULA) which were licensed under section 5.1 of the SONY SULA will be licensed as SONY Covered Terminals (as defined in this Agreement) under Section 3.1 of this Agreement.

**24.      INDEPENDENT CONTRACTORS**.  The relationship between QUALCOMM and SONY is that of independent contractors.  QUALCOMM and SONY are not joint venturers, partners, principal and agent, master and servant, employer or employee, and have no other relationship other than as independent contracting parties.

**25.      U.S. DOLLARS**.  Except as otherwise expressly provided in Section 4.5 all payments to be made hereunder must be made in dollars of the United States of America and by wire transfer of immediately available funds to a bank that is designated by the payee.

**26.      NO RULE OF STRICT CONSTRUCTION**.  Regardless of which Party may have drafted this Agreement, or any provision hereof, no rule of strict construction will be applied against either Party.  Each Party represents and warrants that it has been represented by competent legal counsel in negotiating and executing this Agreement.

**27.      TIME IS OF THE ESSENCE**.  Time is of the essence with respect to the making of any payment and the submission of any report or certificate, required under this Agreement (it being understood that this provision will not be construed in a manner that negates or nullifies any express cure periods provided in this Agreement).

*[Remainder of Page Intentionally Left Blank]*

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101272
Q2017MDL1_03115449
CX7614-061
JX0105-061

**IN WITNESS WHEREOF**, the Parties have caused this CDMA Complete Terminal Patent License Agreement to be signed through their duly authorized representatives as of the dates set forth below, but to become effective as of the Effective Date. This CDMA Complete Terminal Patent License Agreement may be signed in counterparts.

**QUALCOMM Incorporated**                **Sony Corporation**

By: _Eric Reifschneider_                 By: _____

Printed Name: _Eric Reifschneider_       Printed Name: _____

Title: _SVP, GM of QTL_                   Title: _____

Date: _September 29, 2015_               Date: _____

62

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101273
Q2017MDL1_03115450
CX7614-062
JX0105-062

IN WITNESS WHEREOF, the Parties have caused this CDMA Complete Terminal Patent License Agreement to be signed through their duly authorized representatives as of the dates set forth below, but to become effective as of the Effective Date.  This CDMA Complete Terminal Patent License Agreement may be signed in counterparts.

QUALCOMM Incorporated                     Sony Corporation

By: _____             By: _____

Printed Name: _____             Printed Name: _Fumihiko Moriya_

                                          _VP Senior General Manager_
Title: _____             Title: _Intellectual Property Division_

Date: _____              Date: _September 29, 2015_

62

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101274
Q2017MDL1_03115451

CX7614-063
JX0105-063

## Exhibit A
### Certified Statement

The undersigned official of Sony Corporation ("SONY") or its noted Affiliate is providing the following information to Qualcomm pursuant to that certain CDMA Complete Terminal Patent License Agreement entered into between SONY and Qualcomm (the "Agreement"). All capitalized terms used in this certified statement have the definitions ascribed to them in the Agreement. This certified statement reflects royalties payable by SONY for the calendar quarter ended: _____ , 20____.

The attached file, in the format specified on the subsequent pages ("Detailed Sales Data"), identifies the following information pertaining to each SONY Covered Terminal Sale during the

* Quarter of Sale
* Name of Sony Party Selling Sony Covered Terminal (e.g., if SONY, state "SONY"; if Subsidiary, state Subsidiary group name, e.g., "SOMC")
* Country/Region of Sale by SONY Party (e.g., Western Europe, Eastern Europe, Japan, Asia Pacific (incl. India and Korea), Latin America, Middle East & Africa, North America)
  - Supplementary Detailed Sales Data schedule separately identifying Quantity of SONY Covered Terminals and aggregate Selling Price Sold for use in India & South Korea
* Type of Entity receiving SONY Covered Terminal (e.g., Unaffiliated Purchaser, Related Carrier, Exclusive Reseller, "own use", other Related Buyer)
* Type of SONY Covered Terminal (i.e., Telephone, Tablet, or Laptop Computer)
* CDMA Standard(s) capability of SONY Covered Terminal (e.g., CDMA2000 1xRTT, 1xEV-DO, 1xEV-DO Rev. A, 1xEV-DO Rev B, UMTS, HSDPA, HSUPA, HSPA+, TD-CDMA or TD-SCDMA)
* Quantity of SONY Covered Terminals Sold (Aggregated by type of SONY Covered Terminal on the main schedule)
  - Supplementary Detailed Sales Data schedule separately identifying the quantity of SONY Covered Terminals Sold by internal model number and
    identifying the marketed model, type of SONY Covered Terminal, and supported CDMA Standard(s) corresponding to the internal model number
* Identification of all SONY sales covered under "have made" rights of Licensed Customers
  *Royalty calculations not necessary for SONY Covered Terminals provided to a Licensed Customer under the "have made" rights of that Licensed Customer*
* Gross selling price and value of other consideration paid or otherwise provided (refer to Selling Price definition in the Agreement)
* Type(s) & aggregate amount(s) of deductions claimed (refer to Selling Price definition in the Agreement)
  separately identify totals by type of SONY Covered Terminal for:
  MMF discounts, COOP discounts, other trade discounts, costs of packing, costs of insurance & transportation, taxes/duties & Accessory Cost
* Applicable Net Selling Price (by type of SONY Covered Terminal)
* Applicable Royalty Percentage
* Royalty Cap (if applicable)
* Amount of Royalty

The undersigned hereby certifies that SONY Parties Sold _____ SONY Covered Terminals, and that Sony owes $_____ in royalties to Qualcomm for these Sales.

The attached file represents an accurate and complete record of all royalty due and payable by SONY for the calendar quarter specified above.

Signature: _____

Title: _____          Date: _____

Company: _____

Qualcomm Proprietary and Confidential

63

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Qualcomm Proprietary and Confidential

Exhibit A: Detailed Sales Data – Main



| Quarter of Sale | Selling Entity (i.e., each of SONY Party) | Region of Sale (Disclose pop for complic) | Type of Sold to Entity (Disclose pop for complic) | Type of SONY Covered Terminal (e.g., Telephone, Tablet or Laptop Computer) | CDMA Standard(s) capability (Disclose pop for complic) | Unit Quantity (in region) | Licensed or Unlicensed Customer | Gross selling price and value of other consideration | COOP Discounts | MMF Discounts | Other Trade Discounts | Packing Costs | Costs of Insurance & Transportation | Taxes/Duties | Accessory Cost | Net Selling Price | Applicable Royalty Percentage | Royalty Cap (if applicable) | Amount of Royalty |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | | |

Royalty calculations not necessary for SONY Covered Terminals provided to a Licensed Customer under the "have made" rights of that Licensed Customer

Reported claimed deductions, customer Net Selling Price & royalty aggregated be type of SONY Covered Terminal

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101276
Q2017MDL1_03115453

CX7614-065

JX0105-065

Exhibit A: Supplementary Detailed Sales Data – 1

**India/Korea**

| Country | Units Sold | Gross Revenue |
|---------|-----------|---------------|
| India | | |
| Korea | | |

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101277
Q2017MDL1_03115454
CX7614-066
JX0105-066

Exhibit A: Supplementary Detailed Sales Data - 2

| Internal Model Number | External (Marketed) Model Number | Air Interface | Quantity Sold |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

66

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101278
Q2017MDL1_03115455
CX7614-067
JX0105-067

EXHIBIT B - List of Audit Documents and Information

**Royalty Data**
1. Provide explanation (narrative and/or flow charts) on the royalty calculation process.
2. Supporting schedules, reports, and documents utilized to generate the royalty reports provided to QUALCOMM.

**Covered Terminals**
1. List of all Covered Terminals that are relevant for the applicable reporting period including a brief description of the product.
2. The user's manual for each model of Covered Terminal sold via electronic copy.

**General Accounting and Financial Data**
1. Recent SONY legal entity organization chart as of each year end within the audit period for relevant Sony or Sony Affiliates' legal entities (explanation of such corporate structure).
2. Monthly general ledgers and/or trial balance concerning Sales of Covered Terminals.
3. Any sublicense agreements and/or any related party agreements as they relate to Sales of Covered Terminals covered by the License Agreement.
4. Access to purchase orders, receiving documents and payable detail for baseband Components (on a sample testing basis only).

**Sales**
1. Provide a description of the sales recognition policy used to record all Sales of Covered Terminals.
2. Monthly Sales report or journal for Covered Terminal product indicating Sales by customer and by Covered Terminal model , price, quantity sold, date of Sale, and inclusive of any value of other consideration (as defined in the Selling Price definition) received for the Sale of Covered Terminals.
3. Identification of product type of Covered Terminals (i.e. Telephone, Tablet, Laptop Computer)

4. Access to invoices and shipping/bills of lading documents for Sales of Covered Terminal for selection on a sample test basis.
5. Monthly sales report with sufficient detail to show total sales for Covered Terminals.

67

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101279
Q2017MDL1_03115456
CX7614-068
JX0105-068

6. SONY's policy for deductions or exclusions taken in calculating revenue for at least the following:
   - returns and rebates;
   - discounts and allowances;
   - product pricing;
   - promotional programs; and
   - transfers pricing
7. Price lists related to Covered Terminals at relevant points of time.
8. Access to any sales agreements with customers for Covered Terminals (on a sample testing basis).
9. Documentation (e.g. contracts, invoices, etc.) evidencing any value of other consideration (as defined in the Selling Price definition) for customers that also purchased Covered Terminals.

**Deductible Items from Selling Price Costs**
1. Monthly detail for deductible items from Selling Prices for Covered Terminals.
2. Any policies regarding the allocation of deductible items from Selling Prices of Covered Terminals.
3. Access to the supporting documentation for the deductible items from the Selling Prices of Covered Terminals (on a sample testing basis).

**Inventory and Manufacturing**
1. Quarterly manufacturing/production reports for the Covered Terminals.
2. Quarterly shipping reports for Covered Terminals.
3. Access to physical inventory records and book to physical reconciliations for Covered Terminals as of the beginning of the audit period and the end of the audit period.
4. Inventory detail for baseband Components purchased for use in Covered Terminals.
5. Sufficient documentation to reconcile SONY's use and consumption of baseband Components including a mapping of baseband Component to Covered Terminal models.

Reasonable access to SONY's accounting system, provided at Sony's discretion and under Sony supervision will satisfy the requirements set forth above.

For the avoidance of doubt, nothing in this Exhibit B is intended to limit any obligations of SONY set forth in the Agreement.

68

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101280
Q2017MDL1_03115457
CX7614-069
JX0105-069

EXHIBIT C – SONY Assigned Patents

## Type 1 Patent
## Patents and Patent Applications

**Patents**:

| Family No. | Country | Application No. | Filing Date | Patent Number | Issue Date | Description/Title |
|---|---|---|---|---|---|---|
| | | | | | | |

69

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101281
Q2017MDL1_03115458
CX7614-070
JX0105-070

70

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101282
Q2017MDL1_03115459
CX7614-071
JX0105-071



71

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101283
Q2017MDL1_03115460
CX7614-072
JX0105-072

72

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101284
Q2017MDL1_03115461
CX7614-073
JX0105-073

73

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101285
Q2017MDL1_03115462
CX7614-074
JX0105-074

74

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101286
Q2017MDL1_03115463
CX7614-075
JX0105-075

75

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101287
Q2017MDL1_03115464
CX7614-076
JX0105-076



76

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101288
Q2017MDL1_03115465
CX7614-077
JX0105-077

77

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101289
Q2017MDL1_03115466
CX7614-078
JX0105-078



78

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101290
Q2017MDL1_03115467
CX7614-079
JX0105-079

79

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101291
Q2017MDL1_03115468
CX7614-080
JX0105-080



80
Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101292
Q2017MDL1_03115469
CX7614-081
JX0105-081



81

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101293
Q2017MDL1_03115470
CX7614-082
JX0105-082



**Patent Applications (continued on the following page):**

82

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101294
Q2017MDL1_03115471
CX7614-083
JX0105-083

| Family No. | Country | Patent Application No. | Filing Date | Description/Title |
|---|---|---|---|---|
| | | | | |

83

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101295
Q2017MDL1_03115472
CX7614-084
JX0105-084



84

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101296
Q2017MDL1_03115473
CX7614-085
JX0105-085



85

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101297
Q2017MDL1_03115474
CX7614-086
JX0105-086

86

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101298
Q2017MDL1_03115475
CX7614-087
JX0105-087

87

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101299
Q2017MDL1_03115476
CX7614-088
JX0105-088



88

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101300
Q2017MDL1_03115477
CX7614-089
JX0105-089

89

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101301
Q2017MDL1_03115478
CX7614-090
JX0105-090

90

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101302
Q2017MDL1_03115479
CX7614-091
JX0105-091



**Type 2 Patent**
**Patents and Patent Applications**

**Patents**:

| Family No. | Country | Application No. | Filing Date | Patent Number | Issue Date | Description/Title |
|---|---|---|---|---|---|---|
| | | | | | | |

91

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101303
Q2017MDL1_03115480
CX7614-092
JX0105-092

92

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101304
Q2017MDL1_03115481
CX7614-093
JX0105-093



93

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101305
Q2017MDL1_03115482
CX7614-094
JX0105-094

94

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101306
Q2017MDL1_03115483
CX7614-095
JX0105-095

95

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101307
Q2017MDL1_03115484
CX7614-096
JX0105-096

96

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101308
Q2017MDL1_03115485
CX7614-097
JX0105-097



97
Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101309
Q2017MDL1_03115486
CX7614-098
JX0105-098



98

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101310
Q2017MDL1_03115487
CX7614-099
JX0105-099

99

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101311
Q2017MDL1_03115488
CX7614-100
JX0105-100



100

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101312
Q2017MDL1_03115489
CX7614-101
JX0105-101



101

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101313
Q2017MDL1_03115490
CX7614-102
JX0105-102



102

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101314
Q2017MDL1_03115491
CX7614-103
JX0105-103

103

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101315
Q2017MDL1_03115492
CX7614-104
JX0105-104



104

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101316
Q2017MDL1_03115493
CX7614-105
JX0105-105



105

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101317
Q2017MDL1_03115494
CX7614-106
JX0105-106



106

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101318
Q2017MDL1_03115495
CX7614-107
JX0105-107



107

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101319
Q2017MDL1_03115496
CX7614-108
JX0105-108



108

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101320
Q2017MDL1_03115497
CX7614-109
JX0105-109



109

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101321
Q2017MDL1_03115498
CX7614-110
JX0105-110



110

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101322
Q2017MDL1_03115499
CX7614-111
JX0105-111



111

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101323
Q2017MDL1_03115500
CX7614-112
JX0105-112



112

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101324
Q2017MDL1_03115501
CX7614-113
JX0105-113



113

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101325
Q2017MDL1_03115502
CX7614-114
JX0105-114



114

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101326
Q2017MDL1_03115503
CX7614-115
JX0105-115



115

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101327
Q2017MDL1_03115504
CX7614-116
JX0105-116



116

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101328
Q2017MDL1_03115505
CX7614-117
JX0105-117



**Patent Applications**:

| Family No. | Country | Patent Application No. | Filing Date | Description/Title |
|---|---|---|---|---|
| | | | | |

117

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101329
Q2017MDL1_03115506
CX7614-118
JX0105-118



118

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101330
Q2017MDL1_03115507
CX7614-119
JX0105-119



119

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101331
Q2017MDL1_03115508
CX7614-120
JX0105-120

120

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101332
Q2017MDL1_03115509
CX7614-121
JX0105-121



121

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101333
Q2017MDL1_03115510
CX7614-122
JX0105-122



122

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101334
Q2017MDL1_03115511
CX7614-123
JX0105-123



123

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101335
Q2017MDL1_03115512
CX7614-124
JX0105-124

124

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101336
Q2017MDL1_03115513
CX7614-125
JX0105-125

125

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101337
Q2017MDL1_03115514
CX7614-126
JX0105-126



126

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101338
Q2017MDL1_03115515
CX7614-127
JX0105-127

127

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101339
Q2017MDL1_03115516
CX7614-128
JX0105-128



128

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101340
Q2017MDL1_03115517
CX7614-129
JX0105-129



129

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101341
Q2017MDL1_03115518
CX7614-130
JX0105-130

130

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101342
Q2017MDL1_03115519
CX7614-131
JX0105-131

131

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101343
Q2017MDL1_03115520
CX7614-132
JX0105-132

EXHIBIT D – Patent Acquisition Agreement

(incorporated as separate files/documents)

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101344
Q2017MDL1_03115521
CX7614-133
JX0105-133

EXHIBIT E – Agreed Form Wording For Sony Patent Transfers

Short version

[Buyer] acknowledges and agrees that, from the Effective Date until [expiration of 10 year term], the [Transferred Patents] are acquired subject to a covenant not to sue, or seek any form of enhanced damages or injunctive relief against, Qualcomm or its direct and indirect suppliers and customers for making, using, importing, selling, offering to sell, or otherwise disposing of any Components.

**"Qualcomm"** means Qualcomm Incorporated and its subsidiaries.

**"Components"** means Qualcomm baseband components and other Qualcomm components (other than image sensors) sold by Qualcomm for use in a mobile telephone, laptop, or tablet that will incorporate or has incorporated a Qualcomm baseband component.

QUALCOMM is a third party beneficiary of this written agreement between SONY and [Buyer].

Long version

[Buyer] acknowledges and agrees that, from the Effective Date until [expiration of 10 year term] the [Transferred Patents] are acquired subject to the following terms and conditions:  (1) a covenant not to sue Qualcomm or its direct and indirect suppliers and customers for making, using, importing, selling, offering to sell, or otherwise disposing of any Protected Components; (2) a covenant not to sue Qualcomm or its direct and indirect suppliers for making, using, importing, selling, offering to sell, or otherwise disposing of any Other Components; and (3) a covenant not to seek any form of enhanced damages or injunctive relief against Qualcomm or its direct and indirect suppliers for making, using, importing, selling, offering to sell, or otherwise disposing of any Protected Components or Other Components.

**"Qualcomm"** means Qualcomm Incorporated and its subsidiaries.

**"Protected Components"** means Qualcomm baseband components for mobile telephones, tablets and laptops as well as other Qualcomm components (other than image

133

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101345
Q2017MDL1_03115522
CX7614-134
JX0105-134

sensors) sold by Qualcomm for use in a mobile telephone, tablet or laptop that will incorporate or has incorporated a Qualcomm baseband component.

**"Other Components"** means Qualcomm baseband components that are not Protected Components.

QUALCOMM is a third party beneficiary of this written agreement between SONY and [Buyer].

Qualcomm Proprietary and Confidential

FOIA CONFIDENTIAL TREATMENT REQUESTED BY QUALCOMM
HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q2014FTC03101346
Q2017MDL1_03115523
CX7614-135
JX0105-135