IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC, <br><br>Plaintiff,<br><br>v.<br><br>QUALCOMM INCORPORATED, ET AL.,<br><br>Defendants. | Civil Action No. 1:22-cv-1331-ADA<br><br>██████████<br><br>**PUBLIC VERSION** |

**JOINT ADVISORY PURSUANT TO DKT. 416**

Plaintiff Network System Technologies, LLC ("NST") and Defendants Qualcomm Incorporated, Qualcomm Technologies, Inc., Qualcomm CDMA Technologies Asia-Pacific PTE Ltd., and Qualcomm Global Trading PTE Ltd. (collectively, "Qualcomm") provide the following joint advisory ("Advisory") pursuant to the Court's August 11, 2025 order (Dkt. 416), based on the parties' meet and confer on August 14, 2025. Each of the motions the parties filed remain in dispute.

**I.     Qualcomm's Opposed Motion to Strike NST's Infringement Contentions for U.S. Pat. No. 8,072,893 Without Leave to Amend (Dkt. 324-1)**

**A.  Qualcomm's Position**

NST has not disclosed how it alleges Qualcomm infringes the '2893 patent. The '2893 patent claims a method of designing an integrated circuit to include storage elements that are an integer multiple of the size of the data packages that are transmitted by the network. It claims "each data package comprising N data elements," "inserting M*N data storage elements," and an

"identifying" act.

Despite the fact that the Court previously ordered NST to supplement its infringement contentions to provide more detail, NST's infringement contentions still do not tell Qualcomm what the claimed values of "N," "M," and "N*M" are in any of Qualcomm's products, or how Qualcomm satisfies the "identifying" limitation. Rather, NST has stated that it is still analyzing and that these limitations will be disclosed with NST's opening expert report.

The Scheduling Order and this Court's precedent are clear that the time to disclose how Qualcomm allegedly meets the claim elements is not in opening expert reports, but in element-by-element infringement contentions. Qualcomm has been severely prejudiced by NST's lack of disclosure, and it will be even more prejudiced if it is required to provide its opening expert report on invalidity without NST providing adequate infringement contentions.

NST has been given many chances to provide fulsome contentions – in its preliminary contentions, supplemental contentions following Magistrate Judge Howell's order on Qualcomm's motion to compel, and now in its final contentions. NST's position that it can avoid providing its contentions until its expert report is served is belied by the plain language of the Court's orders and should be met with a strong sanction. NST's contentions relating to the '2893 patent should be stricken, and NST should not be given another chance to amend.

### B. NST's Position

NST maintains that its infringement contentions, as they currently stand, are sufficient because they provide Qualcomm notice of NST's infringement theories. Qualcomm's prior motion to compel NST to supplement its preliminary infringement contentions (Dkt. 230-1) complained that NST's contentions were deficient because NST allegedly failed to identify the structure in Qualcomm's Accused Products corresponding to the claim limitations. During the November 26,

2024 hearing on that motion, Qualcomm made clear "that source can be cited for a lot of these elements" and "[f]rankly, it should be." Dkt. 279 at 8:1-2; *see also id.* at 28:19-25. NST's February 7, 2025 contentions did just that. NST identified specific lines of source code corresponding to each and every structural limitation in the asserted claim of the '2893 Patent. For example, NST identified: (1) the source code relevant for the "data package," "data element," "data storage element," and "M*N data storage elements" claim terms; (2) specific citations to source code for exemplary structures which NST identified as corresponding to the claim terms; and (3) citation to Qualcomm documents which disclose the structure that NST contends meets each claim limitation. *See* Dkt. 339-1 at 2.

Nevertheless, Qualcomm complains that NST has purportedly failed to identify the structure corresponding to these claim limitations. Qualcomm's primary complaint is that NST has purportedly failed to identify the numerical values of "M" and "N." This is not true. The claim provides that: "each data package comprising N data elements … N being an integer of at least two" and "in response to the identifying act, inserting M*N data storage elements into the data communication network, M being a positive integer." Because NST identified the corresponding structure in the Accused Products for the "data package," "data element," "data storage element," and "M*N data storage elements," it cannot be that it also failed to identify what "N" is, where "N" is the number of data elements in the data package. Moreover, because NST disclosed what "N" and "M*N data storage elements" are, it also disclosed the value of "M."

In sum, Qualcomm's complaints mischaracterize NST's infringement contentions, and its Motion is a premature attempt at both summary judgment and disclosure of NST's expert report. The Motion should be denied for at least these reasons.

**II.    NST's Motion to Compel Deposition of Philippe Boucard (Dkt. 332-1)**

A. **NST's Position**

NST's moved to compel the deposition of Mr. Philippe Boucard, a key Qualcomm employee knowledgeable about Qualcomm's infringement of the Asserted Patents. Mr. Boucard is a co-founder of Arteris, Inc. ("Arteris") and ▮ that Qualcomm acquired from Arteris and that is at the very heart of this case. During Qualcomm's ▮ ▮ ▮. Mr. Boucard ▮, remained the ▮ throughout his time at Arteris, and, now at Qualcomm, ▮. Mr. Boucard was, and is, a central figure in Qualcomm's infringement of the Asserted Patents, which are directed to the very ▮ ▮. Mr. Boucard's deposition should be compelled for these reasons.

Qualcomm presents unavailing arguments as to why Mr. Boucard's deposition cannot be compelled: first, based on Mr. Boucard being a French citizen, Qualcomm argues his deposition cannot proceed absent service via the Hague Convention and that the French Blocking Statute prevents his deposition outside of France, and second, Mr. Boucard is purportedly not a director, officer, or managing agent, and thus, not within the scope of Rule 30. Qualcomm's arguments are directly contradicted by its prior discovery conduct and the facts of the case. Qualcomm willingly provided discovery that would have run afoul of its reading of the French Blocking Statute, including a deposition of a French resident in New York. Only now has the French Blocking Statute become an insurmountable obstacle, after Qualcomm was informed that Mr. Boucard was "unwilling" to leave France. However, an individual's lack of desire to be deposed is not a legally sufficient reason to prevent deposition and should not be the reason Mr. Boucard's is not

4

compelled. Mr. Boucard is also at least a managing of Qualcomm because of his responsibilities with respect to the subject matter of the litigation. *See supra*. Because the Asserted Patents are directed to NoC hardware components and ███████████████████████ ████████████████, Mr. Boucard is Qualcomm's managing agent for the purpose of this litigation. Accordingly, NST's motion to compel should be granted.

### B. Qualcomm's Position

Mr. Boucard is not an officer or director of Qualcomm. He is five rungs down the corporate ladder and is not a managing agent of Qualcomm pursuant to the four-factor test outlined in the caselaw. Most notably, there are multiple persons with similar knowledge and more authority than Mr. Boucard regarding the accused technology, and they have already been deposed in this case. These individuals are Mr. Boucard's boss, and his boss's boss, and collectively NST has deposed these gentlemen for three days. Indeed, NST has not identified a single, concrete thing that Mr. Boucard would know about the issues in this case that these other individuals were not aware of.

Qualcomm does not oppose Mr. Boucard being deposed, but for personal reasons he will not agree to leave France. Thus, his deposition must take place in France pursuant to the Hague procedures. Qualcomm has indicated to NST that if NST is not allowed to depose Mr. Boucard, Qualcomm will agree to not bring him to trial. Ordering Qualcomm to produce Mr. Boucard for testimony in the U.S. would require Qualcomm to tell Mr. Boucard he either has to travel or be fired. That would be an unjust result that would put Qualcomm at risk of violating French law.

### III.   Qualcomm's Opposed Motion to Compel (Dkt. 334-1)

### A. Qualcomm's Position

Qualcomm's motion to compel seeks ████████████████████████ ████████████████████████████████████████████████████████████████

5

███████████████████████. These documents have more relevance to this case than they do in many other patent cases.

First, they are more relevant to damages. ████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████████. During a deposition in this case, ███
████████████████████████████████████████████████████████████
████████████████████████████████████████   ███████████████
██████████████████████████████████████████

Second, these documents are more relevant to standing than funding documents in other patent cases. ████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████

Additionally, these documents are not protected work product (and certainly not core work product). ████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████ *See Slyde Analytics LLC v. Samsung Electronics Co., Ltd.*, NO., 2:23-cv-00083, 2024 WL 5205755, at *1 (E.D. Tex. Aug. 17, 2024). Moreover, much of the information Qualcomm seeks is purely factual.

### B.  NST's Position

Qualcomm moves to compel ████████████████████████████████████
████████████████████████████████████████████████████████ As

this Court has held, in line with other courts in the Fifth Circuit and other federal courts throughout the country, the materials Qualcomm seeks production of are irrelevant, and even if deemed relevant, are protected from production by the work-product doctrine. The case law on this issue is well-settled and the few outlier cases from other courts that Qualcomm cites are unpersuasive. ███████████████████████████████████████████████████████████████████████████ NST has already produced the key documents, such as the patent purchase agreement, to eliminate any doubt over ownership or NST's standing.

Moreover, Judge Schroeder of the Eastern District of Texas already considered, and rejected, another party's pursuit of discovery regarding NST's litigation funding based on identical bases. Specifically, the court found NST's "production of the patent purchase agreement and other documents should have disclosed ownership and how much Plaintiff actually paid Philips for the asserted patents," Dkt. 343-1, *Network System Technologies, LLC v. Texas Instruments*, No. 2:22-cv-00482-RWS, Dkt. 142-1, Order at *5 (E.D. Tex. Nov. 22, 2023) ("TI Case"), and ultimately held that NST "persuasively argued that the litigation funding documents, including the loan agreement and related attorney notes, are likely privileged because they were made in anticipation of litigation" while finding no "substantial need for the production of the privileged patent acquisition and litigation funding documents." *Id.* at *4.

Additionally, during the August 14, 2025 meet and confer with lead and local counsel, counsel for Qualcomm suggested ████████████████████████████████████████ ████████████████████████████████████ Instead, Qualcomm stated its intention to seek a stipulation that ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████

7

██████████████████████████████████████. To the extent NST understands Qualcomm's proposal, this issue should be handled in a pretrial motion in limine, and not in a motion to compel.

Accordingly, Qualcomm's motion to compel should be denied.

IV.  **NST's Motion for Protective Order (Dkt. 342-1)**

  A. **NST's Position**

NST moved for a protective order against Qualcomm's 30(b)(6) topics that sought corporate testimony on NST's litigation funding. Each topic facially seeks information about ██████████████████████████████████████, which as explained in NST's related opposition brief to Qualcomm's motion to compel funding materials (*supra*, Sec. III), is not relevant to any issues and is protected from disclosure by the work-product doctrine. This is in accord with decisions of this Court, other courts in the Fifth Circuit, and the majority of courts across the country, including Judge Schroeder's decision in the TI Case mentioned above.

The testimony Qualcomm seeks through each of these topics is not relevant to standing, damages, or witness credibility as Qualcomm claims, and in any event, the information is squarely protected from disclosure by the work-product doctrine. As detailed in NST's briefs, Qualcomm has also not pointed to any substantial needed sufficient to override the work-product protections afforded to the litigation funding information it seeks. Accordingly, NST's motion for protective order should be granted.

  B. **Qualcomm's Position**

Qualcomm incorporates its position from ECF 334-1. Qualcomm notes that ████████ ██████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████. Qualcomm further notes that its 30(b)(6) topics seek purely factual information and specifically avoid seeking information that

8

reflects lawyers' mental impressions.

V.     **NST's Motion to Compel Interrogatory Responses (Dkt. 350)**

   A. **NST's Position**

NST seeks answers to its second set of interrogatories (Nos. 15-22), which Qualcomm has refused to answer based on a blanket multiplicity objection asserting that NST's first set of interrogatories (Nos. 1-14) "contain more than 25 discrete subparts." As a preliminary matter, Qualcomm only answered 7 of those 14 interrogatories from the first set, which are the only interrogatories from NST it has responded to in this case. Qualcomm's blanket multiplicity objection fails because NST has not exceeded Rule 33's presumptive limit of 25 interrogatories under the "related question" approach. To be clear, NST seeks separate and complete answers to each interrogatory in its second set (Nos. 15-22), which are derived, in large part, from its first set, and are narrowly focused, single-topic interrogatories. As mentioned in its motion, NST also seeks answers to its third set of interrogatories (Nos. 23-24), which Qualcomm also refuses to answer, on the basis of its multiplicity objection. Dkt. 350 at 3, n.2. Qualcomm's objections do not relieve it from its Rule 33 obligations to provide separate and full responses to NST's interrogatories, and the fact that Qualcomm refuses to answer more than 7 of NST's 24 served interrogatories to date highlights the unreasonable position Qualcomm has taken towards discovery in this case. NST's motion to compel should be granted and Qualcomm should be ordered to provide full and complete responses to NST's Second Set and Third Set of Interrogatories.

   B. **Qualcomm's Position**

NST's First Set of Interrogatories significantly exceeded the number of discrete subparts allowed by Rule 33 (or by the Court's Order Governing Proceedings). Many of NST's interrogatories are multiple pages long. *See e.g.* Dkt. 373-2 at Interrogatory Nos. 7, 8. Others ask

9

Qualcomm to "identify and describe" a wide variety of issues. *See* Interrogatory No. 4 ("Identify and describe . . . all design, development, manufacturing, testing, importation, supply, sales, support, and distribution channels . . ."). And still others purport to use a single interrogatory to ask for Qualcomm's contentions on a variety of different issues. *See* Interrogatory No. 10 (seeking Qualcomm's contention on marking, extraterritoriality, opinions of counsel, and non-infringing alternatives).

Given the excessive number of subparts in NST's first set of interrogatories, Qualcomm should not be required to respond to any additional interrogatories. Nevertheless, during the meet and confer Qualcomm offered to respond to two or three of the interrogatories in NST's second or third set if NST identified the ones that it believed were particularly critical. NST did not make a compromise offer.

## VI. Qualcomm's Motion to Stay Deadlines After the Close of Fact Discovery (Dkt. 370-1)

### A. Qualcomm's Position

The uncertainty regarding which patents-in-suit remain viable that caused Qualcomm to file its motion to stay was partially resolved by the Court's July 29, 2025 Order. As a result of that ruling, NST withdrew the '449 patent, leaving at most three patents-in-suit. However, substantial uncertainty remains due to (1) the PTAB's finding that the '052 patent claims are unpatentable, and (2) Qualcomm's pending motion to strike NST's infringement contentions for the '2893 patent.

NST has acknowledged that courts faced with a final PTAB decision of unpatentability of less than all patents in suit often sever and stay that patent. At the very least, the Court should do that here. In addition, depending on the Court's ruling on the motion to strike, it should still consider whether to stay the entire case and/or modify the schedule in light of what patents remain. Particularly considering that the only other patent in the case (the '818 patent) expired over two

10

years ago and has a limited damages period due to a failure to comply with 35 U.S.C. § 287, NST would not be substantially prejudiced even by a stay of the entire case.

### B. NST's Position

Qualcomm seeks to stay the entire case because one asserted claim was invalidated by a PTAB Final Written Decision that is subject to appeal. The Court previously declined to impose a stay pending completion of IPR proceedings and reasoned that the stage of the case and lack of simplification of issues weighed against imposing a stay. The same reasoning applies to Qualcomm's present motion. The case has progressed well beyond a nascent stage: fact discovery is closed, the parties will exchange burden of proof expert reports on September 19, 2025, and dispositive motion briefing is scheduled to be completed shortly thereafter. Moreover, if a stay were imposed this late in the case, NST will be severely prejudiced because of (1) the concrete risk of loss of evidence; (2) the expiration of NST's patent during Qualcomm's requested stay; and (3) the delay in NST's recovery from Qualcomm's infringement. Finally, the issues that would be simplified if the case were stayed until completion of Federal Circuit appeals is minimal, at best. One only asserted claim is subject to an invalidating Final Written Decision, and a stay of the entire case based on the uncertainty of that one claim is unwarranted.

## VII. NST's Motion to Compel Depositions on Sales Topics (Dkt. 386-2)

### A. NST's Position

NST seeks to compel a supplemental 30(b)(6) deposition on NST's noticed topic nos. 32-35, 37, and 39-40 related to Qualcomm's sales of the Accused Products, and to take the depositions of current and former Qualcomm employees: Christopher Patrick (SVP and General Manager Handsets), Kevin Thompson (former VP of Global Sales Operations), and Soupaya (Chuck) Chuckravanen (former Head of QCT Global Sales Operations). Qualcomm has prevented NST

from taking discovery into its sales processes for the Accused Products based on the incorrect belief that because many of the Accused Products are manufactured and delivered abroad they cannot be deemed sales/offers for sale under § 271(a), and are thus not relevant to NST's claims for damages. Consistent with its unilateral determination on relevance, Qualcomm designated Ms. Denise Csubak, a customer service manager, as its sole 30(b)(6) witness with respect to all sales-related topics, including topic nos. 32-35, 37, and 39-40. During her deposition, it became quickly apparent that Ms. Csubak was not adequately prepared to address many of the sales related topic upon which she had been designed on. Ms. Csubak repeatedly testified that she does not work in sales, did not know the answer to many of NST's questions, and that individuals in sales would be better suited to answer NST's questions. After NST raised these deficiencies, Qualcomm attempted to cure some of Ms. Csubak's deficiencies by designating Deepu John, a director of product management, to testify on Topics 33 and 35. But Mr. John similarly disclaimed relevant knowledge, explaining that his responsibilities end before the sales process begins, and he was unfamiliar with the subjects he was designated to address.

Since neither witness provided meaningful testimony on NST's noticed sales-related topics, NST served additional deposition notices on Messrs. Patrick, Thompson and Chuckravenan, who, in NST's best estimation, could adequately address these topics. Qualcomm has refused to designate an additional Rule 30(b)(6) witness to address these topics or allow NST to take any additional individual depositions. NST's motion to compel should be granted and Qualcomm should be ordered to provide a supplemental 30(b)(6) deposition on topic nos. 32-35, 37, and 39-40 related to Qualcomm's sales of the Accused Products, and grant NST leave to take the depositions of Messrs. Patrick, Thompson and Chuckravenan.

    **B. Qualcomm's Position**

The witnesses Qualcomm designated under Rule 30(b)(6) on the topics at issue were well positioned to testify on those topics based on their work experience at Qualcomm and their preparation for the deposition. This is reflected in their deposition transcripts, which show that they answered the vast majority of questions they were asked. NST's primary complaint is that Qualcomm did not designate a witness from within the Sales organization. But NST chose to rely on Rule 30(b)(6), which does not give NST the right to dictate who is designated. Multiple groups are involved in the sales process at Qualcomm beyond Sales, and Qualcomm reasonably chose designees from these other groups who are very familiar with the sales process.

Part of the reason that Qualcomm did not designate a Sales person is because there is no ▮▮▮▮. While not required to do so, Qualcomm offered during the meet-and-confer to make the VP of Sales and Business Development from Korea (▮▮▮▮) available for a 4 hour deposition in Korea. NST refused that offer because it knows that person will only confirm what they already learned from Qualcomm's other witnesses – that the vast majority of Qualcomm's sales occur overseas and are not subject to a damages claim under U.S. patent law.

## VIII. NST's Motion to Compel Qualcomm's Production of Documents Revealed During Deposition (Dkt. 400-2)

### A. NST's Position

NST seeks to compel Qualcomm's production of certain documents revealed during the deposition of its witnesses, many of which relate to Qualcomm's sales/offers for sale of the Accused Products. More specifically, NST seeks to compel ▮▮▮▮

██████████████████████████████████████████████████. The requested information is highly relevant to NST's claims of direct infringement, induced infringement, and damages. Similar to NST's Motion to Compel Depositions on Sales Topics (Dkt. 386-2), Qualcomm's refusal to produce the requested documents, or willingness to only produce a select few example documents, appears to stem from its incorrect belief that because many of the Accused Products are manufactured and delivered abroad they cannot be deemed sales/offers for sale under § 271(a), and are thus not relevant to NST's claims for damages. NST's motion to compel should be granted and Qualcomm should be ordered to produce the following documents:

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████.

### B. Qualcomm's Position

Qualcomm's document production in this case has been extensive and burdensome. In response to NST's 421 Requests for Production ("RFPs"), Qualcomm has produced more than 4.5 million pages of documents. This document production was also extensively negotiated and involved guidance from Magistrate Judge Howell on a reasonable scope of production.

Nevertheless, NST filed a motion on the last day of fact discovery that seeks to undo many of the parties' longstanding agreements. This motion seeks documents that either (1) have been produced, (2) are not requested by NST's RFPs, (3) are duplicative and burdensome to produce, and/or (4) are not relevant to any issue in the case.

During the meet and confer, Qualcomm offered to produce ███████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████████.

Date: August 18, 2025

/s/ Daniel S. Stringfield w/ permission
<u>William E. Davis, III</u>
William E. Davis, III (State Bar. No. 24047416)
Ty Wilson (State Bar No. 24106583)
**DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, TX 75601
Telephone: (903) 230-9090
bdavis@davisfirm.com
twilson@davisfirm.com

Daniel S. Stringfield
Timothy Maloney
Matthew M. Zuziak
Peter C. Krusiewicz
Allison E. Strong
**NIXON PEABODY LLP**
70 West Madison St., Suite 5200
Chicago, IL 60602
(312) 977-4130
nst@nixonpeabody.com
dstringfield@nixonpeabody.com
tmaloney@nixonpeabody.com
mzuziak@nixonpeabody.com
pkrusiewicz@nixonpeabody.com
astrong@nixonpeabody.com

Michael W. Gray
**NIXON PEABODY LLP**
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071
(213) 629-6000
mgray@nixonpeabody.com

Alec M. Royka
**NIXON PEABODY LLP**
677 Broadway, 10th Floor
Albany, NY 12207
(518) 427-2650
aroyka@nixonpeabody.com

*Attorneys for Plaintiff Network System Technologies, LLC*

Respectfully submitted,

<u>/s/ Nathan D. Louwagie w/permission</u>
Deron R. Dacus (State Bar No. 00790553)
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: (903) 705-1117
ddacus@dacusfirm.com

J. Derek Vandenburgh (*pro hac vice*)
Joseph W. Winkels (*pro hac vice*)
Aaron W. Pederson (*pro hac vice*)
Peter M. Kohlhepp (*pro hac vice*)
Nathan D. Louwagie (*pro hac vice*)
Ryan D. Rypka (*pro hac vice*)
Seung Sub Kim (*pro hac vice*)
Jake R. Dinkins (*pro hac vice*)
**CARLSON, CASPERS,
VANDENBURGH & LINDQUIST, P.A.**
225 S. Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9600
dvandenburgh@carlsoncaspers.com
jwinkels@carlsoncaspers.com
apederson@carlsoncaspers.com
pkohlhepp@carlsoncaspers.com
nlouwagie@carlsoncaspers.com
rrypka@carlsoncaspers.com
ekim@carlsoncaspers.com
jdinkins@carlsoncaspers.com

Andrea L. D'Ambra (*pro hac vice*)
Claire M. Huitt (*pro hac vice*)
**Norton Rose Fulbright US LLP**
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 318-3015
andrea.dambra@nortonrosefulbright.com
claire.huitt@nortonrosefulbright.com

*Counsel for Defendants
Qualcomm Incorporated, Qualcomm
Technologies, Inc., Qualcomm CDMA
Technologies Asia-Pacific PTE Ltd., and
Qualcomm Global Trading PTE Ltd.*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for NST and Qualcomm met and conferred on August 14, 2025.

*/s/ William E. Davis, III*
William E. Davis, III

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served via electronic mail on August 18, 2025, to all opposing counsel of record.

*/s/ William E. Davis, III*
William E. Davis, III