**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| NETWORK SYSTEM TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> QUALCOMM INCORPORATED, ET AL., <br><br> Defendants. | Civil Action No. 1:22-cv-1331-ADA <br><br> ▇▇▇▇▇▇▇▇▇▇ <br><br> **PUBLIC VERSION** |

**NETWORK SYSTEM TECHNOLOGIES, LLC'S REPLY IN SUPPORT OF MOTION
TO COMPEL DOCUMENTS REVEALED DURING DEPOSITION**

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ................................................................................................................ 1
II. ARGUMENT ....................................................................................................................... 2
    A. Royalty Reports and Importation Data is Highly Relevant and Not Moot ............. 2
    B. Qualcomm Has Produced an Incomplete Set of ████████████ ................. 3
    C. Design-Win and Pricing Documents Remain Outstanding .................................... 4
    D. Price Quotes and Purchase Orders Are Necessary and Proportional ...................... 5
III. CONCLUSION .................................................................................................................... 5

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
  25 F.4th 976 (Fed. Cir. 2022) ...................................................................................................1

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
  807 F.3d 1283 (Fed. Cir. 2015)..................................................................................................1

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  831 F.3d 1369 (Fed. Cir. 2016)..................................................................................................1

**Rules**

Fed. R. Civ. P. 26(c)(1)(G) ...........................................................................................................3

I.     **INTRODUCTION**

Qualcomm does not dispute that it is withholding the sales-related documents NST seeks. Instead, Qualcomm primarily justifies this conduct based on its unilateral (and incorrect) determination that the requested documents are not relevant to NST's claims for damages.[1]

Qualcomm's relevance challenge rests solely on its assertion that, because many of the Accused Products are ███████████████████████, Qualcomm's sales of these products are not infringing under § 271(a). That is not the law. As the Federal Circuit has made clear, a sale/offer for sale within the U.S. under § 271(a) occurs when "substantial activities of the sales transactions," such as contract formation, negotiations, pricing approvals, or execution of purchase orders, occur within the U.S.—regardless of where that product is manufactured or delivered. *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1308 (Fed. Cir. 2015); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1378–79 (Fed. Cir. 2016); *Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 993 (Fed. Cir. 2022) (approving a jury instruction that stated that "a sale can occur in the United States based on the 'design win' process . . . where the design of the products . . . occurs in the United States and the buyer selects that design in the United States," even if the products are "manufactured, delivered, and used entirely abroad").

Despite evidence and testimony confirming that such ███████████████████████ ██████████████████████████████████████████████████████████████████████ ███████████████████████, Qualcomm continues to withhold the responsive and highly relevant sales-related documents that NST seeks. Accordingly, NST respectfully requests that the Court order Qualcomm to promptly produce the requested sales-related documents.

---

[1] Qualcomm also asserts that NST's discovery requests do not encompass these materials, but NST already directed Qualcomm to the relevant requests. *See* Dkt. 400-3 at 7-8.

## II. ARGUMENT

### A. Royalty Reports and Importation Data is Highly Relevant and Not Moot

Based on ███████████████████████████████████████ █████████, Qualcomm incorrectly argues that NST's request for documents showing the actual or estimated number of Accused Products that enter the U.S. (such as the requested royalty reports), is moot. Dkt. 418 at 2; Dkt. 418-2. However, Qualcomm does not dispute the existence of the royalty reports, nor does it dispute that such reports show, for many of Qualcomm's customers, the actual or estimated number of Accused Products that enter the U.S.

As explained by Qualcomm's 30(b)(6) designee, Mr. Gonell, ███████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████. This information, possessed by Qualcomm, is highly relevant to at least NST's claims of induced infringement and damages.

Yet Qualcomm tries to avoid production by pointing out that the reports (1) are maintained by its "patent-licensing business," QTL, (2) are not consistently filled out by customers, (3) provide information that is similar to what is available from other ████████████ ████████████ and (4) contain "sensitive third-party commercial data." Dkt. 418 at 2-3. None of those excuses are availing. As Mr. Gonell testified, ██████████████████ ████████████████████████████████████████████████████████████████. And as Mr. Gonell also testified, ██████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████. NST and its experts should be allowed to review Qualcomm's data in conjunction with

the ▮▮▮ to make its own determinations as to which Accused Products enter the U.S.[2]

Finally, Qualcomm's suggestion that the requested documents cannot be produced because they contain sensitive third-party commercial information is misplaced. The parties have operated for years under a robust protective order that expressly covers third-party confidential information. Qualcomm can (and already has) produced and designated sensitive third-party commercial data under the protective order. Qualcomm's bare assertions of sensitivity do not excuse compliance. *See* Fed. R. Civ. P. 26(c)(1)(G).

**B.  Qualcomm Has Produced an Incomplete Set of ▮▮▮**

Contrary to Qualcomm's characterization, ▮▮▮



▮▮▮. Dkt. 418 at 5. In fact, Mr. Gonell could not identify any instance in which Qualcomm ▮▮▮. Underscoring the ▮▮▮ importance, the ▮▮▮—the same documents that Qualcomm states ▮▮▮. Simply put, Qualcomm's ▮▮▮ are a material part of, and an always-present threshold to, Qualcomm's sales and offers for sale of the Accused Products. Qualcomm must produce them so NST can fully understand Qualcomm's sales process.

Qualcomm's selective production of only a few ▮▮▮ is inadequate. Qualcomm omits any

---

[2] Given the weight Qualcomm seeks to put on the ▮▮▮, it should also be required to produce these reports, and Qualcomm's internal analyses thereof in conjunction with evaluating its customers' sales reporting, which are relevant and responsive for the same reasons.

███  with major U.S. customers, such as ████████████████████████—companies that are not only among Qualcomm's largest customers, but also central to understanding how Qualcomm's sales activities may differ region by region. By withholding these agreements, Qualcomm deprives NST of critical information regarding the terms, conditions, and contractual mechanisms by which Qualcomm sells its Accused Products to many of its largest customers.

The small sample of documents that Qualcomm selected cannot be presumed representative. Discovery rules entitle NST to documents sufficient to show Qualcomm's sales processes in a complete and uncolored manner, not a curated, self-serving, subset that omits many of Qualcomm's most significant relationships. At a minimum, Qualcomm should be required to produce ███ for its top 25 customers by revenue. That set is necessary to show whether Qualcomm's sales and offers for sale follow uniform patterns or vary materially by customer, and to test Qualcomm's assertions about the nature of its sales activities. Without this, NST's ability to assess Qualcomm's sales process and rebut Qualcomm's defenses is severely prejudiced.

C.   **Design-Win and Pricing Documents Remain Outstanding**

Qualcomm is incorrect that NST's request for documents concerning its design-win process is moot. While Qualcomm has produced ████████████████████████████ ██████████, it has not produced any documents reflecting actual ███████████ or records showing specific customer commitments for the Accused Products. ███████  ████████████████████████████████████████████████████████████ ██████████████████████████████████████████ and are critical to understanding Qualcomm's sales. The design-win activities are integral to Qualcomm's sales process, marking the points at which customers commit to incorporating the Accused Products into future products, and bear directly on where Qualcomm's sales and offers for sale occur under § 271(a).

Additionally, Qualcomm's ████████████████████████████████████████

████████████████████████████████████████████ are relevant because they reflect Qualcomm's centralized decision-making for the sale and offer for sale of the Accused Products. These determinations establish the terms on which Qualcomm is willing to sell its products, and thus are a key component of an "offer for sale" under § 271(a) because they are part of Qualcomm's domestic commercial activity that governs downstream negotiations and transactions. Understanding where and by whom these pricing decisions are made is essential to determining the locus of Qualcomm's sales activities and offers for sale.

### D. Price Quotes and Purchase Orders Are Necessary and Proportional

The limited, cherry-picked price quotes and purchase orders that Qualcomm has produced to date are insufficient because they fail to provide a complete or representative picture of Qualcomm's sales practices. By producing only a small subset of documents of its own choosing (without any U.S. customers), Qualcomm deprives NST of the ability to assess whether the terms, conditions, and structures of its sales vary among customers or across geographies, or to determine what constitutes a truly representative set. As with the ████, a curated sample selected by Qualcomm cannot substitute for discovery that enables NST to evaluate Qualcomm's practices based on objective, relevant criteria. At a minimum, Qualcomm should be required to produce price quotes and purchase orders for its top 25 customers by revenue for the Accused Products, which is necessary for NST to test Qualcomm's assertions, identify patterns or deviations in sales activity, and establish where sales and offers for sale occur under § 271(a).

### III. CONCLUSION

For each category of requested documents, Qualcomm's response confirms the documents exist, are under Qualcomm's control, and that there is no cognizable burden or privilege barring their production. Accordingly, the Court should grant NST's motion and order Qualcomm to promptly produce the requested sales-related documents.

Date:   August 19, 2025                         Respectfully submitted,

/s/ Daniel S. Stringfield w/ permission
<u>William E. Davis, III</u>
William E. Davis, III (State Bar. No. 24047416)
Ty Wilson (State Bar No. 24106583)
**DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, TX 75601
Telephone: (903) 230-9090
bdavis@davisfirm.com
twilson@davisfirm.com

Daniel S. Stringfield
Timothy Maloney
Matthew M. Zuziak
Peter C. Krusiewicz
Allison E. Strong
**NIXON PEABODY LLP**
70 West Madison St., Suite 5200
Chicago, IL 60602
(312) 977-4130
nst@nixonpeabody.com
dstringfield@nixonpeabody.com
tmaloney@nixonpeabody.com
mzuziak@nixonpeabody.com
pkrusiewicz@nixonpeabody.com
astrong@nixonpeabody.com

Michael W. Gray
**NIXON PEABODY LLP**
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071
(213) 629-6000
mgray@nixonpeabody.com

Alec M. Royka
**NIXON PEABODY LLP**
677 Broadway, 10th Floor
Albany, NY 12207
(518) 427-2650
aroyka@nixonpeabody.com

*Attorneys for Plaintiff Network System Technologies, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document and all accompanying exhibits were served via electronic mail on August 19, 2025 to all opposing counsel of record.

*/s/ William E. Davis, III*
William E. Davis, III
